Thomas A. Lamb
PO Box 873485
Wasilla, AK 99687
(907) 306-5855
tlamb775@aol.com
Pro Se Amicus Curiae

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF ALASKA; CAROL BEECHER, in her official capacity as Director of the Division of Elections of the State of Alaska; the ELECTION BOARDS OF THE STATE OF ALASKA; and the STATE BALLOT COUNTING REVIEW BOARD OF THE STATE OF ALASKA,

Defendants.

Case No. 3:26-cv-00376-SLG

**[PROPOSED] BRIEF OF AMICUS CURIAE THOMAS A. LAMB IN OPPOSITION TO PLAINTIFF'S REQUESTED RELIEF**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES iii

INTEREST OF AMICUS CURIAE 1

INTRODUCTION 1

ARGUMENT 2

I. The NVRA's Statement of Purpose Imposes No Duty Regarding Candidates, Ballots, or Certification. 2

II. The Requested Relief Would Undo, After the Election, What Alaska's Courts Decided Before It. 3

A. Alaska's courts have held that Mr. Sullivan's candidacy is lawful. 3

B. Plaintiff seeks to accomplish after the election what Alaska's courts refused to allow before it. 3

C. The Court need not accept Plaintiff's stated rationale, which the President's own words contradict. 4

III. The Relief Would Discount Lawful Votes for a Qualified Candidate, and No Investigation Could Determine Voter Intent Without Breaching the Secret Ballot. 5

A. Voters have a right to have their ballots counted as cast. 5

B. The Constitution forbids handicapping a qualified candidate. 5

C. Alaska's ranked-choice system already addresses Plaintiff's concern. 6

D. The proposed investigation is unworkable. 6

E. Unverified reports of a criminal investigation compound the problem. 7

IV. The Claim Is Unripe, the Senate Is the Final Judge of Its Own Elections, and an Order on the Eve of the Election Would Sow the Confusion Plaintiff Says It Fears. 8

A. The claim is not ripe. 8

B. The Senate is the final judge of its own elections. 8

C. *Purcell* counsels against an order on the eve of the election. 9

CONCLUSION 9

## TABLE OF AUTHORITIES

### Cases


*Bullock v. Carter*, 405 U.S. 134 (1972) 2

*Burson v. Freeman*, 504 U.S. 191 (1992) 7

*Cook v. Gralike*, 531 U.S. 510 (2001) 5

*Dep't of Commerce v. New York*, 588 U.S. 752 (2019) 4

*Kiehne v. Atwood*, 93 N.M. 657, 604 P.2d 123 (1979) 7

*Kohlhaas v. State*, 518 P.3d 1095 (Alaska 2022) 6

*Miller v. Treadwell*, 245 P.3d 867 (Alaska 2010) 7

*Montoya v. Ortiz*, 24 N.M. 616, 175 P. 335 (1918) 7

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) 9

*Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941) 4

*Reynolds v. Sims*, 377 U.S. 533 (1964) 5

*Roudebush v. Hartke*, 405 U.S. 15 (1972) 8

*State of Alaska, Division of Elections v. Sullivan*, No. S-19935 (Alaska June 29, 2026) 1, 3

*Sullivan v. Division of Elections*, No. 3AN-26-07485CI (Alaska Super. Ct. June 26, 2026) 3

*Texas v. United States*, 523 U.S. 296 (1998) 8

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) 5

*United States v. Classic*, 313 U.S. 299 (1941) 5

*Yazoo & Miss. Valley R.R. Co. v. Thomas*, 132 U.S. 174 (1889) 2


### Constitutional Provisions


U.S. Const. art. I, § 3, cl. 3 5

U.S. Const. art. I, § 5, cl. 1 8

Alaska Const. art. V, § 3 6


### Statutes


52 U.S.C. § 20501(b)(3) 2

52 U.S.C. §§ 20503–20508 2

52 U.S.C. § 20510(a) 2

AS 15.15.350(d) 6

**Rules**

Alaska R. Evid. 507 6

Fed. R. Crim. P. 6(e) 8

**Other Authorities**

*DOJ issues grand jury subpoenas in dueling Dan Sullivans' Republican Senate saga*, NBC News (Aug. 18, 2026) 7

Jasper Ward et al., *DOJ issues subpoenas in probe of Alaska candidate with same name as Senate incumbent, source says*, Reuters (Aug. 18, 2026) 7

*Is a U.S. Department of Justice investigation about to disrupt Alaska's U.S. Senate race?*, Alaska Beacon (Aug. 21, 2026) 8

*Trump indicates Department of Justice may bring case against Petersburg's Dan Sullivan*, Alaska Beacon (Sept. 9, 2026) 8

Giulia Carbonaro, *Trump threatens legal action to remove second Dan Sullivan from Alaska race*, Newsweek (Oct. 22, 2026) 4

*Trump administration sues Alaska over two Dan Sullivans on ballot*, Courthouse News Service (Oct. 22, 2026) 4

Nicholas Riccardi, *What's going on with Dan Sullivan and Dan Sullivan? The Alaska Senate litigation, explained*, Associated Press (Oct. 23, 2026) 5

Ben Johansen, *'I'm the one': Trump says he ordered Alaska elections lawsuit*, Politico (Oct. 23, 2026) 5

## INTEREST OF AMICUS CURIAE

Amicus Thomas A. Lamb is a lifelong Alaskan, a registered voter, and a former candidate for the Alaska State Senate (District D, 2020). He participated as amicus curiae in the Alaska Supreme Court in *State of Alaska, Division of Elections v. Sullivan*, No. S-19935, supporting the ballot access of Daniel J. Sullivan, Jr.; the court considered his brief and listed it in its order. Order at 1 & n.1, No. S-19935 (Alaska June 29, 2026). He has already cast his ballot in the November 3, 2026 general election. He has an interest in seeing that ballot, and every Alaskan's ranked-choice ballot, counted as cast and the election certified as Alaska law requires. No party or party's counsel authored this brief in whole or in part, and no person other than amicus contributed money to fund it.

## INTRODUCTION

Alaska's highest court has already decided that Daniel J. Sullivan, Jr. may appear on the 2026 Senate ballot. Plaintiff does not ask this Court to review that decision. It asks for something that would accomplish much of the same result after the votes are counted: an order forbidding certification whenever Mr. Sullivan's votes, if reassigned to the incumbent, would change the winner, "pending an investigation" into what voters meant. Compl. ¶¶ 42, 44.

That request fails for four independent reasons. The National Voter Registration Act imposes no duty concerning candidates or certification; Plaintiff relies only on the statute's statement of purpose. The relief would let a federal court accomplish what the Alaska Supreme Court declined to allow. It would reassign or disregard lawful votes for a qualified candidate, which the Constitution forbids and which no investigation

could carry out without breaching the secret ballot. And the claim rests entirely on events that have not occurred, in a field where the Senate itself is the final judge.

## ARGUMENT

### I. The NVRA's Statement of Purpose Imposes No Duty Regarding Candidates, Ballots, or Certification.

Plaintiff's only claim rests on 52 U.S.C. § 20501(b)(3), which lists "protect[ing] the integrity of the electoral process" among the Act's purposes. Compl. ¶¶ 35–43. A statement of purpose describes what the operative provisions are meant to achieve. It does not add duties those provisions do not contain. *See Yazoo & Miss. Valley R.R. Co. v. Thomas*, 132 U.S. 174, 188 (1889).

The NVRA's operative provisions govern voter registration: registration with driver's license applications, by mail, and at public agencies, and the maintenance of registration lists. 52 U.S.C. §§ 20503–20508. The Complaint itself locates the Act's duties in those sections, Compl. ¶ 37, yet identifies none that Defendants have violated or will violate. Nothing in the Act addresses who may appear on a ballot, how ranked-choice ballots are tabulated, or when a State may certify a result.

Section 20510(a) authorizes the Attorney General to seek relief "necessary to carry out" the chapter. That authority enforces the chapter's requirements; it does not let the Attorney General create new ones. Plaintiff's lead authority, *Bullock v. Carter*, 405 U.S. 134 (1972), is a ballot-access case about filing fees, as the Complaint concedes. Compl. ¶ 39. It describes what a State *may* do. It does not describe a federal statutory duty, and it says nothing about certification. Because the Complaint states no claim under the only statute it invokes, the requested relief should be denied on that ground alone.

## II. The Requested Relief Would Undo, After the Election, What Alaska's Courts Decided Before It.

### A. Alaska's courts have held that Mr. Sullivan's candidacy is lawful.

The factual foundation of the Complaint is Director Beecher's June 15, 2026 finding that Mr. Sullivan's candidacy was not filed in good faith. Compl. ¶¶ 22–23, 40 & Ex. A. The Complaint treats that finding as settled. It is not. The Superior Court held that the Division erred in excluding Mr. Sullivan, *Sullivan v. Division of Elections*, No. 3AN-26-07485CI (Alaska Super. Ct. June 26, 2026), and the Alaska Supreme Court summarily affirmed, No. S-19935 (Alaska June 29, 2026). Compl. ¶ 24.

Amicus participated in that appeal; the court's order was entered on consideration of the parties' and amici's briefs, including his. Order at 1 & n.1. The issue presented was whether the Division could disqualify a candidate for the U.S. Senate based on its assessment of his motives and the risk of voter confusion. The Superior Court held the exclusion unlawful, and the Alaska Supreme Court affirmed. Under those rulings, Mr. Sullivan's candidacy is lawful under Alaska law.

### B. Plaintiff seeks to accomplish after the election what Alaska's courts refused to allow before it.

Plaintiff now asks this Court to treat that lawful candidacy as presumptively fraudulent and to freeze certification on that basis. Whatever label Plaintiff uses, the relief would give the Division's overturned finding the effect Alaska's courts denied it. The Division lost the ballot-access question in Alaska's courts; the same position is now pressed by the federal executive in a federal forum, aimed at certification instead of the ballot. The relief requested would accomplish after the election the result the Alaska Supreme Court declined to allow before it. Federal courts give state courts the first

word on state election law, and the Alaska Supreme Court's full opinion is still pending. If any question of Alaska law remains, it belongs to that court. *Cf. Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500–01 (1941). The Court should decline to reach a result the State's highest court has already rejected.

### C. The Court need not accept Plaintiff's stated rationale, which the President's own words contradict.

Nor must the Court accept at face value Plaintiff's stated reason for this suit. When the stated rationale for government action is contrived, a court is "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019). There, the Supreme Court concluded that enforcement of a federal voting statute, the Voting Rights Act, "seems to have been contrived" as the sole stated reason for the government's action. *Id.* at 784. That case reviewed agency action rather than a lawsuit, but its principle applies with force where, as here, the government again invokes a federal voting statute. The Complaint says this suit protects "the integrity of the electoral process." Compl. ¶¶ 3, 37. The President's own words show a different objective.

The day before this suit was filed, President Trump publicly called Mr. Sullivan's candidacy a "SCAM" and wrote that "we are looking at powerful legal options to remove" him from the ballot. Giulia Carbonaro, *Trump threatens legal action to remove second Dan Sullivan from Alaska race*, Newsweek (Oct. 22, 2026); *Trump administration sues Alaska over two Dan Sullivans on ballot*, Courthouse News Service (Oct. 22, 2026). The next day the United States filed this action. The President has since confirmed that the decision to sue was his. Asked about this suit on October 23, 2026, he told reporters: "I'm the one who said do it." Nicholas Riccardi, *What's*

*going on with Dan Sullivan and Dan Sullivan? The Alaska Senate litigation, explained*, Associated Press (Oct. 23, 2026); *see also* Ben Johansen, *'I'm the one': Trump says he ordered Alaska elections lawsuit*, Politico (Oct. 23, 2026) (reporting the remark as "I'm the one that said do it"). By the President's own account, this suit pursues the objective he announced: removing Mr. Sullivan's candidacy from the contest, the result the Alaska Supreme Court declined to allow. The NVRA's statement of purpose should not become the vehicle for it.

## III. The Relief Would Discount Lawful Votes for a Qualified Candidate, and No Investigation Could Determine Voter Intent Without Breaching the Secret Ballot.

### A. Voters have a right to have their ballots counted as cast.

The right to vote includes the right to have one's ballot counted. *United States v. Classic*, 313 U.S. 299, 315 (1941); *Reynolds v. Sims*, 377 U.S. 533, 554–55 (1964). Plaintiff's test in paragraph 42 assumes that *every* vote for Mr. Sullivan was meant for the incumbent. It applies only if the incumbent loses. A rule that presumes one candidate's voters were mistaken, and only when that presumption helps another candidate, does not protect the integrity of the count. It overrides it.

### B. The Constitution forbids handicapping a qualified candidate.

States may not add qualifications for Congress, directly or indirectly. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 827–36 (1995). Nor may they use the ballot to disadvantage a candidate. *Cook v. Gralike*, 531 U.S. 510, 523–26 (2001). Mr. Sullivan meets every constitutional qualification for the Senate. U.S. Const. art. I, § 3, cl. 3. An order treating his votes as presumptively belonging to someone else would accomplish through certification what *Thornton* and *Cook* forbid at the ballot stage.

### C. Alaska's ranked-choice system already addresses Plaintiff's concern.

Under Alaska's ranked-choice tabulation, a ballot for an eliminated candidate transfers to that voter's next choice. Compl. ¶ 29; AS 15.15.350(d). A voter who meant to support the incumbent and ranked him anywhere on the ballot will have that vote count for him. The Alaska Supreme Court upheld this system in *Kohlhaas v. State*, 518 P.3d 1095 (Alaska 2022), and the two candidates are visibly differentiated on the ballot. *See* Compl. ¶ 32 (sample ballot). Alaska voters can be trusted to mark the ballot they intend.

### D. The proposed investigation is unworkable.

Plaintiff asks the Court to withhold certification "pending an investigation to determine whether votes cast for Daniel J. Sullivan were meant to be cast for Senator Sullivan." Compl. ¶ 44. Ballots are secret by design. Alaska Const. art. V, § 3. The only way to learn what a voter "meant" would be to identify the voter and ask, which the secret ballot forbids. Alaska law gives every lawful voter a privilege to refuse to disclose the tenor of his or her vote. Alaska R. Evid. 507. The Rule's commentary traces the privilege to a 1795 South Carolina decision and explains that secrecy must be preserved after the ballot is cast, not only while voting. *Id.* cmt. Any investigation could hear only from voters who chose to waive it.

Ballot secrecy is also a double-edged sword. Because no one can see how a voter marked a ballot, no claim that a vote was miscast can be verified or refuted afterward. Any voter, campaign, or commentator could assert that votes for Mr. Sullivan were mistakes, and nothing in the record could test that assertion. An investigation into what voters "meant" would rest entirely on unverifiable statements, including false ones made to change the outcome. After a close result, the losing side would have every

incentive to generate claims of confusion that no court could check.

Amicus illustrates the point. He has already voted and has publicly stated for whom. Public records can confirm that he voted, but nothing can confirm for whom he voted; his statement carries no weight beyond his own word. Neither he nor anyone else can later prove what a secret ballot was meant to say, and no election should turn on assertions the law makes impossible to verify.

Courts have long treated such testimony with caution. Even where a vote is shown to be illegal and the privilege falls away, a voter's account of how he voted is received only "for what it is worth." *Kiehne v. Atwood*, 93 N.M. 657, 604 P.2d 123 (1979) (quoting *Montoya v. Ortiz*, 24 N.M. 616, 175 P. 335 (1918)). Alaska resolves what a voter intended by examining the ballot itself during the count. *Miller v. Treadwell*, 245 P.3d 867 (Alaska 2010) (voter intent is paramount). And the secret ballot exists to guard against the intimidation and fraud that post-election inquiries into individual votes would invite. *Burson v. Freeman*, 504 U.S. 191, 200–06 (1992) (plurality opinion). No lawful process could produce the answer Plaintiff seeks, and the Senate seat would sit uncertified indefinitely.

### E. Unverified reports of a criminal investigation compound the problem.

On August 18, 2026, while polls were open in Alaska's primary, NBC News reported, citing unnamed sources, that a federal grand jury had issued subpoenas in an investigation of Mr. Sullivan's candidacy. *DOJ issues grand jury subpoenas in dueling Dan Sullivans' Republican Senate saga*, NBC News (Aug. 18, 2026); *see also* Jasper Ward et al., *DOJ issues subpoenas in probe of Alaska candidate with same name as Senate incumbent, source says*, Reuters (Aug. 18, 2026). The U.S. Attorney's Office would neither confirm nor deny any investigation, and three weeks later the Alaska

Beacon still could not verify the reports. *Is a U.S. Department of Justice investigation about to disrupt Alaska's U.S. Senate race?*, Alaska Beacon (Aug. 21, 2026); *Trump indicates Department of Justice may bring case against Petersburg's Dan Sullivan*, Alaska Beacon (Sept. 9, 2026). No charges have been filed, and the Complaint alleges none.

Like a claim that a ballot was miscast, a report of secret grand jury activity cannot be tested by the public or by this Court. Fed. R. Crim. P. 6(e). The Complaint now adds the federal government's own voice to those unverified accusations. They should not become the basis for withholding certification of a federal election.

## IV. The Claim Is Unripe, the Senate Is the Final Judge of Its Own Elections, and an Order on the Eve of the Election Would Sow the Confusion Plaintiff Says It Fears.

### A. The claim is not ripe.

A claim is not ripe if it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Plaintiff's theory requires that the incumbent lose, that the margin be smaller than Mr. Sullivan's vote total, and that the ranked-choice tabulation play out in a particular way. Compl. ¶ 42. None of that has happened. Plaintiff's own allegation that the race is within one or two points, Compl. ¶ 34, confirms that the outcome is unknown.

### B. The Senate is the final judge of its own elections.

Each House is "the Judge of the Elections, Returns and Qualifications of its own Members." U.S. Const. art. I, § 5, cl. 1. States conduct and certify Senate elections, but the Senate makes the final judgment. *Roudebush v. Hartke*, 405 U.S. 15, 19, 25–26

(1972). A federal order freezing certification pending an open-ended inquiry into voters' intentions would intrude on both the State's role and the Senate's.

### C. *Purcell* counsels against an order on the eve of the election.

Plaintiff filed on October 22, 2026, twelve days before the general election. Court orders affecting elections, especially conflicting orders, "can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). An order signaling that votes for one qualified candidate may not count, issued while Alaskans are already voting, risks exactly that.

## CONCLUSION

The Alaska Supreme Court decided that Daniel J. Sullivan, Jr. is a lawful candidate. The voters of Alaska, not an investigation into their private intentions, will decide the election, and the Senate will judge the result. The Court should deny the declaratory and injunctive relief Plaintiff requests.

DATED: October 23rd, 2026, at Wasilla, Alaska.

Respectfully submitted,

Thomas A. Lamb
PO Box 873485
Wasilla, AK 99687
(907) 306-5855
tlamb775@aol.com
Pro Se Amicus Curiae

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 2,516 words, excluding the caption, tables of contents and authorities, signature blocks, and certificates, *see* D. Alaska L. Civ. R. 7.4(a)(3)–(4), and that it is double-spaced in 13-point proportionally spaced type as required by D. Alaska L. Civ. R. 7.5(a)(1).

________________________________
Thomas A. Lamb

## CERTIFICATE OF SERVICE

I certify that on OCTOBER 23 20, 2026, I served a true copy of the foregoing Motion for Leave to File Brief of Amicus Curiae, with the proposed Order and the proposed Brief of Amicus Curiae attached, by first-class United States mail, postage prepaid, addressed as follows:

Stanley E. Woodward, Jr.
Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
*Counsel for Plaintiff*

E. Bryan Wilson
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
*Counsel for Plaintiff*

Office of the Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
*For Defendants State of Alaska, Director Carol Beecher, the Election Boards, and the State Ballot Counting Review Board*

________________________________
Thomas A. Lamb