David R. Fox*
Joshua Abbuhl*
Qizhou Ge*
Max C. Accardi*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 948-1135
*dfox@elias.law*
*jabbuhl@elias.law*
*age@elias.law*
*maccardi@elias.law*

**Pro Hac Vice* Applications Forthcoming

Thomas P. Amodio
Kevin M. Boots
Lily Ginsburg
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
*tom@reevesamodio.com*
*kevin@reevesamodio.com*
*lginsburg@reevesamodio.com*

Attorneys for Proposed Intervenors
Alaskans for Mary and DSCC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF ALASKA; CAROL BEECHER, in her official capacity as Director of the Division of Elections of the State of Alaska; the ELECTION BOARDS of the STATE OF ALASKA; and the BALLOT COUNTING REVIEW BOARDS of the STATE OF ALASKA,

Defendants.

Case No. 3:26-cv-00376-SLG

**ALASKANS FOR MARY AND DSCC'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS


INTRODUCTION .................................................................................................... 1

BACKGROUND .................................................................................................... 2

LEGAL STANDARD ............................................................................................ 6

ARGUMENT .......................................................................................................... 8

I. Proposed Intervenors are entitled to intervene as of right. ..................................... 8

A. This motion is timely. .......................................................................................... 8

B. Proposed Intervenors have protectable interests in the certification of the November 2026 election result. ........................................................ 8

C. The existing parties do not adequately represent Proposed Intervenors. .... 12

II. Alternatively, Proposed Intervenors should be granted permissive intervention. ................................................................................................. 16

CONCLUSION .................................................................................................... 18

## INTRODUCTION

In an unprecedented pre-emptive strike on democratic elections, the Department of Justice—acting on the President's personal orders—demands that this Court enjoin the certification of the ongoing U.S. Senate election, but only if the President's preferred candidate loses.[1] Alaskans, apparently, must elect Senator Dan S. Sullivan or the President will not let them elect anyone at all. But the federal government has no power to impose that Hobson's choice on the people of this State. Daniel J. Sullivan's presence on the ballot raises a question of Alaska law that was litigated and definitively resolved by the Alaska Supreme Court months ago. The National Voter Registration Act ("NVRA")—the only legal basis the Department of Justice ("DOJ") provides for its claims—regulates voter registration and has literally nothing to say about which candidates are listed on the ballot or how they are displayed. Those issues are governed by state law. And the Department of Justice's assumption that every voter who casts a vote for Daniel J. Sullivan really meant to vote for Senator Sullivan is insulting to voters and irreconcilable with Alaska's ranked-choice voting procedures and the ballot's clear differentiation between the two candidates.

Alaskans for Mary and DSCC are entitled to intervene as of right to defend against the Department of Justice's extraordinary assault. Candidates and their campaigns have "an obvious personal stake in how the result" of their election "is determined and regarded," and interference with the electoral process "deprives candidates of the[ir]

---

[1] *See* Nicholas Riccardi, *WATCH: Trump Says He Ordered DOJ Lawsuit over Alaska Senate Race*, PBS.com (Oct. 23, 2026), https://www.pbs.org/newshour/politics/trump-administration-files-lawsuit-to-block-possible-democratic-win-in-alaska-senate-race.

opportunity to compete for election under the Constitution and laws of the United States." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 79 (2026). DSCC is the Democratic Party's national senatorial campaign committee, with a direct interest in supporting the election of Democratic Senate candidates like Mary Peltola. This case directly threatens both Proposed Intervenors' interests by demanding that defendants refuse to certify the election if, and only if, Peltola wins. It is part of a nationwide attack on free elections by the federal government, which the DSCC has fought at every turn.[2] And there is reason to doubt that the existing defendants will vigorously defend against DOJ's demands, given their effort to exclude Daniel J. Sullivan from the ballot earlier this year.

The Court should grant this Motion and, ultimately, dismiss this case.

## BACKGROUND

Mary Peltola declared her candidacy for the U.S. Senate seat currently held by Senator Dan S. Sullivan on January 12, 2026. On the same day, she launched her campaign committee, Alaskans for Mary. In the August 18, 2026, primary election, Peltola received

[2] *See, e.g.*, Complaint, *DSCC v. Trump*, No. 1:26-cv-3674 (D.D.C. Oct. 20, 2026), ECF No. 1 (challenging DOJ's unlawful threats to state election officials if they do not unlawfully purge lawfully registered voters); Complaint, *DSCC v. ICE*, No. 1:26-cv-3330 (D.D.C. Sep. 23, 2026), ECF No. 1 (challenging voter intimidation by armed federal agents at polling places); *DSCC v. Trump*, No. 1:26-cv-1114, 2026 WL 2681471 (D.D.C. Sept. 13, 2026) (enjoining, nationwide, unlawful Postal Service rule restricting mail voting in case brought by DSCC).

49.5% of the vote, more than any other candidate. She advanced to the general election along with three other candidates.

Peltola's candidacy is supported by DSCC, the Democratic Party's national senatorial committee, which is charged with supporting the election of Democratic candidates to the U.S. Senate. It accomplishes that mission by, among other things, assisting state parties, mobilizing their supporters, protecting access to the franchise for Democratic voters, and—particularly relevant here—defending the victories of Democratic candidates.

One of Peltola's three opponents in the general election is Daniel S. Sullivan, the incumbent junior U.S. Senator from Alaska who is up for reelection this November. Senator Sullivan is a member of the Republican Party. Earlier this year, the Alaska Republican Party complained to the Alaska Division of Elections about the candidacy of another of Peltola's opponents, Daniel J. Sullivan ("Mr. Sullivan"), asserting that voters might confuse Mr. Sullivan with Senator Sullivan. The Division of Elections excluded Mr. Sullivan's name from the primary election ballot based on a determination that he was not a good-faith candidate. But Mr. Sullivan successfully challenged the Division's decision to remove him from the primary ballot as a violation of Alaska law and the U.S. Constitution in state court. On June 26, 2026, a superior court judge ordered the Division of Elections to include Mr. Sullivan's name on the primary ballot, Order on Administrative Appeal, *Sullivan v. Alaska Division of Elections*, No. 3AN-26-07485CI (Alaska Super. Ct.

June 26, 2026).[3] Three days later, the Alaska Supreme Court affirmed. Order, *Alaska Division of Elections v. Sullivan*, No. S-19935 (Alaska June 29, 2026).[4] The Alaska Supreme Court remanded the matter to the Division of Elections and directed it to decide how to list Mr. Sullivan as a candidate in accordance with Alaska ballot design law. *Id.*

On June 29, 2026, the Division of Elections released the sample ballot for the 2026 primary. To ensure that voters could distinguish the two candidates, it listed Mr. Sullivan with no party designation and added "Incumbent" next to Senator Sullivan's listing.[5] No one—from DOJ or otherwise—sued to challenge this approach. The primary occurred on August 18, and on August 31, the Division of Elections certified the results of the primary and finalized the general election ballot design with the top four candidates advancing to the general election. The ballot listings for Senator Sullivan and Mr. Sullivan mirrored the primary-election ballot design, indicating Senator Sullivan's status as "Incumbent" and listing Mr. Sullivan without a party designation:



[6]

---

[3] Available at https://perma.cc/WY72-2DK7.
[4] Available at https://perma.cc/UFR5-GTJF.
[5] *See Sample Ballot 2026 Primary*, Div. of Elections, State of Alaska, https://perma.cc/3UBW-7FEB (last visited Oct. 23, 2026).
[6] *Sample Ballot: Federal Only*, Div. of Elections, State of Alaska, https://perma.cc/F6LL-TKVC (last visited Oct. 23, 2026).

Once again, no one—from DOJ or otherwise—challenged this ballot listing or the Division's decision to list these four candidates on the general election ballot. The ballots were therefore printed in that format. Absentee ballots were mailed on October 9, and in-person early voting began on October 19.[7]

Yesterday, DOJ filed this case against the State of Alaska, the Director of the Division of Elections of the State of Alaska, the Election Boards, and the State Ballot Counting Review Board. DOJ seeks a court order prohibiting the State from certifying the results of the U.S. Senate election, if "(1) Senator Sullivan does not win the election; and (2) had all votes cast for Daniel J. Sullivan been cast instead for Senator Sullivan and Alaska's rank-choice process played out accordingly, Senator Sullivan would have won the election." Compl. ¶ 42, ECF No. 1. In other words, if Senator Sullivan wins, DOJ wants the election certified. But if he loses, DOJ wants the Court to assume that every vote cast for Mr. Sullivan should have been cast for Senator Sullivan instead, and to further forbid the State from certifying Peltola's victory if that hypothetical would change the result.

DOJ then demands an unspecified "investigation to determine whether votes cast for Daniel J. Sullivan were meant to be cast for Senator Sullivan and any further procedures or relief this Court deems necessary and appropriate to determine what the result would have been absent Daniel J. Sullivan's inclusion on the ballot." Compl. ¶ 44. DOJ does not

---

[7] *Absentee and Early Voting*, Div. of Elections, State of Alaska, https://perma.cc/U6CD-KCSY (last visited Oct. 23, 2026); James Brooks, *Thousands of Alaskans are Voting Before Election Day. Some ballots Won't Be Counted Until After It*, Alaska Beacon (Oct. 22, 2026), https://perma.cc/RXZ4-SXHJ.

explain how such an investigation could possibly be undertaken given the secret ballot, nor provide any explanation for why the voters' own votes are not the best evidence of their intent—particularly under Alaska's ranked-choice voting system, where a voter who is not sure which Sullivan to vote for is perfectly able to rank both.

The only legal basis DOJ cites for its extreme demands is the NVRA, a statute that exclusively regulates voter registration. *See* 52 U.S.C. §§ 20501, *et seq*. Nothing in the NVRA regulates which candidates are listed on ballots or how they are displayed. *See id.* The language that the Complaint cites from the NVRA—about "protect[ing] the integrity of the electoral process," Compl. ¶ 3 (alteration in original) (quoting 52 U.S.C. §20501(b)(3))—comes from Congress's explanation of the "purposes of" the law's new federal voter regulations, and does not purport to itself impose any obligations on States, much less obligations disconnected from the registration regulations that are the NVRA's exclusive subject. DOJ does not cite a single case holding or suggesting otherwise.

## LEGAL STANDARD

A party may intervene either as a matter of right or with permission of the Court. *See* Fed. R. Civ. P. 24. Under Rule 24(a)(2), a movant has a right to intervene if it satisfies four requirements:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra*

*Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). In applying this test, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

Alternatively, the Court has discretion to grant permissive intervention under Rule 24(b) if the movant can show that "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims," *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998), though the third element is not required where—as here—the movant seeks to intervene as a defendant and does not seek additional relief, *see Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) (explaining third element "does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims").

"Regardless of what type of intervention is sought, the Ninth Circuit upholds a liberal policy in favor of intervention." *Nw. Env't Advocs. v. EPA*, No. 3:12-cv-1751, 2014 WL 1094981, at *2 (D. Or. Mar. 19, 2014) (citing *Wilderness Soc'y*, 630 F.3d at 1179). "Such a policy allows for both efficient resolution of issues and broadened access to the courts." *Id.* (citation modified).[8]

[8] In compliance with Rule 24(c), Proposed Intervenors attach a Proposed Answer to this motion. However, Proposed Intervenors intend to file a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) if intervention is granted.

## ARGUMENT

### I. Proposed Intervenors are entitled to intervene as of right.

#### A. This motion is timely.

In determining whether a motion for intervention as of right is timely, courts consider the totality of the circumstances, with a focus on three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835–36 (9th Cir. 2022).

This motion is indisputably timely. DOJ filed suit on October 22, and this motion was filed the next day—before any case schedule has been set, before any defendants have appeared or answered, and before the Court has taken any substantial action. There is no conceivable prejudice to any existing party because no deadlines have yet been set. *See Or. Nat. Desert Ass'n v. Shuford*, No. 6:06-cv-242, 2006 WL 2601073, at *2 (D. Or. Sep. 8, 2006) (finding no prejudice where intervenors moved promptly and agreed "to comply with the court's discovery and pretrial scheduling order"), *aff'd sub nom. Or. Nat. Desert Ass'n v. McDaniel*, 405 F. App'x 197 (9th Cir. 2010). Proposed Intervenors therefore satisfy the timeliness factor for intervention as of right.

#### B. Proposed Intervenors have protectable interests in the certification of the November 2026 election result.

"[A] prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*,

450 F.3d 436, 441 (9th Cir. 2006)). Consistent with its liberal standard, "Rule 24(a)(2) does not require a specific legal or equitable interest," *id.* (citing *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)), and "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club*, 995 F.2d at 1484). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (citation modified). Applicants thus need not show that impairment is a "certainty," but only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24(a)(2)). Once an applicant has shown some protectible interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" those interests. *California ex rel. Lockyer*, 450 F.3d at 442.

Proposed Intervenors self-evidently satisfy that standard here. Alaskans for Mary is the principal campaign committee for Mary Peltola, the Democratic Party candidate for the U.S. Senate from Alaska. As the Supreme Court made clear earlier this year, "[c]andidates . . . are not 'mere bystanders' in their own elections," and "[t]hey have an obvious personal stake in how the result is determined and regarded." *Bost*, 607 U.S. at 78–79 (citation omitted). Thus, a "[d]eparture[] from the preordained rules cause[s] them particularized and concrete harm." *Id.* at 79. In particular, the Court held that candidates have a "legally

cognizable" interest in ensuring that their elections are "certified with lawful votes.," *Iid.* at 77 n.4 (citation modified). And *Bost* involved Article III standing, which sets a higher bar than the showing necessary for intervention. *See Yniquez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) ("[T]he Article III standing requirements are more stringent than those for intervention under rule 24(a).").

DOJ's Complaint directly threatens Alaskans for Mary's interest in seeing Peltola elected as a U.S. Senator and having that election certified. If Peltola receives the most votes at the conclusion of the ranked-choice voting process, the Complaint seeks a judicial order that would prevent her election from being certified pending some undefined (and obviously unworkable) "investigation" to determine whether votes cast for one candidate "were meant to be cast" for another. *See* Compl. ¶¶ 42, 44. Lest there be any doubt, the Complaint is crystal clear that the relief it seeks is specifically intended to guard against a Peltola victory. *See id.* ¶¶ 34, 42, 44 (noting, based on DOJ's review of "[m]any polls," that there is a "realistic chance" of "a victory for Peltola," and therefore asking for an order preventing the certification of election results *if she wins* pending DOJ's undefined, hypothetical investigation into the intent of potentially thousands of voters). Courts consistently allow candidates (or their campaigns) to intervene in lawsuits that threaten their election. *See, e.g.*, *Craig v. Simon*, 493 F. Supp. 3d 773, 781 (D. Minn. 2020) (observing "[a]s a nominee in the election for Minnesota's Second Congressional District, Kistner has an interest in the subject matter and the outcome of this litigation," and granting intervention as of right); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1307 (N.D. Ga. 2018)

(granting intervention as of right to congressional campaign committee in lawsuit challenging rule regarding the counting of certain ballots); *Hoblock v. Albany Cnty. Bd. of Elections*, 233 F.R.D. 95, 100 (N.D.N.Y. 2005) ("The Candidates here have shown that they have a direct, substantial and protectable interest in this litigation, and upon determination of the suit their interests will be impacted by the outcome of the election." (citation omitted)). Consequently, this unprecedented lawsuit is a direct threat to the "significantly protectible" interests of Alaskans for Mary.

DSCC's interests are similarly threatened by DOJ's lawsuit. As the Democratic Party's national senatorial campaign committee, DSCC has a substantial interest in the election of Democratic candidates to the U.S. Senate, and in Alaska, it is specifically interested in the election of Mary Peltola. It has poured staff time, money, and other resources into the campaign, and its interest in her election is directly threatened by DOJ's last-minute ploy to stop the certification of the election. Courts have regularly recognized the interests of political parties in election litigation, including the inclusion of candidates from other political parties on the general election ballot, and granted their intervention. *See*, *e.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (granting intervention as of right for political parties, including the National Republican Senatorial Committee, where "claims . . . could affect [their] ability to participate in . . . the election process"); *N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 562 (E.D.N.C. 2022) (granting intervention as of right for political party committees, including DSCC, in dispute about the inclusion of another political party's candidates on the general

election ballot); *Issa v. Newsom*, No. 2:20-cv-1044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention as of right for political party that sought to "advance[e] their overall electoral prospects"); *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, No. 23-3166, Doc. 129 (3d Cir. Jan. 3, 2024) (granting intervention for political parties, including DSCC in election lawsuit).

### C. The existing parties do not adequately represent Proposed Intervenors.

Proposed Intervenors cannot be assured adequate representation if they are denied intervention. "The burden of showing inadequacy of representation is minimal and is satisfied if the applicant can demonstrate that representation of its interests may be inadequate." *Alaska Indus. Dev. & Exp. Auth. v. Biden*, No. 3:21-CV-00245-SLG, 2022 WL 1137312, at *2 (D. Alaska Apr. 18, 2022) (quoting *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022) (citation modified)); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers.*, 404 U.S. 528, 538 n.10 (1972)). Courts are "liberal in finding" this requirement satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024). Because Proposed Intervenors' interests are distinct, none of the existing parties adequately represents them.

DOJ naturally does not represent Proposed Intervenors' interests, as it seeks an order that would prevent the prompt and lawful certification of an election victory by Peltola. Compl. ¶¶ 42, 44. Nor can Proposed Intervenors count on adequate representation by the

State of Alaska or any of the other named defendants. DOJ's Complaint is based in substantial part on Defendant Beecher's prior attempt—reversed by the Alaska Supreme Court—to disqualify the same candidate that DOJ asserts will cause voter confusion. *See id.* ¶¶ 22–23. In light of those past actions, Proposed Intervenors have reason to fear that Defendant Beecher may not vigorously oppose DOJ's requested relief.

Further, federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (quoting *Trbovich*, 404 U.S. at 538 n.10). Thus, courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," even where the

parties' interests "seem[] closely aligned," as the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted). In other words, even if one or more of the State defendants were to oppose the relief that DOJ seeks at a high level of abstraction—a perhaps doubtful proposition in light of Defendant Beecher's involvement with the prior administrative process discussed in DOJ's complaint—it does not follow that they would share "identical" interests to the electoral and partisan interests of Alaskans for Mary and DSCC. *See id.*

Because the existing defendants are government entities and officials, they do not share "identical" interests with Proposed Intervenors. Defendants are obliged to carry out Alaska's electoral process, in theory without preferencing any individual candidate. Proposed Intervenors, in contrast, are focused entirely on ensuring that Peltola is elected in Alaska and, in DSCC's case, that DOJ does not succeed in interfering with the certifications of victories by Democratic candidates, both in Alaska and across the country. *See Craig*, 493 F. Supp. 3d at 781 (holding that because the proposed intervenor was "a candidate for [Congress]," the candidate's "interests are not adequately represented by the existing [State] defendant"); *see also, e.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 21, 2016) (concluding adequate representation was not guaranteed where existing defendant was "an elected official" whose interpretation of legal requirements might not be aligned with intervenors' interests).

For similar reasons, defendants may have incentives to settle the case on terms favorable to DOJ in order to avoid potential retaliation from DOJ (or the federal

government more broadly). Defendants may justifiably fear such retaliation, particularly given President Trump's personal directive to file this lawsuit. Indeed, less than a year ago, Alaska gave DOJ an unredacted copy of its entire statewide voter file, providing DOJ with access to highly sensitive information about every one of its voters merely because DOJ asked for it,[9] even while dozens of other States refused DOJ's request because it had no authority to request such information (notably, those States have uniformly succeeded in resisting such efforts in court). *See United States v. Hobbs*, No. C25-6078-KKE, 2026 WL 2833713, at *1 & n.3 (W.D. Wash. Sep. 22, 2026) (collecting cases in which federal courts dismissed lawsuits in which DOJ attempted to gain the same information from other states). Courts regularly find inadequate representation where an existing party may resolve a case on terms that Proposed Intervenors would not agree to. *See, e.g.*, *City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 986 (7th Cir. 2011) (explaining that a possible "conflict of interest . . . when it comes to settlement possibilities" favors intervention); *Kleissler*, 157 F.3d at 974 (similar); *cf. United States v. City of Portland*, No. 3:12-cv-02265-SI, 2013 WL 12309780, at *5 (D. Or. Feb. 19, 2013) (finding lack of adequate representation where parties disagreed on terms of settlement agreement).

In sum, the government entities and public officials on both sides of this case have markedly different interests than Proposed Intervenors and thus do not sufficiently represent their interests, which are directly impacted by the disposition of this matter.

---

[9] *See* Press Release, Div. of Elections, State of Alaska, Lt. Gov. Submits Alaska Voter Registration List to the U.S. Dep't of Justice (Dec. 23, 2025), https://perma.cc/6PX5-HAFZ.

## II. Alternatively, Proposed Intervenors should be granted permissive intervention.

If the Court denies intervention as of right, it should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: Proposed Intervenors assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Proposed Intervenors have moved promptly, so there will be no delay or prejudice to the existing parties. *See supra* Section I.A. And Proposed Intervenors' defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. A (Proposed Intervenors' Proposed Answer).

The Ninth Circuit has also identified additional considerations the Court can weigh for permissive intervention requests. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). Those considerations—including the proposed intervenors' interests, the adequacy of the representation for their interests, and the intervenors' contribution to the factual and legal issues—buttress the case for intervention here. *See id.*

*First*, Proposed Intervenors have especially stark interests at stake. Alaskans for Mary is the principal campaign committee for Mary Peltola, and the relief DOJ seeks would prevent Alaska from certifying Peltola's victory if she wins by a narrow margin. DSCC's interests are equally strong. DSCC's principal mission is to help Democrats regain control of the Senate, and Peltola is a Democrat running in a competitive Senate race. Preventing certification of the election results would directly frustrate DSCC's mission. These are

precisely the sort of significant interests that courts in this circuit have held warrant intervention. *See, e.g.*, *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention for DCCC, DSCC's counterpart for the U.S. House of Representatives, in a challenge to a California executive order concerning mail-in voting, in part because of DCCC's interest in "advancing [the Democrats'] overall electoral prospects"); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (similarly granting a motion to intervene by DCCC in a suit concerning election rules based on DCCC's interest in "ensur[ing] the election of Democratic Party candidates").

*Second*, for the reasons explained above, the interests of Alaskans for Mary and DSCC are not adequately represented by the existing Defendants. Indeed, Proposed Intervenors' "private interests" in securing Peltola's election to the U.S. Senate are "different in kind from the public interests of the State or its officials." *La Union del Pueblo Entero*, 29 F.4th at 309. The disparity in interests is particularly salient here, given Alaska election officials' previous determination disqualifying Daniel J. Sullivan from the ballot, on which DOJ bases its claim here.

*Third*, Proposed Intervenors will contribute to the "full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Indeed, many of the factual allegations in the complaint directly concern Peltola and her campaign. *See* Compl. ¶¶ 1, 2, 31, 34. These

allegations not only supply Alaskans for Mary with an independent protectable interest in this litigation, *see N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 562 (E.D.N.C. 2022) (holdingthat a party could intervene as of right, in part because there were "numerous allegations in plaintiffs' amended complaint concerning the intervenor[]" to which it was entitled to respond), they also underscore why Proposed Intervenors' participation will help elucidate the issues at stake. "Courts often allow the permissive intervention of political parties in actions challenging voting laws for exactly th[ese] reason[s]." *Democratic Party of Virginia v. Brink*, No. 3:21-CV-756-HEH, 2022 WL 330183, at *2 & n.5 (E.D. Va. Feb. 3, 2022) (collecting cases).[10]

Because Rule 24 is liberally construed to protect Proposed Intervenors' rights and interests, and because Proposed Intervenors' participation will assist rather than prejudice the efficient development and resolution of this matter, the Court should grant permissive intervention if it does not find that Proposed Intervenors may intervene as of right.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that the Court grant intervention as of right—or in the alternative grant permissive intervention.

[10] *See also Ariz. All. for Retired Ams. v. Hobbs*, No. CV-22-01374-PHX-GMS, 2022 WL 4448320, at *3 (D. Ariz. Sept. 23, 2022) (collecting cases); *Nielsen v. DeSantis*, No. 4:20CV236-RH-MJF, 2020 WL 6589656, at *1 (N.D. Fla. May 28, 2020) (granting permissive intervention to Republican-affiliated organizations "with experienced attorneys who might well bring perspective that others miss or choose not to provide"); *Martin*, 347 F. Supp. 3d at 1307 (alternatively granting congressional campaign permissive intervention in case involving counting of ballots).

Dated: October 23, 2026.

REEVES AMODIO LLC
Attorneys for Proposed Intervenors

By: /s/ *Thomas P. Amodio*
Thomas P. Amodio, ABA #8511142
*tom@reevesamodio.com*

By: /s/ *Lily Ginsburg*
Lily Ginsburg, ABA #2411117
*lginsburg@reevesamodio.com*

By: /s/ *Kevin M. Boots*
Kevin M. Boots, ABA #0912090
*kevin@reevesamodio.com*

500 L Street, Suite 300
Anchorage, Alaska 99501
Telephone: (907) 222-7100

David R. Fox*
Joshua Abbuhl*
Qizhou Ge*
Max C. Accardi*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 948-1135
*dfox@elias.law*
*jabbuhl@elias.law*
*age@elias.law*
*maccardi@elias.law*

**Pro Hac Vice* Applications Forthcoming

Attorneys for Proposed Intervenors
Alaskans for Mary and DSCC

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system. Participants in this Case No. 3:26-cv-00376-SLG who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Lily Ginsburg*
Lily Ginsburg