Cindy Woods (AK Bar # 2510078)
Eric Glatt (AK Bar # 1511098)
ACLU of Alaska Foundation
P.O. Box 90744
Anchorage, AK 99509
(907) 258-0044
cwoods@acluak.org

Ari Savitzky* (AK Bar # NA21918)
Ming Cheung*
Theresa J. Lee* (AK Bar # NA21922)
Garrett Muscatel*
Sophia Lin Lakin* (AK Bar # NA21593)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org

*Attorneys for Proposed Intervenors Risé Roy, Jan Jakub Grzeda, League of Women Voters of Alaska, and Common Cause*

**Application for pro hac vice admission forthcoming*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br>v.<br><br>STATE OF ALASKA; CAROL BEECHER, *in her official capacity as Director of the Division of Elections of the State of Alaska*; THE ELECTION BOARDS OF THE STATE OF ALASKA; and THE STATE BALLOT COUNTING REVIEW BOARD OF THE STATE OF ALASKA,<br><br>*Defendants*. | Case No. 3:26-cv-00376-SLG |

**MEMORANDUM OF RISÉ ROY, JAN JAKUB GRZEDA, LEAGUE OF WOMEN VOTERS OF ALASKA, AND COMMON CAUSE IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..... i

INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Factual Background ..... 2

II. Proposed Intervenors ..... 3

ARGUMENT ..... 5

I. MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT. ..... 5

A. The Motion to Intervene Is Timely. ..... 6

B. Proposed Intervenors Have Concrete Interests in the Underlying Litigation. ..... 7

C. The State's Interests Are Different from Those of Proposed Intervenors. ..... 9

II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION ..... 12

CONCLUSION ..... 14

WORD COUNT CERTIFICATION ..... 15

## INTRODUCTION

Less than two weeks before the November 2026 election, after early voting has already begun, in its latest salvo to intrude on the constitutional prerogative of states to administer their own elections,[1] the United States has sued Alaska, seeking to stop the state process of certifying an election if the results of the election come out a certain way.

Proposed Intervenors are Risé Roy and Jan Jakub Grzeda, registered Alaska voters who have voted and intend to vote in the 2026 mid-term election, and the League of Women Voters of Alaska (LWVAK) and Common Cause, nonpartisan membership organizations dedicated to grassroots voter engagement whose members' right to vote are at risk by the relief sought by the United States in this case. Proposed Intervenors have a strong interest in the certification of free and fair election results in the Alaska Senate contest. Alaska voters have an overwhelming interest in ensuring that their ballots are counted and the results of their elections are certified. And LWVAK and Common Cause have an interest in protecting the voting rights of their members and all Alaska voters. The relief the federal government seeks risks disenfranchising Alaska residents entirely.

[1] *See, e.g.*, *United States v. Hobbs*, No. C25-6078-KKE, 2026 WL 2833713, at *1 n.3 (W.D. Wash. Sep. 22, 2026) (collecting cases where federal courts rejected DOJ efforts to demand unredacted state voter files); *League of Women Voters of Mass. v. Trump*, No. 1:26-CV-11549-IT, 2026 WL 2620871, at *1 (D. Mass. Sep. 4, 2026) (enjoining USPS Rule under which mail ballots would not be sent if they did not conform with new federal requirements), stay denied *sub nom*. *U.S. Postal Serv. v. California*, 26A305, 2026 WL 2687160 (U.S. Sep. 14, 2026); *League of United Latin Am. Citizens v. Exec. Off. of the President*, 818 F. Supp. 3d 34, 53 (D.D.C. 2026) (enjoining Executive Order that sought to unilaterally implement documentary proof of citizenship).

Proposed Intervenors are entitled to intervene as of right under Rule 24 as this motion is timely, their rights and interests are at stake, and those rights and interests are not adequately represented by the existing Defendants, who, unlike Proposed Intervenors, are a state actor subject to broader public policy and political considerations outside of the legal issues presented in this case. This may be especially so as the Alaska Supreme Court had already ruled against Defendants in their attempt to deny a candidate a place on the Alaska ballot.[2] Proposed Intervenors' unique interest in standing up for the rights of Alaska voters and resisting the United States' unprecedented request to invalidate a free and fair election result will ensure the full development of the record and aid the Court in its resolution of this case. This Court should grant intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b).

## BACKGROUND

### I. Factual Background

On October 22, 2026, the United States initiated this lawsuit seeking to prohibit the certification of the 2026 Senate Election depending on the election's outcome, citing potential voter confusion based on the names of candidates on the ballot. This case comes on the heels of state court litigation on this very issue.[3] On June 15, 2026, Director of the

---

[2] *See* Order on Admin. Appeal, *Sullivan v. State*, *Div. of Elections*, No. 3AN-26-07485CI, (Alaska Super. Ct. June 26, 2026), *aff'd sub nom. State*, *Div. of Elections v. Sullivan*, No. S-19935 (Alaska June 29, 2026).

[3] *Sullivan v. State, Div. of Elections*, No. 3AN-26-07485CI (Alaska Sup. Ct. June 26, 2026), Dkt. No. 2; *State, Div. of Elections v. Sullivan*, No. S-19935 (Alaska June 29, 2026), Dkt. No. 34.

Alaska Division of Elections Carol Beecher, removed Senate candidate Daniel J. Sullivan, Jr., from the ballot in response to a complaint from the Alaska Republican Party. The Anchorage Superior Court reversed her decision and ordered Daniel J. Sullivan, Jr., to be placed on the ballot, and the Alaska Supreme Court affirmed on June 29, 2026.

The United States did not seek to intervene in that case, and no appeal was taken to the U.S. Supreme Court. Nevertheless, with less than two weeks until the midterm election, after ballots had been printed and sent out, and early voting had begun, the United States filed this lawsuit, claiming that the inclusion of Daniel J. Sullivan, Jr., would cause "confusion" amounting to a violation of the legislative purpose section of the National Voter Registration Act (NVRA).[4] Its only legal claim rests on language from the NVRA's findings and purposes about protecting "the integrity of the electoral process."[5] As for relief, the United States asked this Court to intervene in Alaska's imminent election to block the certification of the result and impose an inquisition into the intentions of voters before allowing certification of the election to proceed.[6]

## II. Proposed Intervenors

Proposed Intervenors Risé Roy and Jan Jakub Grzeda, are eligible, registered Alaska voters, who have voted and intend to vote in the 2026 midterm election.[7] Ms. Roy resides

---

[4] Compl. ¶¶ 37, 42, Dkt. No 1.

[5] *Id*.

[6] Compl. ¶¶ 43–44.

[7] *See* Ex. 2, Decl. of Risé Roy (Roy Decl.) ¶ 3; Ex. 3, Decl. of Jan Jakub Grzeda (Grzeda Decl.) ¶ 3.

in Fairbanks, Alaska, where she has lived for over 40 years.[8] Ms. Roy has already voted in the 2026 election, and could readily tell from the face of her ballot which candidate with the last name Sullivan was the incumbent U.S. Senator and which was not.[9] She would be deprived of her constitutional right to vote and have her vote translated into representation if the relief sought by the United States was granted.[10] Mr. Grzeda is planning on voting in the 2026 election, including for the office of U.S. Senator.[11] He values his right to a secret ballot and strongly objects to any efforts to intrude upon the secrecy of the ballot.[12] Mr. Grzeda will be disenfranchised if the state is prohibited from certifying election results.[13] Such an action would have the effect of nullifying the ballots and voice of every single Alaskan.[14]

Proposed Intervenor LWVAK is a 501(c)(3) nonprofit, nonpartisan, membership organization committed to educating Alaskan voters; encouraging voter involvement in local, state, and federal elections; and ensuring voter access and protection.[15] LWVAK has

---

[8] Roy Decl. ¶ 2.

[9] *Id*. ¶ 3.

[10] *Id.* ¶ 6.

[11] Grzeda Decl. ¶ 3.

[12] *Id.* ¶ 5.

[13] *Id.* ¶ 6.

[14] *Id.*

[15] *See* Ex. 4, Decl. of Sarah Moore (Moore Decl.) ¶ 3.

approximately 500 members across the state.[16] Those members include Alaska voters who have voted or intend to vote in the November 2026 general election.[17] These members will be deprived of their right to vote if the United States prevails in this lawsuit.[18]

Proposed Intervenor Common Cause is a nonpartisan organization committed to, *inter alia*, ensuring that all eligible Alaska voters register to vote and exercise their right of suffrage at each election.[19] Common Cause has more than 2,500 members in Alaska.[20] Those members include Alaska voters who have voted or intend to vote in the November 2026 general election. These members will be deprived of their right to vote if the United States prevails in this lawsuit.[21]

## ARGUMENT

### I. MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Proposed Intervenors are entitled to intervene as of right. Rule 24(a)(2) provides that courts "must permit anyone to intervene" who:

> (1) on timely motion,
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,

---

[16] Moore Decl. ¶ 7.

[17] *Id*.

[18] *See* Moore Decl. ¶ 6.

[19] *See* Ex. 5, Decl. of Elena Nunez (Nunez Decl.) ¶¶ 2, 5–7.

[20] *See* Nunez Decl. ¶ 4.

[21] *See* Nunez Decl. ¶ 6.

(3) unless existing parties adequately represent that interest.[22]

Courts generally construe Rule 24(a) "broadly in favor of proposed intervenors."[23] Because the Proposed Intervenors easily meet Rule 24 (a)'s requirements, the Court should grant their intervention as a matter of right.

### A. The Motion to Intervene Is Timely.

Courts consider three "primary factors" in evaluating timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."[24] As with the Rule 24(a) inquiry more generally, the Ninth Circuit interprets these factors "broadly in favor of intervention."[25]

This motion is timely. The United States filed this suit on October 22, 2026,[26] and upon receiving notice of the suit, Proposed Intervenors promptly prepared this motion.[27] Further, the State has not yet appeared or filed an answer or a motion to dismiss, meaning

---

[22] *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022) (quotation marks and alterations omitted); *see also Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011).

[23] *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002).

[24] *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (quotation marks and citation omitted).

[25] *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022).

[26] *See* Compl.

[27] *See Kalbers*, 22 F.4th at 825 (interval of "just a few weeks" "weigh[ed] in favor of timeliness"); *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (motion to intervene was timely where it was filed within four months of when applicants learned of proposed consent decree); *Issa v. Newsom*, No. 20-cv-1044, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020) (finding motion timely where "no substantive proceedings ha[d] occurred").

that the case is at its earliest stage, and intervention will not unduly delay or prejudice existing parties.

### B. Proposed Intervenors Have Concrete Interests in the Underlying Litigation.

Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation.[28,29] To demonstrate a "significantly protectable interest" relating to the subject matter of the action, the intervenor must (1) assert "an interest that is protected under some law," and (2) show that "there is a relationship between its legally protected interest and the plaintiff's claims."[30] Here, Proposed Intervenors have multiple, independently sufficient interests that support intervention as of right.

*First*, Intervenors have a significant, concrete interest in preventing the disenfranchisement of Alaska voters. The right to vote is fundamental.[31] and includes not only the right to cast a ballot, but the right to have their ballots counted.[32] Ms. Roy, Mr. Grzeda, and LWVAK and Common Cause members have a concrete interest in not being disenfranchised themselves.[33] Refusing to certify and setting aside the result of a free and

---

[28] *Donaldson v. United States*, 400 U.S. 517, 531 (1971).

[29] This interest requirement is less stringent than the injury-in-fact requirement for purposes of establishing Article III standing. *See Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991).

[30] *Kalbers*, 22 F.4th at 827 (quotation marks and citation omitted).

[31] *Short v. Brown*, 893 F.3d 671, 676 (9th Cir. 2018).

[32] *See United States v. Classic*, 313 U.S. 299, 315 (1941).

[33] *See* Roy Decl. ¶ 6; Grzeda Decl. ¶ 6; Moore Decl. ¶¶ 7, 9;Nunez Decl. ¶ 6.

fair election constitutes an outright denial of the right to vote and fundamentally undermines the democratic principles of this nation.

*Second*, Proposed Intervenors have protectable interests at stake because their core organizational missions will be harmed if the relief sought is granted. Both LWVAK's and Common Cause's core civic participation and engagement activities will be harmed if Alaska's election results are set aside in this frivolous litigation.[34]

The litigation may result in an order that directly affects these interests. To prevail here, intervenors "do not need to establish that their interests *will* be impaired. Rather, they must demonstrate only that the disposition of the action 'may' impair or impede their ability to protect their interests."[35] "This burden is minimal."[36] Once intervenors establish that they have a significant protectable interest, courts typically "have little difficulty concluding that the disposition" of the case "may, as a practical matter, affect [that interest]."[37]

Here, the threat of impairment is significant. The United States seeks an order prohibiting the certification of Alaska's Senate election results.[38] With less than two weeks

---

[34] *See* Moore Decl. ¶¶ 10–11; Nunez Decl. ¶¶ 5–8.

[35] *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (internal citations omitted).

[36] *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (quotation marks and citation omitted).

[37] *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

[38] *See* Compl. ¶¶ 43–44.

until election day, this attempt to throw out the will of Alaska voters militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests.

Courts routinely find that nonpartisan public interest organizations, like LWVAK and Common Cause, should be granted intervention in election-related cases, due to their significantly protectable interests related to voting.[39] This case is no exception. Indeed, courts have granted LWVAK, Common Cause, similar organizations, and individual voters intervention in litigation brought by DOJ against States relating to election issues.[40]

### C. The State's Interests Are Different from Those of Proposed Intervenors.

Courts in this Circuit consider three factors in evaluating adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer

---

[39] *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111–12 (D.C. Cir. 2015); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078, 2020 WL 8262029, at *1 (M.D. Pa. Nov. 12, 2020); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–800 (E.D. Mich. 2020); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874, at *1–2 (D. Kan. Dec. 12, 2013).

[40] *See, e.g.*, Minute Order, *United States v. Amore*, No. 1:25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026); Order, *United States v. Galvin*, 1:25-CV-13816 (D. Mass Jan. 6, 2026), Dkt. No. 30; Order, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Jan. 6, 2026), Dkt. No. 90; Minute Order, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Dec. 19, 2025), Dkt. No. 25; Minute Order, *United States v. Weber*, No. 25-cv-09149, (C.D. Cal. Nov. 19, 2025), Dkt. No. 70.

any necessary elements to the proceeding that other parties would neglect."[41] Proposed Intervenors' "burden of making [this] showing should be treated as minimal," and Proposed Intervenors need not show that representation of their interests *will* be inadequate, but rather only that "representation [of their interests] *may be* inadequate."[42]

Proposed Intervenors meet this minimal burden here. As government officials, Defendants have a generalized interest in carrying the State's and their offices legal obligations and in minimizing burdens on governmental employees and resources. They also must consider broader public policy concerns, including the need to maintain working relationships with federal officials. In contrast, Proposed Intervenors bring a distinct, particular interest to this litigation, making the existing representation inadequate: the perspective of civil rights groups whose sole commitment is to ensuring access to the ballot and individual voters whose own rights are at risk.[43]

Defendants also might not raise arguments and issues that are critical to Proposed Intervenors. For example, members' and individual voters' own constitutional rights are threatened by the requested relief, and Defendants clearly possess vastly different interests from those who are disenfranchised. As another example, courts have found that political considerations external to the legal issues presented by cases like this can motivate

---

[41] *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quotation marks and citation omitted).

[42] *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added).

[43] *See T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020).

elections officials to pursue a settlement that could jeopardize the individual voting rights of Proposed Intervenors and their members.[44] Alaska has already taken positions contrary to those of Proposed Intervenors—and aligned with those of the United States here—in state court litigation surrounding potential voter confusion in the Senate race.[45]

These diverging perspectives—between the government's general need to balance various considerations and Proposed Intervenors' personal and particular interest in vindicating their right to vote—favor granting intervention.[46] Even if Defendants and Proposed Intervenors had similar litigation positions in this matter, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'"[47] These diverging interests justify intervention here.

---

[44] *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-C-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger*, 597 U.S. at 198 (reversing denial of motion to intervene where board of elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

[45] *See generally Sullivan*, No. 3AN-26-07485CI, *aff'd sub nom. State, Div. of Elections*, No. S-19935.

[46] *See, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups"); *Kobach*, 2013 WL 6511874, at *4 (finding that applicants who had interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of an elections agency).

[47] *Citizens for Balanced Use*, 647 F.3d at 899 (internal citation omitted).

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Should the Court decline to grant intervention as of right, the Court should use its broad discretion to grant permissive intervention. The Court may utilize its broad discretion to grant permissive intervention when the movant files "a timely motion" and raises a claim or defenses that share "a common question of law and fact" with the "main action."[48] "In exercising its discretion," a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[49] Other factors that courts often evaluate include "the nature and extent of the intervenors' interest," the "legal position [the intervenors] seek to advance," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."[50]

Permissive intervention is appropriate here. As discussed above, this motion is timely, there will be no delay or prejudice to the adjudication of the existing parties' rights, and their interests are not adequately represented by any of the existing parties. And Proposed Intervenors' defense goes directly to the matters at issue, such as whether federal law permits the United States to prohibit Alaska from certifying its elections. Proposed Intervenors' distinct perspective on the legal and factual issues before the Court will thus

---

[48] *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (internal quotation marks and citation omitted).

[49] Fed. R. Civ. P. 24(b)(3).

[50] *Callahan*, 42 F.4th at 1022 (citation omitted).

complement or amplify any defense against this suit and sharpen the issues and the quality of the record, aiding the Court in resolving the issues before it. The proposed "intervention would not add any new issues to this litigation."[51] Instead, Proposed Intervenors are trying to offer their unique perspective, including the perspective of individual voters who stand to be disenfranchised if the United States obtains the relief it seeks.[52]

Because of this unique perspective, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action.[53]

The recent *Republican National Committee v. Aguilar* decision is instructive on this point.[54] There, various groups sought to intervene in a case where plaintiffs sought to "compel the State to remove from the [voter] rolls voters whom they claim[ed were] ineligible" to vote. *Id.* at *1, *3. The court granted permissive intervention, finding intervenors would "contribute to the just and equitable resolution of the issues before" it because they had a "singular purpose" of "ensur[ing] voters [were] retained on or restored

---

[51] *Ceja-Corona v. CVS Pharmacy, Inc.*, No. 12-cv-1868, 2014 WL 792132, at *3 (E.D. Cal. Feb. 26, 2014).

[52] *See id*.

[53] *See, e.g.*, *Tirrell v. Edelblut*, No. 24-cv-251, 2025 WL 1939965, at *4 (D.N.H. July 15, 2025) (allowing "a membership-based organization that represents cisgender athletes" to intervene as a defendant in a suit challenging state restrictions on transgender athletes); *Judicial Watch, Inc. v. Pennsylvania*, No. 20-cv-708 (M.D. Pa. Nov. 19, 2020), Dkt. No. 50 at 3 (granting permissive intervention in NVRA case to Common Cause and other organizations upon finding that "the presence of the intervenors may serve to clarify issues and thereby serve judicial economy" (quotation marks, citation, and footnote omitted)).

[54] No. 24-cv-518, 2024 WL 3409860 (D. Nev. July 12, 2024).

to the rolls," which provided a "counterbalance" to plaintiffs that the State could not provide due to its "split mission" of "easing barriers to registration and voting" and "protecting electoral integrity." *Id.* The same reasoning applies here. As such, if it does not grant intervention as of right, this Court should exercise its discretion to allow permissive intervention under Rule 24(b).

## CONCLUSION

For all these reasons, the Court should grant this Motion.

DATED: October 23, 2026

Respectfully submitted,

/s/ Eric Glatt
Eric Glatt (AK Bar # 1511098)
Cindy Woods (AK Bar # 2510078)
ACLU of Alaska Foundation
1057 W. Fireweed Lane, Ste 207
Anchorage, AK 99503
(907) 258-0044
eglatt@aclualaska.org
cwoods@acluak.org

Ari Savitzky* (AK Bar # NA21918)
Ming Cheung*
Theresa J. Lee* (AK Bar # NA21922)
Garrett Muscatel*
Sophia Lin Lakin* (AK Bar # NA21593)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org
mcheung@aclu.org
tlee@aclu.org
garrettmuscatel@aclu.org
slakin@aclu.org

**Application for pro hac vice admission forthcoming*

*Attorneys for Proposed Intervenors Risé Roy, Jan Jakub Grzeda, League of Women Voters of Alaska, and Common Cause*

**WORD COUNT CERTIFICATION**

I hereby certify that the foregoing document, exclusive of caption and signatures, contains less than 5,700 words typed in Times New Roman, 13-point font.

*/s/ Eric Glatt*
Eric Glatt
ACLU of Alaska Foundation