STANLEY E. WOODWARD, JR.
Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Phone: (202) 514-9500
Email: Stanley.Woodward@usdoj.gov

E. BRYAN WILSON
Assistant U.S. Attorney
U.S. Attorney's Office
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Email: Bryan.Wilson@usdoj.gov

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>State of Alaska; Carol Beecher, in her official capacity as Director of the Division of Elections of the State of Alaska; the Election Boards of the State of Alaska; and the State Ballot Counting Review Board of the State of Alaska,<br><br>Defendants. | Civ. No. 3:26-cv-00376-SLG |

**PLAINTIFF'S OPPOSITION TO MOTIONS TO INTERVENE**

## INTRODUCTION

With no apparent sense of irony, Proposed Intervenors decry "a nationwide attack on free elections"—in defense of including on the ballot a sham candidate whose sole reason for running is to mislead voters into accidently voting for him, with the goal of assisting the Democrat on the ballot (Proposed Intervenors' preferred candidate). As the Wall Street Journal Editorial Board recently put it when discussing this case: "Please spare us the lectures about election interference."[1]

For today's purposes, however, the issue is intervention. And the analysis is straightforward. The State Defendants share the same interest as Proposed Intervenors in this litigation: expeditious dismissal. The State Defendants have demonstrated that they will vigorously pursue that shared interest. As such, Proposed Intervenors cannot make the required compelling showing that Defendants do not adequately represent their interests. So they are not entitled to intervention as a matter of right. No discretionary considerations support permissive intervention, either. Both motions should be denied.

## BACKGROUND

### A. Factual Background

Daniel J. Sullivan decided to run for Senator in 2026 as a Republican with the intention of misleading supporters of Senator Sullivan into voting for him. Compl. at ¶ 2. The sole purpose of his candidacy is to benefit the Peltola campaign by reducing the number of votes for Senator Sullivan. *Id.*

[1] Editorial Board, *Exposing "Decoy Dan" in Alaska*, WALL ST. J., Oct. 23, 2026.

On June 15, 2026, Defendant Carol Beecher, in her official capacity as Director of the Division of Elections of the State of Alaska, informed Mr. Sullivan that his "declaration of candidacy was not properly filed with the Division because it was not filed in order to declare an actual good-faith candidacy for the office of United States Senator, but was instead filed with a purpose to confuse or mislead and to thereby compromise the ballot's fairness or neutrality." Compl. Ex. A.

The Alaska Division of Elections detailed several facts supporting its conclusion that Mr. Sullivan is running a fraudulent candidacy:

- Mr. Sullivan requested that the ballot display his name as "Dan Sullivan"—the same name used by Senator Sullivan—even though Mr. Sullivan did not register to vote under the name "Dan Sullivan."
- According to the Division, Mr. Sullivan "requested to be designated on the ballot as affiliated with the Republican Party"—the same party as Senator Sullivan—but had never previously "been affiliated with the Republican Party in Alaska." His choice to "change [his] affiliation to the same political party … as the incumbent Senator … immediately before filing a declaration of candidacy in which [he] asked to access the ballot under the same name – in a shortened form [he'd] never used before - as the incumbent Senator strongly suggests an intent to confuse [him]self with the incumbent Senator rather than to distinguish [him]self from him."

- Although Mr. Sullivan decided to run as a Republican, he worked with a political consultant who is "a known longtime supporter of Democratic candidates including the primary Democratic challenger to Senator Sullivan." Additionally, Mr. Sullivan admitted in a July 18, 2026, interview with The New York Times that he voted for Democrats in the last three presidential elections and voted for Peltola when she ran for Congress.
- Mr. Sullivan's "public campaign website … uses a format, color scheme and overall theme similar to the public website for Senator Sullivan's campaign … This again suggests an intention not to distinguish yourself from the incumbent Senator as any candidate genuinely seeking office would do, but to confuse Alaskans as to which 'Dan Sullivan' is which."

*Id.*

Mr. Sullivan sought judicial review of the Division's determination. A trial court held that the Division erred in excluding him from the ballot. *Daniel J. Sullivan, Jr. v. Division of Elections*, No. 3AN-26-07485CI (Alaska Sup. Ct. June 26, 2026). The Alaska Supreme Court summarily affirmed and indicated that a "full opinion will be issued at a later date." *Alaska v. Daniel J. Sullivan, Jr.*, No. S-19935 (Alaska June 29, 2026). The Alaska Supreme Court has yet to issue that opinion. As a result of the Alaska Supreme Court's summary decision, Daniel J. Sullivan will be included on Alaska's ballot for the November 2026 general election.

Mr. Sullivan's presence on the ballot threatens to mislead Alaskan citizens who want to vote for Senator Sullivan. Compl. ¶ 33. Some supporters of Senator Sullivan likely will inadvertently vote for Daniel J. Sullivan. *Id.* Other supporters of Senator Sullivan likely will be confused as to how to rank the three Republican candidates as to defeat Peltola. *Id.* They might not rank Senator Sullivan at all, resulting in votes for Daniel J. Sullivan to be transferred to Peltola after Daniel J. Sullivan's all-but-guaranteed elimination in the first or second round of tabulations. *Id.*

Many polls indicate that the race between Senator Sullivan and Peltola will be within one or two percentage points, and Mr. Sullivan received 2.5% of the vote in the primary election. *Id.* ¶ 34. Thus, there is a realistic chance that, even if a majority of Alaskans wish to vote for Senator Sullivan, Mr. Sullivan's presence on the ballot will result in a tainted victory for Peltola. *Id.*

### B. Procedural History

On October 22, 2026, the United States initiated this action pursuant to the National Voter Registration Act (NVRA). ECF No. 1. The NVRA imposes a variety of duties on States for the purpose of "protect[ing] the integrity of the electoral process." 52 U.S.C. § 20501(b)(3); *see id.* §§ 20503-20509. And Congress has provided that "[t]he Attorney General may bring a civil action . . . for such declaratory or injunctive relief as is necessary to carry out" Chapter 205 of Title 52 of the U.S. Code, which covers the NVRA. *See id.* § 20510(a).

As set forth in the Complaint, there is a substantial likelihood that the inclusion of Daniel J. Sullivan will confuse or mislead voters looking to cast a vote for Senator Sullivan, and thus distort the will of Alaskan voters. Compl. ¶ 41. The Complaint further explains that, to guard against this danger, it is vital that Defendants not certify any election result that may be impacted by voter confusion. *Id.* ¶ 42. That does not mean any result in which Peltola wins. Rather, an election result may be impacted by voter confusion if: (1) Senator Sullivan does not win the election; *and* (2) had votes cast for Daniel J. Sullivan been cast instead for Senator Sullivan and Alaska's rank-choice process played out accordingly, Senator Sullivan would have won the election. *Id.*

To limit the damage of Mr. Sullivan's fraud, and to maintain the integrity of Alaska's election in accordance with the NVRA, the Complaint asks the Court to (1) declare that certification of any result that may be impacted by voter confusion, as defined above, would violate Defendants' duties under the NVRA to "protect the integrity of the electoral process[,]" 52 U.S.C. § 20501(b)(3); and (2) enjoin Defendants from certifying any result that may be impacted by voter confusion, as defined above, pending an investigation to determine whether votes cast for Daniel J. Sullivan were meant to be cast for Senator Sullivan and any further procedures or relief this Court deems necessary and appropriate to determine what the result would have been absent Daniel J. Sullivan's inclusion on the ballot. Compl. ¶¶ 43-44.

One day after the United States filed its Complaint (before any Defendant appeared in the case), several partisan persons and organizations sprang into action to defend their

sham candidate. Relevant here, Alaskans For Mary and the Democratic Senatorial Campaign Committee moved to intervene. ECF No. 5. Separately, Risé Roy, Jan Jakub Grzeda, League of Women Voters of Alaska, and Common Cause (together with Alaskans For Mary and the Democratic Senatorial Campaign Committee, the "Proposed Intervenors") moved to intervene. ECF No. 6. The Court granted Proposed Intervenors' request for expedited consideration and ordered the United States to respond to the two motions to intervene by October 27, 2026, at 5:00 p.m. ECF No. 15. Subsequently, Defendants appeared in this action and filed their own motion to dismiss and corresponding motion to expedite. ECF Nos. 16-18.

In accordance with the Court's instructions, the United States addresses only the two motions to intervene in the present filing.

## LEGAL STANDARDS

Rule 24(a)(2) of the Federal Rules of Civil Procedure requires a court to permit intervention of right by a movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Courts in this Circuit apply the following four-part test when analyzing a motion to intervene of right under Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the

> applicant's interest must be inadequately represented by the parties to the action.

*Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (citing *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)).

Under Rule 24(b), "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."

## ARGUMENT

### I. Proposed Intervenors are Not Entitled to Intervene as a Matter of Right Because their Interests are Adequately Represented by the State Defendants.

Notably, Alaskans For Mary and the Democratic Senatorial Campaign Committee are adamant that they have "especially stark interests" in ensuring that Mr. Sullivan's decoy candidacy continues without any steps to prevent voter confusion. ECF No. 5 p.18. The campaign thus all but concedes that the effect of this farce, consistent with its obvious intent, is to help Peltola electorally. Confusing voters is not a cognizable, protectable interest. But for purposes of this opposition, the United States assumes that Proposed Intervenors can satisfy the first three prongs of intervention as of right.

Regardless, Proposed Intervenors are not entitled to intervene because the State Defendants adequately protect their interests. Courts in this Circuit consider three factors in deciding whether a present party adequately represents the interests of a proposed intervenor:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party

> is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Callahan*, 42 F.4th at 1020 (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). "If the proposed intervenor's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Id*. at 1020-21 (citation omitted).

Proposed Intervenors rushed to this Court on a faulty assumption that the State Defendants would not vigorously defend against the claims asserted in this action. Since then, Defendants have filed motions seeking total dismissal on an expeditated basis. ECF Nos. 16-18. The Proposed Intervenors have the same interest as Defendants in this litigation: expeditious dismissal. Comparing Defendants' motion to dismiss with the proposed motions to dismiss filed by Proposed Intervenors confirms as much. All three motions seek dismissal of this suit in its entirety. All three seek expeditious dismissal. And all three proceed on the (erroneous) argument that the United States fails to state a cause of action under NVRA. *Compare* State Motion at pp. 12-16, *with* ECF No. 6-1 pp. 12-18 and ECF No. 8-1 pp. 9-15. Defendants are not only willing and able to advance Proposed Intervenors arguments—they already have. So whatever "doubt" Proposed Intervenors may have had as to whether the State Defendants would vigorously defend this action has now unquestionably been eliminated.

Beyond positing hypothetical future motives, Proposed Intervenors fail to even allege *how* they would be litigating this case differently than Defendants. "When a

proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has vested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997). Here, Proposed Intervenors cannot even point to a disagreement over litigation strategy. Proposed Intervenors will add nothing but redundant paper to this litigation.

Five days into this litigation, it is hard to imagine how Defendants could have more aggressively defended against the claim asserted. Thus, Proposed Intervenors are unable to show that Defendants do not adequately represent their interests. They are not entitled to intervene as a matter of right.

## II. <u>No Discretionary Considerations Support Permissive Intervention Here</u>

Permissive intervention is not warranted either. Under Rule 24(b)(2), a court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." But even if the Court determines that the initial conditions for permissive intervention under rule 24(b) are met, "it is then entitled to consider other factors in making its discretionary decision on the issue of permissive intervention." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). The relevant additional factors include:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once

> denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Id*. (footnotes omitted); *see also Callahan*, 42 F.4th at 1022 (describing these *Spangler* factors as "nonexclusive").

These discretionary factors counsel against intervention. As explained above, Proposed Intervenors' Interests are already more than adequately represented by the State Defendants. So they will not meaningfully contribute to the development of any legal or factual issues in this case. At best they will clog up the docket with duplicative motions full of charged (and inaccurate) rhetoric. All in defense of a sham candidate. The Court should exercise its discretion to prevent these proceedings from devolving in that manner.

Proposed Intervenors' arguments to the contrary are unpersuasive. Their premise—that the United States "demands that this Court enjoin the certification of the ongoing U.S. Senate election, but only if the President's preferred candidate loses" and that the "relief the federal government seeks risks disenfranchising Alaska residents entirely"—misunderstands what the United States is seeking in this action. The United States is not seeking to prevent the certification of a candidate's victory. Rather, the Complaint seeks tailored relief to prevent Mr. Sullivan from compromising the integrity of Alaska's election. To the extent Proposed Intervenors have admitted that they have "especially stark interests" in undermining election integrity by propping up a sham candidate, that "interest" should simply be ignored.

## CONCLUSION

For the foregoing reasons, the Motions to Intervene (ECF Nos. 5, 6) should be denied. As a result, Alaskans For Mary and the Democratic Senatorial Campaign Committee's Motion for Leave to File Motion to Dismiss (ECF No. 8) should also be denied.

Dated: October 27, 2026

Respectfully submitted,


STANLEY E. WOODWARD, JR.
Associate Attorney General

/s/ *Stanley Woodward*
Stanley E. Woodward, Jr.
*Associate Attorney General*
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Phone: (202) 514-9500
Email: Stanley.Woodward@usdoj.gov

E. BRYAN WILSON
Assistant U.S. Attorney

/s/ E. Bryan Wilson
E. Bryan Wilson
*Assistant U.S. Attorney*
U.S. Attorney's Office
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Bryan.Wilson@usdoj.gov
*Attorneys for the United States of America*

**Certificate of Service**
I hereby certify that on October 27, 2026, a true and correct copy of the foregoing document was served electronically through the CM/ECF system upon all case participants who are registered CM/ECF users.

/s/ E. Bryan Wilson
Office of the U.S. Attorney