David R. Fox*
Joshua Abbuhl*
Qizhou Ge*
Max C. Accardi*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 948-1135
*dfox@elias.law*
*jabbuhl@elias.law*
*age@elias.law*
*maccardi@elias.law*

*Appearing *Pro Hac Vice*

Thomas P. Amodio
Kevin M. Boots
Lily Ginsburg
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
*tom@reevesamodio.com*
*kevin@reevesamodio.com*
*lginsburg@reevesamodio.com*

Attorneys for Proposed Intervenors
Alaskans for Mary and DSCC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF ALASKA; CAROL BEECHER, in her official capacity as Director of the Division of Elections of the State of Alaska; the ELECTION BOARDS of the STATE OF ALASKA; and the BALLOT COUNTING REVIEW BOARDS of the STATE OF ALASKA,

Defendants.

Case No. 3:26-cv-00376-SLG

**ALASKANS FOR MARY AND DSCC'S REPLY IN SUPPORT OF MOTION TO INTERVENE**

## INTRODUCTION

DOJ concedes that Alaskans for Mary and DSCC meet three of the four elements required for intervention as of right, arguing only that intervention should be denied because the existing State Defendants supposedly already provide adequate representation. But just yesterday, the State Defendants correctly noted that "[i]t is well-established that candidates and their campaigns have sufficient interest in election litigation to support intervention," and made clear that *they* do *not* oppose Alaskans for Mary and DSCC's intervention. ECF No. 20 at 2. In doing so, State Defendants effectively acknowledge that they cannot adequately represent these intervenors' unique interests, and that conclusion tracks both governing precedent and common sense: the partisan and electoral interests of Alaskans for Mary and DSCC in winning the election are fundamentally different in kind from State Defendants' generalized interests in avoiding federal interference with the State's management of Alaska's election, which the State Defendants are charged with administering evenhandedly among all candidates (including Mary Peltola's opponents).

At bottom, DOJ's only argument is that, because State Defendants also seek the prompt dismissal of DOJ's frivolous claim, they adequately represent Alaskans for Mary and DSCC's interests. But if that were the test, then a prospective litigant would almost *never* be allowed to intervene as of right as a defendant, since virtually every defendant also prefers prompt dismissal. That is not the law. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (holding the fact that a proposed

intervenor "occup[ies] the same posture in the litigation" is insufficient to defeat intervention).

As for permissive intervention, DOJ concedes that Alaskans for Mary and DSCC meet every element but asks the Court to nonetheless exercise its discretion to block their involvement, arguing that Alaskans for Mary and DSCC "misunderstand[] what the United States is seeking in this action," and that it "is not seeking to prevent the certification of a candidate's victory." ECF No. 26 ("Opp.") at 11. This bald-faced assertion is contradicted by the Complaint itself, which asks the Court to enjoin Alaska "from certifying any result" of the senatorial election if the President's preferred candidate, Senator Sullivan, narrowly loses. ECF No. 1 ("Compl.") ¶ 44. Alaskans for Mary and DSCC have an "obvious personal stake" in opposing DOJ's attempts to block certification of a Peltola victory. *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 79 (2026). DOJ's targeted threat to Alaskans for Mary and DSCC's interests gives them the right to intervene in this matter, and at the very least warrants permissive intervention.

This case is not about whether Daniel J. Sullivan is qualified to appear on the ballot—the Alaska Supreme Court definitively resolved that question months ago. Nor is it about Mr. Sullivan's reasons for running. Rather, it is about whether DOJ can enjoin Alaska's lawful certification of the U.S. Senate election if the President's preferred candidate loses, based on a snippet from the statement of purpose of a voter registration statute that does nothing to regulate the ballot access and design issues that DOJ raises. And this motion is about whether the campaign and political party whose potential victory

DOJ explicitly seeks to block can intervene to defend against its unlawful effort. Of course they can. The Court should grant Alaskans for Mary and DSCC's motion to intervene.

## ARGUMENT

### I. Alaskans for Mary and DSCC are entitled to intervene as a matter of right.

DOJ does not contest that Alaskans for Mary and DSCC have established the first three elements for intervention as of right, Opp. at 8, tacitly conceding that (1) the motion to intervene was timely, (2) they have a "significantly protectable" interest in this case, and (3) disposition of this case might "impair or impede [their] ability to protect that interest." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quotation omitted). DOJ disputes only the fourth element—namely, whether the existing State Defendants adequately represent Alaskans for Mary and DSCC's interests. Opp. at 8–9.

DOJ's argument, in essence, is that because Alaskans for Mary and DSCC and the existing State Defendants have all filed motions seeking "expeditious dismissal" of this case, their interests are "identical." Opp. at 9. But the Ninth Circuit has squarely rejected this argument, holding that simply sharing the same litigation posture as existing parties does not establish adequacy of representation, especially when—in a case such as this one—the existing parties must "represent[] . . . the public interest" and the proposed intervenors seek to advance their own "parochial interest[s]." *Citizens for Balanced Use*, 647 F.3d at 899 (quotation omitted); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (cautioning courts against defining parties' interests at too "high [a] level of abstraction" and affirming that the burden of demonstrating inadequate representation is "minimal").

That principle applies with special force in the election context, where political parties and candidates have a specific *competitive* interest in elections, *Bost*, 607 U.S. at 79, that state election officials—who must treat all candidates and parties evenhandedly—obviously do not share. Put simply, Alaskans for Mary and DSCC want Mary Peltola to win the 2026 Senate race and for the results of that race to be duly certified "full stop," while State Defendants must "bear in mind broader public-policy implications" of the litigation. *Berger*, 597 U.S. at 195–96. Thus, courts routinely hold that the interests of political parties and candidates are *not* adequately represented by state officials, even when both happen to "fall on the same side of the dispute." *See, e.g.*, *Issa v. Newsom*, No. 2:20-cv-1044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (holding Democratic Party organization's interest in "advancing [Democrats'] overall electoral prospects" was sufficiently different from state's "interests in the implementation of" its election laws to warrant intervention); *Paher v. Cegavske*, No. 3:20-cv-243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (similarly granting a motion to intervene by DCCC in a suit concerning election rules based on DCCC's interest in "ensur[ing] the election of Democratic Party candidates").[1]

[1] *See also La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022) (noting that political committees have "private interests . . . different in kind from the public interests of the State or its officials"); *Craig v. Simon*, 493 F. Supp. 3d 773, 781 (D. Minn. 2020) (granting intervention as of right to congressional candidate); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1307 (N.D. Ga. 2018) (same for congressional campaign committee); *Hoblock v. Albany Cnty. Bd. of Elections*, 233 F.R.D. 95, 100 (N.D.N.Y. 2005) (same for electoral candidates).

DOJ's assertion that State Defendants and Alaskans for Mary and DSCC advance similar arguments in seeking dismissal, *see* Opp. at 9, ignores the meaningful differences between the parties' motions. State Defendants do not significantly develop why the *Purcell* doctrine bars DOJ's claim, *but see* ECF No. 8-1 (Alaskans for Mary and DSCC's proposed Motion to Dismiss) at 23, nor do they identify the same constitutional concerns with DOJ's requested "investigation" as Alaskans for Mary and DSCC, *but see id.* at 22. State Defendants also do not explicitly argue that the Complaint fails to plausibly allege a risk of voter confusion, *but see id.* at 16–19. Moreover, unlike Alaskans for Mary and DSCC, State Defendants suggest DOJ's claim may be "not yet ripe," with the implication that it may become ripe *after the election*. *See* ECF No. 18 at 10. That argument is directly at odds with Alaskans for Mary and DSCC's interest in a final resolution of this case *now*, on the merits, so that it is not "hang[ing] like the Sword of Damocles over the ongoing election." ECF No. 9 at 1.

Alaskans for Mary and DSCC also have good reason to fear that State Defendants will not fully protect their interests, whether now or at some later time in the lawsuit. The entire thrust of DOJ's Complaint is that Defendant Beecher *was correct* to seek to disqualify Mr. Sullivan from the ballot, a decision that was only overturned after litigation. The Ninth Circuit has found a lack of adequate representation from a government agency when the agency adopted the proposed intervenors' position only "reluctantly in response to successful litigation," *Citizens for Balanced Use*, 647 F.3d at 900, as is the situation here.

Further, even if State Defendants *currently* assert some of the same arguments as Alaskans for Mary and DSCC, that is no guarantee that State Defendants "will *undoubtedly* make *all* of [the proposed intervenors'] arguments," as is required to show adequate representation. *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (emphasis added). Nor is it guaranteed that State Defendants will *maintain* their position throughout litigation. *See Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998) (finding representation inadequate because "it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts"). Again, this is of particular concern given Defendant Beecher's previous agreement with DOJ's assertion of voter confusion. It is far from unheard of for a State to change positions as high-stakes and politically charged litigation progresses. *See* Suppl. Br. for Appellant Louisiana, *Louisiana v. Callais*, No. 24-109 (U.S. Aug. 27, 2025) (Louisiana changing positions and declining to defend congressional map it had defended in the lower courts).

If there is any doubt about whether State Defendants can adequately represent Alaskans for Mary and DSCC, the fact that State Defendants do not wish to do so should end it. State Defendants *agree* that Alaskans for Mary and DSCC "have sufficient interest in election litigation to support intervention" and therefore do not oppose their intervention. ECF No. 20 at 2. And while State Defendants specifically indicate that they can "represent the interests of *Alaskan voters*," *id.* (emphasis added), they pointedly and rightly do not claim to be able to represent the different interests of Alaskans for Mary and DSCC. Alaskans for Mary and DSCC are "the best judge of the representation of the applicant's

own interests," 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024), and given the stakes, they cannot be assured that State Defendants will adequately represent those interests. Alaskans for Mary and DSCC are therefore entitled to intervene as of right.

## II. In the alternative, the Court should grant permissive intervention.

Alaskans for Mary and DSCC also readily satisfy the standards for permissive intervention. Indeed, DOJ does not dispute "that the initial conditions for permissive intervention under rule 24(b) are met." Opp. at 10. That makes sense: as explained in their motion to intervene, Alaskans for Mary and DSCC have an obvious interest in the outcome of this case and will contribute to the "full development" of the factual and legal issues. *See Callahan*, 42 F.4th at 1022. DOJ responds to this interest by asserting that it does not seek to "prevent the certification of a candidate's victory," Opp. at 11, but the Complaint expressly asks the Court to enjoin Alaska from certifying the election pending an undefined "investigation" into voter motivations if the President's preferred candidate loses (although the Complaint accidentally omits the word "enjoin"). *See* Compl. ¶ 44. DOJ does not—and cannot—dispute that such relief would profoundly undermine Alaskans for Mary and DSCC's "obvious personal stake in how the result" of their candidate's election "is determined and regarded." *Bost*, 607 U.S. at 79. "Courts often allow the permissive intervention of political parties in actions challenging voting laws for exactly th[ese] reason[s]." *Democratic Party of Va. v. Brink*, No. 3:21-CV-756-HEH, 2022 WL 330183, at *2 & n.5 (E.D. Va. Feb. 3, 2022) (collecting cases); *see also Ariz. All. for Retired Ams. v. Hobbs*, No. CV-22-01374-PHX-GMS, 2022 WL 4448320, at *3 (D. Ariz. Sep. 23, 2022)

(collecting cases) ("[C]ourts have allowed political parties to intervene as defendants in similar lawsuits."). DOJ cites no example of a court denying intervention to a candidate or party committee in a lawsuit that threatens certification of their potential electoral victory, nor can it. There is no reason for the Court to decline to allow Alaskans for Mary and DSCC to join this lawsuit to protect their concrete, electoral interests.

## CONCLUSION

The Court should grant Alaskans for Mary and DSCC's motion to intervene.

Dated: October 28, 2026.

REEVES AMODIO LLC

By: /s/ *Thomas P. Amodio*
Thomas P. Amodio, ABA #8511142
*tom@reevesamodio.com*

By: /s/ *Lily Ginsburg*
Lily Ginsburg, ABA #2411117
*lginsburg@reevesamodio.com*

By: /s/ *Kevin M. Boots*
Kevin M. Boots, ABA #0912090
*kevin@reevesamodio.com*

500 L Street, Suite 300
Anchorage, Alaska 99501
Telephone: (907) 222-7100

David R. Fox*
Joshua Abbuhl*
Qizhou Ge*
Max C. Accardi*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 948-1135
*dfox@elias.law*
*jabbuhl@elias.law*
*age@elias.law*
*maccardi@elias.law*

*Appearing *Pro Hac Vice*

Attorneys for Proposed Intervenors
Alaskans for Mary and DSCC

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2026, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court for the District of Alaska by using the CM/ECF system. Participants in this Case No. 3:26-cv-00376-SLG who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Kevin M. Boots*
Kevin M. Boots