Nathaniel L. Bach*
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4204
NBach@Manatt.com

Max A. Jacobs*
MANATT, PHELPS & PHILLIPS, LLP
1 Beacon Street, 11th Floor
Boston, MA 02108
(617) 646-1450
MJacobs@Manatt.com

Richard L. Hasen*
Shelby Wayment*
SAFEGUARDING DEMOCRACY PROJECT
385 Charles E. Young Drive East
Los Angeles, California 90095
(310) 206-3103
hasenr@gmail.com
wayment.shelbyk@gmail.com

**Pro Hac Vice Applications Pending*

Attorneys for Amicus Curiae Richard L. Hasen

**IN THE UNITED STATES DISTRICT**

**COURT FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>STATE OF ALASKA; CAROL BEECHER, in her official capacity as Director of the Division of Elections of the State of Alaska; the ELECTION BOARDS of the STATE OF ALASKA; and the BALLOT COUNTING REVIEW BOARDS of the STATE OF ALASKA<br><br>Defendants. | Case No. 3:26-cv-00376-SLG |

**[PROPOSED] BRIEF OF AMICUS CURIAE RICHARD L. HASEN IN SUPPORT OF DEFENDANT STATE OF ALASKA**

## TABLE OF CONTENTS


TABLE OF CONTENTS ii

TABLE OF AUTHORITIES iii

INTEREST OF AMICUS CURIAE 1

INTRODUCTION 2

ARGUMENT 6

I. Laches bars the federal government's attempt to interfere with Alaska's certification process. 6

II. Congress did not hide the Executive Branch's ability to interfere with state election certification in the preamble of a voter registration statute. A reading of that statute granting such powers would be unconstitutional, violating both the major questions doctrine and federalism canons. 12

CONCLUSION 17

CERTIFICATE OF COMPLIANCE 18

CERTIFICATE OF SERVICE 19

## TABLE OF AUTHORITIES

### Cases


*Am. Encore v. Fontes*, 152 F.4th 1097 (9th Cir. 2025) ........ 8

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ........ 13

*Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985) ........ 16

*Bost v. Illinois State Board of Elections*, 607 U.S 71 (2026) ........ 7

*Bush v. Gore*, 531 U. S. 1046 (2000) ........ 7

*EEOC v. Alioto Fish Co.*, 623 F.2d 86 (9th Cir. 1980) ........ 8

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ........ 16

*League of United Latin Am. Citizens v. Exec. Office of the President*, 818 F. Supp. 3d 34 (D.D.C. 2026) ........ 3, 15

*Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026) ........ 15

*Liddy v. Lamone*, 919 A.2d 1276 (Md. 2007) ........ 12

*Maryland State Bd. of Elections v. Ambridge*, 330 A.3d 700 (Md. 2025). ........ 8

*Mehling v. Moorehead*, 14 N.E. 2d 15 (Ohio 1938) ........ 8

*Murphy v. NCAA*, 584 U.S. 453 (2018) ........ 6, 16

*NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887 (7th Cir. 1990) ........ 8

*Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89 (1984) ........ 16

*People not Politicians v. Onder*, 609 U.S.__ (Sept. 25, 2026) ........ 7

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ........ 7

*Republican National Committee v. Democratic National Committee*, 589 U. S. 423 (2020) ........ 6

*Reschenthaler v. Schmidt*, 776 F. Supp. 3d 280 (M.D. Pa. 2024) ........ 11

*Sackett v. EPA*, 598 U.S. 651 (2023) ........ 6

*Smith v. Scioto Cnty Bd. of Elections*, 918 N.E. 2d 131 (Ohio 2009) ........ 10

*Southwest Voter Registration Educ. Project v. Shelley*, 344 F. 3d 914 (9th Cir. 2003).... 11

*State v. Sullivan*, Case No. S-19935 (Alaska June 29, 2026). ........................................... 9

*Teigen v. Wisconsin Elections Comm'n*, 976 N.W.2d 519 (Wis. 2022) .......................... 11

*Trump v. Biden*, 951 N.W.2d 568 (Wis. 2020)......................................................... 10, 11

*United States Postal Service v. California*, 609 U.S. __ (Sept. 14, 2026) .......................... 4

*United States v. California*, Order Denying Temporary Restraining Order (Case No. 2:26-cv-12025-DOC-ADS) (Oct. 28, 2026) ...................................................................... 5

*United States v. State of California*, No. 26-7070, 2026 WL 3212945 (9th Cir. October 26, 2026)................................................................................................................ 13

*West Virginia v. EPA*, 597 U.S. 697 (2022) ............................................................. 15, 16

*Whitman v. Am. Trucking Ass'ns., Inc.*, 531 U.S. 457 (2001)...................................... 6, 15

**Statutes**

52 U.S.C. § 20501(b)(3) ................................................................................................ 16

**Other Authorities**

Andrew Howard, Erin Doherty, Alec Hernandez, Samuel Benson, & Lauren Fedor, *Facing an Electoral Wipeout, Trump Goes After the System*, POLITICO (Oct. 24, 2026, 7:00 AM) ................................................................................................... 2

Charlie Savage, *Why Legal Experts See the Justice Dept.'s Alaska Election Challenge as Dubious*, N.Y. TIMES (Oct. 23, 2026) ........................................................ 2

Derek Muller, *Citing Preamble to NVRA, DOJ Sues to Enjoin Certification of Alaska's Senate Race (It Won't Go Anywhere)*, ELECTION LAW BLOG (Oct. 23, 2026, 4:31 AM) ................................................................................................... 2

Devlin Barrett & Kellen Browning, *On Trump's Order, Justice Dept. Seeks to Block Alaska Vote If Republican Loses,* N.Y. TIMES (Oct. 23, 2026) ...................................... 4

Edward B. Foley, *Everything Wrong with the DOJ's Uniquely Embarrassing Lawsuit Against Alaska*, MS NOW (Oct. 26, 2026, 5:48 PM) ........................................ 2

*Exec. Order No.* 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025) ........................................... 3

*Exec. Order No.* 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026) .......... 4

Giulia Carbonaro, *Mary Peltola Campaign Uses Trump's Truth Social Post in Alaska Legal Filing*, NEWSWEEK (Oct. 26, 2026, 7:56 AM) .......... 2

Glenn Thrush, Alan Feuer, & Devlin Barrett, *With 'Flood-the-Zone Strategy,' Justice Dept. Steps Up Moves as Midterms Near*, N.Y. TIMES (Oct. 27, 2026, 6:18 PM) .......... 3

Joshua A. Douglas, *The Press Shouldn't Hype Trump's Bogus Alaska Lawsuit*, WASHINGTON MONTHLY (Oct. 26, 2026) .......... 2

Karen Yourish & Arfa Momin, *Trump Has Cast Doubt on Elections on 456 Days in His Second Term*, N.Y. TIMES (Oct. 27, 2026) .......... 4

Kellen Browning, *Inside Democrats' Secret Effort to Stack Alaska's Ballot*, N.Y. TIMES (Oct. 28, 2026, 10:37 AM) .......... 9

RESTATEMENT (THIRD) OF TORTS: REMEDIES § 53 (Tent. Draft. No. 3, 2024) .......... 7

RESTATEMENT (THIRD) OF TORTS: REMEDIES § 53 Reporters' Note *e* .......... 10

Richard L. Hasen, *Beyond the Margin of Litigation: Reforming U.S. Election Administration to Avoid Electoral Meltdown*, 62 WASH. & LEE L. REV. 937 (2005) .......... 8

Tom Verdin, *Judge Blocks Additional Citizenship Provisions in Latest Setback to Trump's Wide-Ranging Election Executive Order*, PBS (Feb. 2, 2026, 10:41 AM) .......... 3

U.S. Const. amend. X. .......... 6, 13

U.S. Const. art. I, § 4 .......... 6, 13

U.S. Const. art. I, § 5 .......... 6, 13

## INTEREST OF AMICUS CURIAE

Richard L. Hasen is the Gary T. Schwartz Endowed Chair in Law and Professor of Political Science at UCLA School of Law, where he directs the Safeguarding Democracy Project.

From 2001–2010, he served (with Dan Lowenstein) as founding co-editor of the quarterly peer-reviewed publication, *Election Law Journal*. He is the author of five university press books on election law, co-author of leading casebooks in election law and remedies, and author of over 100 articles on election law issues, published in journals including the *Harvard Law Review*, *Stanford Law Review*, *Supreme Court Review*, and *Yale Law Journal*. He was elected to The American Law Institute in 2009 and serves as Reporter (with Professor Douglas Laycock) on the ALI's law reform project: Restatement (Third) of Torts: Remedies.[1] He was among the first scholars to write about the *Purcell* principle in election litigation. Richard L. Hasen, *Reining in the Purcell Principle*, 43 FL. ST. L. REV. 427 (2017).

He writes this brief to assist the Court by explaining how this litigation fits into the larger legal and political context, and to address two issues at the intersection of remedies law and election law.

---

[1] Hasen files in his individual capacity, and not as a representative of any group or organization (including UCLA and the American Law Institute). No party other than amicus and his counsel wrote or contributed to the costs associated with filing this brief.

## INTRODUCTION

"[T]he legal argument is one of the worst I have ever seen."[2] "[C]ompletely meritless."[3] "[S]craping the bottom of the barrel," a "desperation play" that has "zero basis in the law."[4] "[O]ne of the weakest lawsuits I've ever seen."[5] "[U]niquely embarrassing, likely filed only because Trump himself insisted on it."[6] "[U]nconstitutional and unprecedented."[7] Leading election law experts from across the political spectrum have

---

[2] Comments of Derek Muller. Derek Muller, *Citing Preamble to NVRA, DOJ Sues to Enjoin Certification of Alaska's Senate Race (It Won't Go Anywhere)*, ELECTION LAW BLOG (Oct. 23, 2026, 4:31 AM), https://electionlawblog.org/2026/citing-preamble-to-nvra-doj-sues-to-enjoin-certification-of-alaskas-senate-race-it-wont-go-anywhere/.

[3] Comments of Michael Morley. Giulia Carbonaro, *Mary Peltola Campaign Uses Trump's Truth Social Post in Alaska Legal Filing*, NEWSWEEK (Oct. 26, 2026, 7:56 AM), https://www.newsweek.com/mary-peltola-campaign-uses-trump-truth-social-post-in-alaska-legal-filing-midterms-12617587.

[4] Comments of Ben Ginsberg. Andrew Howard, Erin Doherty, Alec Hernandez, Samuel Benson, & Lauren Fedor, *Facing an Electoral Wipeout, Trump Goes After the System*, POLITICO (Oct. 24, 2026, 7:00 AM), https://www.politico.com/news/2026/10/24/trump-alaska-election-justice-department-01134590.

[5] Comments of Richard Pildes. Charlie Savage, *Why Legal Experts See the Justice Dept.'s Alaska Election Challenge as Dubious*, N.Y. TIMES (Oct. 23, 2026), https://www.nytimes.com/2026/10/23/us/alaska-senate-doj-lawsuit-trump.html.

[6] Comments of Edward B. Foley. Edward B. Foley, *Everything Wrong with the DOJ's Uniquely Embarrassing Lawsuit Against Alaska*, MS NOW (Oct. 26, 2026, 5:48 PM), https://www.ms.now/opinion/trump-doj-lawsuit-alaska-senate-election-certification.

[7] Comments of Joshua A. Douglas. Joshua A. Douglas, *The Press Shouldn't Hype Trump's Bogus Alaska Lawsuit*, WASHINGTON MONTHLY (Oct. 26, 2026), https://washingtonmonthly.com/2026/10/26/the-press-shouldnt-hype-trumps-bogus-alaska-lawsuit/.

uniformly derided this lawsuit filed by the United States. The error-filled[8] complaint seeks to derail Alaska's normal and constitutionally protected processes for certifying election results, and it includes the preposterous argument that the preamble to a federal voter *registration* statute mentioning "integrity" grants the federal government vast powers to interfere with state election *certification* processes (and who knows what else).

This lawsuit fits into the much larger and troubling pattern of attempted federal interference in the 2026 midterm elections at the direction of President Donald J. Trump. It was President Trump's 2025 executive order that told the United States Election Assistance Commission to change the federal voter registration form to require documentary proof of citizenship for voter registration.[9] A federal district court blocked this attempt, holding that "[p]ut simply, our Constitution does not allow the President to impose unilateral changes to federal election procedures."[10] It was President Trump's 2026 executive order that would have set up the United States Postal Service as gatekeeper for

---

[8] Glenn Thrush, Alan Feuer, & Devlin Barrett, *With 'Flood-the-Zone Strategy,' Justice Dept. Steps Up Moves as Midterms Near*, N.Y. TIMES (Oct. 27, 2026, 6:18 PM), https://www.nytimes.com/2026/10/27/us/politics/trump-blanche-elections-comey.html ("The Justice Department's lawsuit in Alaska last week omitted the key verb describing the action it wanted the court to take.").

[9] *Exec. Order No.* 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025).

[10] *League of United Latin Am. Citizens v. Exec. Office of the President*, 818 F. Supp. 3d 34, 53 (D.D.C. 2026) [hereinafter "LULAC"]; Tom Verdin, *Judge Blocks Additional Citizenship Provisions in Latest Setback to Trump's Wide-Ranging Election Executive Order*, PBS (Feb. 2, 2026, 10:41 AM), https://www.pbs.org/newshour/politics/judge-blocks-additional-citizenship-provisions-in-latest-setback-to-trumps-wide-ranging-election-executive-order.

mail ballots around the country and, given USPS's inability to put in place a system for processing mail ballots in time for the 2026 elections, would have stopped all mail ballots from being delivered in this election.[11] The Supreme Court blocked implementation of the USPS rule despite DOJ trying three successive emergency petitions to that Court.[12] And it was President Trump who said he directed his DOJ to file this suit ("I'm the one that said to do it")[13]—an unsurprising development given that the President has tried to cast doubt over the integrity of American elections on 456 days (and counting) of his second term.[14]

The State of Alaska[15] well covers the myriad reasons why DOJ's complaint in this case should be dismissed. Dkt. 18. This brief focuses on two overarching legal points that are fatal to the United States's litigation here, as well as to the federal government's

---

[11] *Exec. Order No.* 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026).

[12] *United States Postal Service v. California*, 609 U.S. (slip op. at 1) (Sept. 14, 2026). (application for stay denied).

[13] Devlin Barrett & Kellen Browning, *On Trump's Order, Justice Dept. Seeks to Block Alaska Vote If Republican Loses,* N.Y. TIMES (Oct. 23, 2026), https://www.nytimes.com/2026/10/23/us/politics/justice-dept-alaska-senate-race-sullivan.html.

[14] Karen Yourish & Arfa Momin, *Trump Has Cast Doubt on Elections on 456 Days in His Second Term*, N.Y. TIMES (Oct. 27, 2026) https://www.nytimes.com/interactive/2026/10/09/us/politics/trump-elections-results-doubt-midterms.html.

[15] The other defendants are Carol Beecher in her official capacity as the Director of the Division of Elections of the State of Alaska, the Election Boards of the State of Alaska, and the State Ballot Counting Review Board of the State of Alaska. For simplicity, we simply refer to the State of Alaska.

attempts to interfere with California's tabulation process,[16] and to other litigation DOJ could file in coming days.

First, this lawsuit comes too late and should be barred by the doctrine of laches. Laches gives this Court discretion to bar a plaintiff's request for an injunction or other equitable relief when the plaintiff's unreasonable delay in suing prejudices the defendant or third parties. Laches has special importance in the elections context, where mistimed election litigation can undermine voter confidence in the electoral process and the judiciary, upset the process of administering elections, and potentially even reverse or determine election outcomes. Lawsuits late in the electoral process over issues that were foreseeable earlier come too late and should be barred. The United States's requested injunction blocking certification of a U.S. Senate race will prejudice the State of Alaska, election administrators, candidates, and voters by interfering with its lawful certification procedures. It is especially telling that the federal government waited until the last minute to sue, seeking relief if, and only if, its preferred candidate loses. Laches bars such conduct.

Second, these lawsuits are an unconstitutional federal government encroachment into the powers of states to set the time, place and manner of holding elections, and Congress's power to override such rules through legislation, not to mention the House and

---

[16] There, the district court denied the United States's request for a temporary restraining order, finding that the DOJ's actions are "indicative of a broad, ongoing pattern of attempted election interference by federal officials." *United States v. California*, Order Denying Temporary Restraining Order at 6 (Case No. 2:26-cv-12025-DOC-ADS, Dkt. 149) (Oct. 28, 2026).

Senate's right to ultimately determine each's respective election winners. U.S. Const. art. I, §§ 4, 5. Even though the executive branch plays no role in the administration of elections, the United States finds an "elephant in a mousehole,"[17] seeking a vast federal power to oversee state and local election processes from a non-germane election law statute that says no such thing. The United States's reading does not comport with the statute's plain meaning. It further violates the "major questions doctrine" and federalism canons that require unmistakably clear statements that Congress intended far-reaching delegation of power to the executive branch and exertion of that power over sovereign states and, not least of all, the Tenth Amendment, which reserves all undelegated powers to the States. U.S. Const. amend. X. The Supreme Court has recognized that these doctrines militate against the risk of tyranny. *Murphy v. NCAA*, 584 U.S. 453, 473 (2018).

## ARGUMENT

### I. Laches bars the federal government's attempt to interfere with Alaska's certification process.

In election litigation, timing is everything. The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican National Committee v. Democratic National Committee*, 589 U.S. 423, 424 (2020) (per curiam). Such late-breaking, court-ordered rule changes can "result in voter confusion and consequent incentive to remain away from the polls," and

---

[17] *See, e.g.*, *Sackett v. EPA*, 598 U.S. 651, 677 (2023) ("We have often remarked that Congress does not 'hide elephants in mouseholes' by 'alter[ing] the fundamental details of a regulatory scheme in vague terms or ancillary provisions.'" (quoting *Whitman v. Am. Trucking Ass'ns., Inc.*, 531 U.S. 457, 468 (2001)).

thus undermine the "[c]onfidence in the integrity of our electoral processes . . . essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam); *see also Republican Party of Pennsylvania v. Degraffenreid*, 592 U.S. 1287, 1290–91 (2021) (Thomas, J., dissenting from denial of certiorari) (slip op., at 4–5). This "*Purcell* principle applies with even greater force" when "an election is not merely upcoming; it has already started." *People not Politicians v. Onder*, 609 U.S. __ (Sept. 25, 2026) (per curiam) (slip op., at 3).

"The democratic consequences can be even more dire if courts intervene only after votes have been counted. 'Count first, and rule upon legality afterwards, is not a recipe for producing election results that have the public acceptance democratic stability requires.'" *Bost v. Illinois State Board of Elections*, 607 U.S. 71, 80 (2026) (quoting *Bush v. Gore*, 531 U.S. 1046, 1047 (2000) (Scalia, J., concurring in grant of stay)). In *Bost,* the Supreme Court explained that post-election litigation is "worse" for public confidence in the electoral process and is best to be avoided when it is possible to sue earlier. *Id*.

The timing defense of laches is consistent with these Supreme Court concerns. It provides that "[t]he court should generally deny an injunction or any other historically equitable remedy if the plaintiff unreasonably delayed in filing suit and the defendant was prejudiced." RESTATEMENT (THIRD) OF TORTS: REMEDIES § 53 (Tent. Draft. No. 3, 2024).[18]

[18] This Restatement has now been approved by the American Law Institute and is awaiting publication. *Restatement of the Law Third, Torts: Remedies Is Approved*, https://www.ali.org/news/articles/restatement-law-third-torts-remedies-approved. All

Laches "has particular import in the election context." *Maryland State Bd. of Elections v. Ambridge*, 330 A.3d 700, 725 (Md. 2025).[19] When an election is ongoing, "the rules of the road must be clear and settled." *Am. Encore v. Fontes*, 152 F.4th 1097, 1121 (9th Cir. 2025). The disruption and potential of voter confusion when rules are changed during or after an election jeopardizes electoral integrity. An election "should not be disturbed when there was full opportunity to correct any irregularities before the vote was cast." *Mehling v. Moorehead*, 14 N.E. 2d 15, 20 (Ohio 1938).

Without laches, candidates or other plaintiffs with a stake in the election who come across an election problem might sit on their hands and say nothing about the problem, raising the issue only if their side loses. *See* Richard L. Hasen, *Beyond the Margin of Litigation: Reforming U.S. Election Administration to Avoid Electoral Meltdown*, 62 WASH. & LEE L. REV. 937, 998 (2005) ("Courts should see it as in the public interest in election law cases to aggressively apply laches so as to prevent litigants from securing options over election administration problems."). Appropriate application of laches can avoid the problems attendant with post-election litigation that the Supreme Court has recognized.

---

Tentative Drafts are available on Westlaw.

[19] Federal courts have recognized that laches may be applied against the federal government. *See, e.g.*, *EEOC v. Alioto Fish Co. Ltd.*, 623 F.2d 86, 88–89 (9th Cir. 1980) (dismissing EEOC suit as barred by laches after delay); *NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 894 (7th Cir. 1990) ("government suits in equity are subject to the principles of equity, laches is generally and we think correctly assumed to be applicable to suits by government agencies as well as by private parties.").

This is a particularly strong case for applying laches. This Court in its initial order laid out the many months of administrative procedures and litigation that took place in Alaska over whether and how Dan J. Sullivan should appear on the ballot given claims about potential voter confusion with another candidate, the incumbent Senator Dan S. Sullivan. Dkt. 15 at 1–4 (Order on Motion to Expedite Consideration). That earlier litigation culminated in an Alaska Supreme Court decision allowing Dan J. Sullivan on the ballot, where he appeared in the first round of balloting and appears in the final round of balloting now underway. *State v. Sullivan*, Case No. S-19935, Dkt. 34 (Alaska June 29, 2026) (summary decision).

The United States had all the information it needed to seek relief well before it filed its claim on October 22, 2026, when it first requested relief, nearly four months after the Alaska Supreme Court's decision. The basis of the federal government's lawsuit is potential voter confusion over having two candidates named "Dan Sullivan" on the ballot.[20] That point was obvious when Dan J. Sullivan filed as a candidate in May 2026, but the United States did not file at that time. Nor did it file while the lawsuit over Dan J. Sullivan's candidacy was pending before the Alaska courts; nor did it attempt to intervene in that state-court litigation. It did not file after the primary election in August, when it became

[20] New reporting on the potential motive for Dan J. Sullivan's candidacy is legally irrelevant to the voter confusion question raised by the federal government. Kellen Browning, *Inside Democrats' Secret Effort to Stack Alaska's Ballot*, N.Y. TIMES (Oct. 28, 2026, 10:37 AM), https://www.nytimes.com/2026/10/28/us/politics/alaska-dan-sullivan-conspiracy-peltola.html.

clear there would be two "Dan Sullivans" on the November ballot. It did not file before the ballot design for the general election was finalized. Both Dan J. Sullivan and Dan S. Sullivan appeared on the primary ballot, and the United States has presented no evidence that voters in the primary election were confused by the presence of two candidates named "Dan Sullivan." Instead, the United States has waited until the eleventh hour when voting is already underway to file this claim.[21] Even "worse" under the Supreme Court's election timing doctrines, *Bost*, 607 U.S. at 80, the United States requests that relief be granted only *after* the election, when a court decision could potentially change the outcome of the election.

Plaintiff's awareness of the existence of two Dan Sullivans on the Alaska ballot long before it filed this lawsuit is fatal. *Smith v. Scioto Cnty Bd. of Elections*, 918 N.E. 2d 131, 133–34 (Ohio 2009) (claim was barred by laches because challengers were aware of or should have been aware of disputed ballot language long before the special election). Plaintiffs must "seek injunctive relief in a timely manner in the election context." *Trump v. Biden*, 951 N.W.2d 568, 572–74 (Wis. 2020) (suit challenging votes cast by ballot drop box barred by laches when plaintiff raised it only after voters had cast their ballots).[22]

[21] Nor is it even clear that voters will face confusion. It is undisputed and evident from the federal government's complaint for declaratory and injunctive relief that Alaska's ballot lists Dan J. Sullivan as having no party affiliation, and lists Dan S. Sullivan as "Republican" and "Incumbent." Dkt. 1, Complaint for Declaratory and Injunctive Relief ¶ 32 [hereinafter "Complaint"].

[22] *See also* RESTATEMENT (THIRD) OF TORTS: REMEDIES § 53 Reporters' Note *e* ("A more recent election example is the Wisconsin litigation over whether absentee ballots may be returned by drop boxes and other means aside from the U.S. postal system. That dispute

"Interference with impending elections is extraordinary, [] and interference with an election after voting has begun is unprecedented." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F. 3d 914, 919 (9th Cir. 2003) (en banc).

Worse, the United States's unreasonable delay has compounded the prejudice to the State of Alaska and its reliance. At each step when the United States could have sued but did not, candidates, parties, voters, and election administrators reasonably relied upon the State's determination (including after the Alaska Supreme Court's order) that Dan J. Sullivan would be on the ballot. They planned their campaigns, spent significant campaign funds, decided their candidate ranking, ordered ballots, mailed candidate information, and took all the steps necessary to administer the now ongoing election.

The public will be harmed through the resulting voter confusion from *granting* the requested relief, not from the presence of two Dan Sullivans on the ballot. *Reschenthaler v. Schmidt*, 776 F. Supp. 3d 280, 292 (M.D. Pa. 2024) (recognizing harm from delay when

---

made it to the Wisconsin Supreme Court twice since the 2020 election. First, in a postelection challenge brought by then-President Donald Trump seeking to overturn the results of the 2020 election in Wisconsin, the court, on a 4-3 vote, declined to hold that collecting ballots through drop boxes in public parks violated state law; it held instead that Trump's claim was barred by laches because it was not raised before the election. *Allowing the claim to proceed could have disenfranchised voters who had already voted under the rules in place before the election and that had not been challenged before the election*. *Trump v. Biden*, 951 N.W.2d 568 (Wis. 2020). Later, the same court, again on a 4-3 vote, held that the use of drop boxes is illegal under state law in most circumstances. *Teigen v. Wisconsin Elections Comm'n*, 976 N.W.2d 519 (Wis. 2022). The one justice who switched sides in the two cases explained that laches controlled the outcome of the first case. He also had a different view on the merits with additional evidence with more time to consider the issue.") (emphasis added).

plaintiff's preferred remedy would lead to voter confusion); *Liddy v. Lamone*, 919 A.2d 1276, 1290 (Md. 2007) (delay prejudiced the electorate as a whole given the relief sought would have caused a great deal of uncertainty in the entire electoral process). Alaska voters may be dissuaded from voting altogether in the U.S. Senate race if they fear they may be interrogated by the federal government as to why they voted for a specific candidate or that their vote may not count toward determining the ultimate winner of the election.

The requested relief here is an unusually explicit example of a party attempting to exercise an option: the United States waited until the last minute, when it looks like its preferred candidate might lose, to file suit. The federal government's complaint remarkably but forthrightly seeks relief only if Senator Dan S. Sullivan loses the election. Complaint ¶ 42. It requests no relief if Dan J. Sullivan—or the other two candidates on the ballot—win the election; the government is only concerned about voter confusion impacting Dan S. Sullivan. In other words, the United States proposes a "heads we win, tails you lose" scenario that favors only one outcome.

Application of laches alone is reason enough to dismiss the complaint. There was no excuse or justification for the delay and the United States's claim should be barred by laches.

## II. Congress did not hide the Executive Branch's ability to interfere with state election certification in the preamble of a voter registration statute. A reading of that statute granting such powers would be unconstitutional, violating both the major questions doctrine and federalism canons.

This litigation is another attempt by the United States "to have a federal court dictate to [a state] the manner in which it must administer its own electoral process." *United States*

*v. State of California*, No. 26-7070, 2026 WL 3212945, at *16 (9th Cir. Oct. 26, 2026) (Sanchez, J., concurring) (rejecting injunction pending appeal in lawsuit seeking to force California election officials to segregate and potentially not count ballots from a federal government list of alleged non-citizens). The United States has no such power.

The Constitution in Article I, section 4 is explicit in giving states the power to set the time, place and manner for holding congressional elections, subject to congressional legislation overriding those rules. "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. art. I, § 4; *see also Arizona v. Inter Tribal Council of Arizona*, *Inc.*, 570 U.S. 1, 9 (2013) (Congress's exercise of its power over the "Times, Places and Manner" of congressional elections extends "so far as it is exercised, and no farther."). The Constitution further provides in section 5 of Article I that "Each House [*i.e.*, the Senate and House of Representatives] shall be the Judge of the Elections, Returns and Qualifications of its own Members." U.S. Const. art. I, § 5. Notably absent is any role for the executive branch to play. Absent that, the Tenth Amendment reserves powers to the states and the people. *Id.* amend. X.

Undeterred by the plain text of the Constitution, by 250 years of history of state and local administration of federal elections, and by the House and Senate having the power to resolve election disputes for each respective chamber, the United States purports to find federal executive branch authority over Alaska's process of certifying the winners of

elections in the preamble of a 1993 law, the National Voter Registration Act, which governs rules related to voter registration in federal elections. Complaint ¶ 43 (citing 52 U.S.C. § 20501(b)(3) ("The purposes of this chapter are . . . to protect the integrity of the electoral process")). The federal government asserts especially broad powers, seeking to block certification but providing no details as to how and when Alaska's certification process could be altered upon a finding (by whom?) of some amount (how much?) of voter confusion.

The United States would turn a voter registration statute's anodyne statement of purpose about promoting election "integrity" into a reservoir of vast federal power over state election processes. Under this reading, the federal government could assert an integrity interest to interfere at *every stage* of state and local election processes, from signature gathering and candidate qualification, to ballot design, choice of voting machines, operation of mail balloting, location of polling places, and tabulation of ballots. After all, each of these processes must be conducted with "integrity."

If Congress intended to give the federal government these breathtaking powers over states—contrary to American history and tradition—it would not hide such an intent in the *preamble* of a statute about *voter registration*. Dkt. 18 at 14 n.46 (citing cases holding that preambles and statements of purpose do not create enforceable rights).

The plain meaning of the NVRA's preamble gives the United States executive branch no powers over state and local election processes but, if there were any doubt, two separate canons of construction that the Supreme Court has repeatedly endorsed—the

major questions doctrine and the federalism canons—require Congress to speak in unmistakably clear, explicit language when making such a major change and encroaching on constitutionally-protected state powers.

The major questions doctrine presumes that Congress does not hide a delegation of broad authority to the executive branch in obscure ways or through "ambiguous language." *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 243 (2026). An agency "must point to 'clear congressional authorization' for the power it claims" and "something more than a merely plausible textual basis for the agency action is necessary." *West Virginia v. EPA*, 597 U.S. 697, 723 (2022).

As the Supreme Court has often emphasized, Congress does not "hide elephants in mouseholes." *Whitman*, 531 U.S. at 468. "That maxim of statutory interpretation is particularly relevant when the Executive Branch purports to exercise far-reaching powers on the theory that Congress has delegated its authority over an important topic." *LULAC*, 818 F. Supp. 3d at 100. In *LULAC*, the federal district court held that a statute giving the President's designee the power to "prescribe" the federal voter registration form gave no power for the President to alter requirements to require documentary proof of citizenship. *Id.* Similarly here, the elephant of federal control over all aspects of state election processes is not hiding in the mousehole of the NVRA's preamble.

The NVRA does not provide "clear congressional authorization," allowing the federal government to upend state election processes in support of its favored candidate. *West Virginia*, 597 U.S. at 723. The government's claim is not a "common sense"

interpretation of the NVRA and would instead be an "extraordinary grant[] of regulatory authority." *Id.* at 722–23. "One of the Judiciary's most solemn duties is to ensure that acts of Congress are applied in accordance with the Constitution in the cases that come before us." *Id.* at 736 (Gorsuch, J., concurring). To agree with the United States in this case would fundamentally change election administration in the United States.

The requirement that the federal government's executive branch point to a clear Congressional authorization of its authority over elections is required not only by the major questions doctrine but also by federalism canons. "[I]f Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'" *Will v. Michigan Dep't of State*, 491 U.S. 58, 65 (1989) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)); *see also Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). In *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991), the Supreme Court explained that "[t]his plain statement rule is nothing more than an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere."

As the Supreme Court observed, "a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Id*. at 458; *Murphy*, 584 U.S. at 473. That precise tyranny risk is at issue in a case like this one in which the federal government seeks to override state and local election processes to help its preferred candidate be certified as the winner of the election, risking an override of

the Alaska voters' will.

## CONCLUSION

For the foregoing reasons, this Court should deny the United States's request for declaratory and injunctive relief and dismiss its Complaint.

Date: October 29, 2026

Respectfully Submitted,

*/s/ Nathaniel L. Bach*
Nathaniel L. Bach*
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4204
NBach@Manatt.com

Max A. Jacobs*
MANATT, PHELPS & PHILLIPS, LLP
1 Beacon Street, 11th Floor
Boston, MA 02108
(617) 646-1450
MJacobs@Manatt.com

Richard L. Hasen*
Shelby Wayment*
SAFEGUARDING DEMOCRACY PROJECT
385 Charles E. Young Drive East
Los Angeles, California 90095
hasenr@gmail.com
wayment.shelbyk@gmail.com

**Pro Hac Vice Applications Pending*

Attorneys for Amicus Curiae Richard L. Hasen

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 4,522 words, excluding the case caption, signature blocks, table of contents and authorities, signature blocks, and certificates, *see* D. Alaska L. Civ. R. 7.4(a)(3)-(4), and that it is in 13-point, proportionally-spaced font as required by D. Alaska L. Civ. R. 7.5(a)(1).

*/s/ Nathaniel L. Bach*
Nathaniel L. Bach

## CERTIFICATE OF SERVICE

I certify that on October 29, 2026, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court for the District of Alaska by using the CM/ECF system. Participants in this Case No. 3:26-cv-00376-SLG who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Nathaniel L. Bach*
Nathaniel L. Bach