Cindy Woods (AK Bar # 2510078)
Eric Glatt (AK Bar # 1511098)
ACLU of Alaska Foundation
P.O. Box 90744
Anchorage, AK 99509
(907) 258-0044
cwoods@acluak.org

Ari Savitzky* (AK Bar # NA21918)
Ming Cheung*
Theresa J. Lee* (AK Bar # NA21922)
Garrett Muscatel*
Sophia Lin Lakin* (AK Bar # NA21593)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org

*Attorneys for Intervenors Risé Roy, Jan Jakub Grzeda, League of Women Voters of Alaska, and Common Cause*

**Admitted pro hac vice*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

*Plaintiff*,
v.

STATE OF ALASKA, *et al.*,

*Defendants*,

RISÉ ROY, *et al.*,

*Defendant-Intervenors*,

ALASKANS FOR MARY, *et al.*,

*Defendant-Intervenors*.

Case No. 3:26-cv-00376-SLG

**MOTION OF RISÉ ROY, JAN JAKUB GRZEDA, LEAGUE OF WOMEN VOTERS OF ALAKSA, AND COMMON CAUSE TO DISMISS THE UNITED STATES' AMENDED COMPLAINT**

Intervenors Risé Roy, Jan Jakub Grzeda, League of Women Voters of Alaska, and Common Cause respectfully move for this Court to dismiss the United States's First Amended Complaint because it fails to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

The U.S. Department of Justice may wish to have a junkyard brawl with a partisan political campaign in the days before an election. But in the absence of anything approaching a federal claim, it cannot do so in federal court. The United States' newest pleading emphasizes news reports about alleged political machinations to support a candidate with a name similar to the incumbent Senator's. But no matter the truth of these assertions, the United States' Amended Complaint still fails to state anything close to a valid claim, and its request to block certification of Alaska's U.S. Senate election is still illegal. The Court should immediately dismiss the United States' frivolous, election-eve lawsuit and consider sanctions for this continued abuse of the judicial process.

With ten days before the November 3 general election, the United States filed a single-count complaint under the National Voter Registration Act (NVRA).[1] As amended, the United States claims that the presence of two similarly named U.S. Senate candidates on the ballot threatens the very "integrity of the election process," and on that basis asks the Court to indefinitely block certification of the election "if . . . Senator Sullivan does not win" and to then conduct an open-ended "investigation" into voters' intentions while

[1] 52 U.S.C. § 20501 *et seq.*

preventing their ballots from being counted.[2] It asks the Court to preemptively nullify Alaska's U.S. Senate election and disenfranchise Alaska voters without any legal basis whatsoever. It seeks to go where law ends.[3]

Dismissal is the only destination here. The NVRA, the basis for the first count of the Amended Complaint, is a statute that relates solely to voter registration, not to voter confusion, ballot placement, vote counting, or certification. The United States does not even cite any of the NVRA's substantive provisions, let alone attempt to describe a violation. And in the absence of any legitimate NVRA claim, the United States' assertion of nearly unlimited power to police the "integrity of the election process" (a line snipped from the NVRA's prefatory "Findings and Purposes" section) defiles the Constitution's careful federalist balance, in which states administer elections, subject only to federal interventions specifically authorized by Congress.[4] And the Amended Complaint's second count fails for the same reason: In the absence of any actual federal law on point (and here, again, the United States simply cites the same five words from the NVRA), the Supremacy Clause and federal preemption doctrine by definition have zero application.

Even if the United States were within shouting distance of a plausibly pleaded claim, dismissal of this bizarre, eleventh-hour stunt suit would still be required. The relief the United States seeks—indefinitely blocking the certification of the imminent U.S. Senate

---

[2] Am. Compl. ¶¶ 50, 56–57, Dkt. No. 43.

[3] John Locke, Second Treatise of Government (1690), Ch. XVIII.

[4] U.S. Const. art. I, § 4.

election—would violate numerous fundamental rights and legal precepts. It would disenfranchise voters and deny their fundamental right to vote. It would require an unadministrable inquisition into individual voters' intent that would violate the right to a secret ballot. And it would dramatically contravene the *Purcell* principle, which prevents federal courts from commandeering the machinery of state elections at the last minute even when there is an actual legal basis for doing so, never mind when there is none whatsoever.[5] Any of these are additional, independent grounds for dismissal.

The Department of Justice's desire for a political confrontation is no substitute for a legitimate legal theory, and it cannot justify holding Alaskans' votes hostage. The most important thing that this Court can do to promote the integrity of Alaska's election is to immediately and forcefully dismiss this lawsuit. And this Court would do American democracy and the rule of law a further service by considering Rule 11 sanctions against the attorneys who signed the pleadings in the name of the United States Department of Justice.

## BACKGROUND

### I. Legal Background: The Elections Clause and the National Voter Registration Act.

#### A. Elections Clause

The Framers gave the States responsibility for setting the rules for federal elections, delegating "broad powers to determine the conditions under which the right of suffrage

[5] *See generally Purcell v. Gonzalez*, 549 U.S. 1 (2006).

may be exercised," including by setting voter qualifications.[6] In particular, the Constitution's Elections Clause operates as "a default provision; it invests the States with responsibility for the mechanics of congressional elections" unless and until Congress decides to "preempt state legislative choices."[7] The Framers acknowledged that it is *states* who possess the authority to protect the "integrity and regularity" of the election process in the first instance.[8]

### B. The National Voter Registration Act (NVRA)

Congress enacted the NVRA in 1993 to regulate the methods and mechanisms of voter registration. In particular, Congress "erected a complex superstructure of federal regulation atop state voter-registration systems."[9] Among other provisions, Congress required states to make voter registration available by mail, in person, and when applying for a driver's license or interacting with certain state agencies;[10] enacted rules restricting when and how states manage voter registration lists;[11] established a single federal form for voter registration purposes;[12] and designated a chief election official in each state to

---

[6] *Shelby Cnty. v. Holder*, 570 U.S. 529, 543 (2013) (quoting *Carrington v. Rash*, 380 U.S. 89, 91 (1965)).

[7] *Foster v. Love*, 522 U.S. 67, 69 (1997); *see* U.S. Const. art. I, § 4, cl. 1; *see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 824 (2015) (Elections Clause's structure "doubly empowers the people").

[8] *U.S. Term Limits, Inc. v. Thorton*, 514 U.S. 779, 835 (1995).

[9] *Arizona v. Inter Tribal Council of Ariz., Inc.* (*ITCA*), 570 U.S. 1, 5 (2013).

[10] 52 U.S.C. §§ 20503, 20504, 20505, 20506.

[11] *Id.* § 20507.

[12] *Id.* § 20508.

coordinate these various responsibilities.[13] None of the NVRA's provisions has anything to do with which candidates are on the ballot, how to discern voter intent, or when or how to certify election results.

In addition to the substantive requirements it imposes, the NVRA also contains a "Findings and Purposes" section,[14] and a definitions section.[15] Congress's findings and purposes are consistent with its twin goals of supporting accessible voter registration, balanced by ensuring accessible registration does not come at the expense of electoral integrity. The prefatory "Findings and Purposes" section of the NVRA includes the following:

> "Congress finds that—
>
> (1) the right of citizens of the United States to vote is a fundamental right;
> (2) it is the duty of the Federal, State, and local governments to promote the exercise of that right; and
> (3) discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities."[16]

And:

> "The purposes of this chapter are—
>
> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;

[13] *Id.* § 20509 (designation of chief state election official).

[14] *Id.* § 20501.

[15] *Id.* § 20502.

[16] *Id.* § 20501(a).

(2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;

(3) to protect the integrity of the electoral process; and

(4) to ensure that accurate and current voter registration rolls are maintained."[17]

As noted, the remainder of the chapter then goes on to set forth the NVRA's various voter-registration-related requirements.

### C. Alaska Law

Elections in Alaska are managed by the Division of Elections, under the control and supervision of the Lieutenant Governor, who appoints a Director of the Division of Elections (the Director).[18] The Director appoints election supervisors in Juneau, Anchorage, Fairbanks, and Nome, as well as in state-level districts.[19] Each supervisor selects an election board for each precinct.[20] Additional boards may be selected for precincts with more than 200 voters.[21] The chairperson of a board may appoint counters to help with counting ballots.[22] The Director also appoints a state ballot counting review board.[23]

[17] *Id.* § 20501(b).

[18] Alaska Stat. § 15.10.105.

[19] *Id.* § 15.10.110.

[20] *Id.* § 15.10.120.

[21] *Id.* § 15.10.125.

[22] *Id.* § 15.10.140.

[23] *Id.* § 15.10.180.

Once the polls close, the election board "shall immediately" count votes and "shall cause the count" to continue without adjournment until done.[24] When done, but no later than the day after the election, each election board "shall make a certificate . . . of the results," and shall "immediately upon completion of the certificate" send it to the Director.[25] The State ballot counting review "shall begin as soon as practicable after the election is completed and not later than 16 days after an election and shall be continued until completed."[26] "The [D]irector shall close the review when . . . satisfied that no missing precinct certificate of election would, if received, change the result."[27] If missing precinct reports would affect the results, the Director can wait until close of business on the 15th day after the election,[28] but no certificates from election boards not delivered by then will be counted.[29] "Upon completion of the state ballot counting review the director shall certify the person receiving the largest number of votes for the office for which that person was . . . elected . . . [t]he [D]irector shall issue to the elected candidates . . . a certificate of their election."[30]

---

[24] *Id.* § 15.15.330.

[25] *Id.* § 15.15.370.

[26] *Id.* § 15.15.440.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* § 15.15.450.

## II. Factual Background

This case does not involve voter registration. Rather, it involves the candidates on the ballot for U.S. Senate.

One of the U.S. Senate candidates on the ballot is named Daniel J. Sullivan, Jr., a similar name as the incumbent U.S. Senator, Dan S. Sullivan, who is also on the ballot.[31] On June 10, 2026, the Alaska Republican Party filed a complaint with the Alaska Division of Elections seeking to remove Daniel J. Sullivan, Jr., from the ballot, arguing that his candidacy was a bad faith effort to confuse voters.[32] Director of the Division of Elections Carol Beecher agreed and ordered Daniel J. Sullivan, Jr., excluded from the ballot,[33] even though nothing in Alaska's election law imposes "good faith" as a qualification to run for office.

Daniel J. Sullivan, Jr., filed suit and the state superior court entered an injunction requiring the Division to include his name on the ballot, relying both on the Division's lack of constitutional or statutory authority to add a "good faith" qualification and on the lack of evidence that the challenger was not acting in good faith.[34] The Alaska Supreme Court summarily affirmed.[35] The United States did not seek to intervene in that case, and no

---

[31] Am. Compl. ¶¶ 1, 3, 34.

[32] Am. Compl. ¶ 24; Am. Compl. Ex. A (Final Determination Letter), Dkt. No. 43-1.

[33] *Id.*

[34] *Sullivan v. State, Div. of Elections*, No. 3AN-26-07485CI (Alaska Sup. Ct. June 26, 2026), Dkt. No. 2; *see also* Am. Compl. ¶ 26.

[35] *State, Div. of Elections v. Sullivan*, No. S-19935 (Alaska June 29, 2026); *see also* Am. Compl. ¶ 26.

appeal was taken to the United States Supreme Court from the decision of the Alaska Supreme Court.

Following the Alaska State courts' resolution of this controversy, ballots were printed and sent to voters across the State.[36] As depicted below and in the Amended Complaint, the ballot lists Dan S. Sullivan as the "Incumbent" and also says "(Registered Republican)" next to his name.[37] "Daniel J. Sullivan, Jr." is not listed as a Republican and is not listed as the incumbent.[38] As shown below, the ballot thus differentiates between the two similarly named candidates and expressly indicates which one is the incumbent U.S. Senator:


State of Alaska Official Ballot
November 3, 2026
General Election

Federal Only

301

A candidate's designated affiliation does not imply that the candidate is nominated or endorsed by the political party or group or that the party or group approves of or associates with that candidate, but only that the candidate is registered as affiliated with the political party or political group.

**Instructions:**

- Do not use red ink or a pencil to mark your ballot.
- Rank as many or few candidates as you like.
- Completely fill in no more than one oval for each candidate or column.
- For your 1st choice, fill in the oval in the first choice column.
- For your 2nd choice, fill in the oval in the 2nd choice column.
- For your 3rd choice, fill in the oval in the 3rd choice column, and so on.
- **If you make a mistake, you can ask for a new ballot.**

**United States Senator**

| | 1st Choice | 2nd Choice | 3rd Choice | 4th Choice | 5th Choice |
|---|---|---|---|---|---|
| **Heikes, Gerald L.** (Registered Republican) | 1 | 2 | 3 | 4 | 5 |
| **Peltola, Mary** (Registered Democrat) | 1 | 2 | 3 | 4 | 5 |
| **Sullivan, Daniel J. Jr.** | 1 | 2 | 3 | 4 | 5 |
| **Sullivan, Dan S.** (Registered Republican) Incumbent | 1 | 2 | 3 | 4 | 5 |
| **Write-in:** | 1 | 2 | 3 | 4 | 5 |

[39]

[36] Am. Compl. ¶ 28; *see also* Alaska Stat. § 15.20.081 (governing the mailing of absentee ballots).

[37] Am. Compl. ¶ 34.

[38] *Id.*

[39] *Id.*

Months later, and with less than two weeks until the midterm election, and after ballots had been printed and sent out and early voting had begun, the United States filed this lawsuit, claiming that the inclusion of Daniel J. Sullivan, Jr., would cause "confusion" amounting to a violation of the legislative purpose section of the NVRA.[40] For relief, DOJ asked this Court to intervene in Alaska's imminent election to indefinitely block the certification of the result "if . . . Senator Sullivan does not win the election" and then to engage in some form of "investigation" of whether "Senator Sullivan would have won the election" under Alaska's ranked-choice voting system absent the supposed confusion.[41]

The League of Women Voters of Alaska (LWVAK) and Common Cause are two of Alaska's largest non-partisan civic groups, and Risé Roy and Jan Jakub Grzeda are flesh-and-blood Alaska voters who have or will cast ballots in next week's general election.[42] The day after the United States filed this action, LWVAK, Common Cause, Roy, and Grzeda (the LWVAK Intervenors) sought intervention to preserve the rights of all Alaska voters.[43] Alaskans for Mary and the Democratic Senatorial Campaign Committee (the DSCC Intervenors), partisan entities aligned with the Democratic Party, also intervened, and the State of Alaska also appeared.[44] The Court granted intervention on October 28, and

---

[40] *E.g.*, *Id.* ¶¶ 45, 50.

[41] *Id.* ¶¶ 50, 56–57.

[42] Decl. of Risé Roy (Roy Decl.) ¶ 3, Dkt. No. 6-2; Decl. of Jan Jakub Grzeda (Grzeda Decl.) ¶ 3, Dkt. No. 6-3; Decl. of Sarah Moore (Moore Decl.) ¶ 3–9, Dkt. No. 6-4; Decl. of Elena Nunez (Nunez Decl.) ¶¶ 3–6, Dkt. No. 6-5.

[43] Mem. of Risé Roy, Jan Jakub Grzeda, League of Women Voters of Alaska, and Common Cause in Support of Mot. to Intervene as Defs. at 7–9, Dkt. No. 7.

[44] *See* Dkt Nos. 5, 16–18.

expedited the proceedings, ordering the United States to file its opposition to the motions to dismiss filed by the LWVAK Intervenors, the DSCC Intervenors, and the States of Alaska by 5:00 p.m. today, October 29.[45]

Rather than file a substantive opposition to the motions to dismiss, the United States instead filed an Amended Complaint including new allegations drawn from a New York Times report that the DSCC Intervenors "orchestrated [Dan. J. Sullivan Jr.'s] sham campaign for the purpose of misleading Alaskan voters and getting Peltola elected."[46] The Amended Complaint also added a second claim styled as an "Obstacle Preemption" claim under the Supremacy Clause.[47] Ninety minutes later, the United States filed an opposition asserting each of the pending motions to dismiss should be denied as moot.[48]

## ARGUMENT

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss a case for "failure to state a claim upon which relief can be granted."[49] In reviewing a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and must construe the facts in a light most favorable to the plaintiff.[50]

---

[45] Order on Motions to Intervene at 5–8, Dkt. No. 35.

[46] Am. Compl. ¶¶ 2, 41

[47] *Id.* ¶¶ 51–55.

[48] Pl.'s Opp. to Mot. to Dismiss, Dkt. No. 46.

[49] *Trudell v. McCormack*, No. 3:24-CV-00244-SLG, 2025 WL 524349, at *1 (D. Alaska Feb. 18, 2025).

[50] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

To survive under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[51] "Dismissal is warranted where the plaintiff fails to present a cognizable legal theory or fails to allege facts sufficient to support a cognizable legal theory."[52]

## I. THE UNITED STATES FAILS TO STATE A CLAIM UNDER THE NVRA.

The NVRA addresses voter registration practices. Every one of its substantive provisions relates to voter registration and the maintenance of voter rolls by the states.[53] It is literally called the "National Voter Registration Act."[54] Courts have consistently acknowledged this statutory reality, referring to the statute as "a comprehensive statute designed *to facilitate voter registration.*"[55] The NVRA does not contain any provisions whatsoever relating to candidate qualifications, ballot arrangement, vote-counting, or voter

---

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[52] *Conner v. Kenai Peninsula Borough*, No. 3:25-CV-00054-HRH, 2025 WL 1695426, at *2 (D. Alaska June 17, 2025) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

[53] 52 U.S.C. § 20503 ("National procedures for voter registration for elections for Federal office"); *id.* § 20504 ("Simultaneous application for voter registration and application for motor vehicle driver's license"); *id.* § 20505 ("Mail registration"); *id.* § 20506 ("Voter registration agencies"); *id.* § 20507 ("Requirements with respect to administration of voter registration"); *id.* § 20508 (creating Election Assistance Commission and defining "[c]ontents of mail voter registration form"); *id.* § 20509 ("Designation of chief State election official" who is responsible for coordinating the state's voter-registration-related responsibilities).

[54] National Voter Registration Act of 1993, Pub. L. 103-31, 107 Stat. 77.

[55] *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1035 (9th Cir. 2015) (emphasis added), *overruled on other grounds by Ariz. All. for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026); *see also ITCA*, 570 U.S. at 5 (NVRA "requires States to provide simplified systems for *registering to vote*") (emphasis added).

intent. It does not authorize courts to block certification of an election or second guess election results.

The Amended Complaint's first cause of action purportedly arises under the NVRA.[56] But the Amended Complaint does not assert that Alaska has engaged in any practice that is inconsistent with any of the NVRA's substantive provisions.[57] Indeed, the Amended Complaint does not relate to Alaska's voter registration practices at all. Instead, its sole focus is supposed "confusion" due to candidates with similar names being placed on the ballot in the upcoming election for U.S. Senate, which the United States claims justifies blocking the certification of a duly-held election.[58] The United States would have this Court discount Alaskans' votes in flagrant violation of constitutional rights in order to hold some type of unspecified, statewide inquest into the intention of every voter who cast a ballot for a person named Sullivan.[59]

The only provision of the NVRA that the United States invokes to support its claim is the statute's "Findings and Purposes" section, which says, among many other things, that "[t]he purposes of this chapter" include "to protect the integrity of the electoral process."[60] Based on that language, the United States apparently asserts that the NVRA gives the federal executive vast power to impose his own vision for "the integrity of the electoral

---

[56] *See* Am. Compl. ¶¶ 43–50.

[57] *See id.*

[58] *E.g.*, *id.* ¶¶ 48–50.

[59] *Id.*

[60] *Id.* ¶¶ 4, 16, 45, 54 (quoting 52 U.S.C. § 20501(b)(3)).

process," regardless of any connection to voter registration or any substantive enactment of Congress.

The NVRA says nothing of the sort. The statute's "Findings and Purposes" section is not an independent source of enforcement power and does not create any federal rights at all. Indeed, a "settled principle of law is that the preamble cannot control the enacting part of the statute in cases where the enacting part is expressed in clear, unambiguous terms."[61] At most, where text is ambiguous, the "Findings and Purposes" section of the statute may give context to its substantive provisions.[62] But "unlike the statute's operative part," a statute's preamble does not "'prescribe rights and duties and otherwise declare the legislative will,' nor does it 'enlarge or confer powers on administrative agencies or officers.'"[63]

Here, the United States' reading of the NVRA is entirely unmoored from the statute's substantive provisions and seeks to create new power to regulate and indeed utterly remake areas of election administration unrelated to voter registration, which

---

[61] *Dist. of Columbia v. Heller*, 554 U.S. 570, 578 n.3 (2008) (quoting 2A N. Singer, Sutherland on Statutory Construction § 47.04, pp. 145–46 (rev. 5th ed.1992)).

[62] *E.g.*, *id.*

[63] *El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008) (quoting *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999)). *Cf. Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) (per curiam) ("[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law.")

Congress plainly never authorized.[64] And this is not your everyday elephant in a mousehole. The United States' assertion here of essentially unlimited and undefined authority over U.S. elections is impossible to square with the NVRA's highly technical and precise regulation of voter registration procedures.

Aside from being utterly inconsistent with text, the United States' reading of the NVRA would render the Elections Clause a dead letter, replacing the carefully-crafted federalist balance of state control of elections—subject to specific congressional interventions—with a roving and all-powerful federal election integrity police.[65] Aggrandizing to the Executive Branch ultimate control over election administration, which is chiefly the province of the states and then of Congress, raises federalism and separation-of-powers concerns of the highest order.[66]

---

[64] *See, e.g.*, *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."); *see also, e.g.*, *Learning Res., Inc. v. Trump*, 607 U.S. 229, 230 (2026). ("Congress would not have delegated 'highly consequential power' through ambiguous language.").

[65] *See, e.g.*, *Watson v. RNC*, 609 U.S. 672, 697 (2026) ("Congress's power to regulate elections 'supersede[s]' state law 'so far as it is exercised, and no farther.'"); *Foster*, 522 U.S. at 69 ("The [Elections] Clause is a default provision; it invests the States with responsibility for the mechanics of congressional elections" unless and until Congress decides to "preempt state legislative choices.").

[66] *See, e.g.*, *Louisiana v. Callais*, 608 U.S. 85, 114 (2026) ("[W]here an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems."); *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764 (2021) ("Our precedents require Congress to enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power" (quoting *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S. Ct. 1837, 1850 (2020)). *Bullock v. Carter* is not at all to the contrary. Far from authorizing the *federal* government's intrusion into election administration and overriding decisions of state law, it merely held that "a *State* has an

The NVRA does important work to standardize certain voter registration practices. But it does not, via five words in its prefatory "Findings and Purposes" section, turn the federal executive into the final arbiter of all state election practices.

Needless to say, the NVRA has never been interpreted in this manner by any court or for that matter any legitimate voting rights plaintiff, let alone by the United States Department of Justice.[67] The NVRA's voter-registration-related purposes are not implicated by the facts described in the United States' Amended Complaint, no matter how politically tawdry they may be. The Amended Complaint does not even cite the NVRA's substantive provisions, let alone describe a violation. The total failure to set forth a viable NVRA claim requires dismissal.

Nor, to be clear, would the United States have a plausible claim regarding "the integrity of the electoral process" even if the NVRA provided the roving enforcement power it now claims. The Amended Complaint pleads that there was a state law dispute over two candidates with similar names, one of whom, Dan S. Sullivan, is the incumbent U.S. Senator, and the other of whom, Daniel J. Sullivan, Jr., is not.[68] Drawing on a recent national news story, it pleads that allies of Senator Sullivan's challenger encouraged Daniel

---

interest . . . to protect the integrity of its political processes from frivolous or fraudulent candidacies." 405 U.S. 134, 145 (1972) (emphasis added) (cited in Compl. ¶¶ 3, 38, 39).

[67] *See* U.S. Dep't of Just. Civ. Rts. Div., *The National Voter Registration Act Of 1993 (NVRA)*, (updated Nov. 1, 2024), https://perma.cc/A2DX-WMRY (last visited Oct. 23, 2026) ("The National Voter Registration Act of 1993 (also known as the 'NVRA' or 'motor voter law') sets forth certain voter registration requirements with respect to elections for federal office.").

[68] Am. Compl. ¶¶ 19–28.

J. Sullivan, Jr. to run, in what was, if true, a cynical and ham-fisted bid to draw votes from the Senator.[69] It pleads that the two Sullivans litigated the issue of the latter Sullivan's presence on the ballot up to the Alaska Supreme Court, which determined in June that both candidates could be on the ballot, summarily affirming the holding of the Superior Court that there was no "good faith" requirement to be a candidate for office under Alaska law.[70] It pleads that the Division of Elections then took measures to mitigate against any potential voter confusion, and that, in the upcoming election, the incumbent Senator Sullivan is distinctly identified on the ballot as "Registered Republican" and "Incumbent" on the ballot, while the other candidate, Daniel J. Sullivan, Jr., is not.[71] On those facts, and at this late hour, it is implausible that Alaskans (who know well how to read and use a ballot[72]) will be confused.

Moreover, Alaska's ranked-choice voting system further addresses the United States' purported concern that a confused voter's vote might go to the wrong Sullivan.[73] Because Alaska uses ranked-choice voting,[74] a voter who is unsure which Sullivan is the

---

[69] Am. Compl. ¶¶ 20–22, 25, 27, 41.

[70] *Id.* ¶ 26; *see also Sullivan*, No. 3AN-26-07485CI, *aff'd sub nom. State, Div. of Elections*, No. S-19935.

[71] Am. Compl. ¶ 34 (image of sample ballot).

[72] Yereth Rosen, *Senator Lisa Murkowski Wins Alaska Write-In Campaign*, Reuters (Nov. 18, 2010), https://www.reuters.com/article/world/us-politics/senator-lisa-murkowski-wins-alaska-write-in-campaign-idUSTRE6AG51C/.

[73] Am. Compl. ¶¶ 24, 34, 36.

[74] *Id.* ¶¶ 31, 33–34; *see also What Is Ranked Choice Voting?*, Ranked Choice Voting Res. Ctr., https://www.rcvresources.org/what-is-rcv/ (last visited Oct. 23, 2026).

incumbent Senator (notwithstanding that the ballot distinguishes them by first name, middle initial, and suffix, and indicates which one is the incumbent and the Republican nominee, and notwithstanding the outsized media coverage that the saga of the two Sullivans has received) can simply rank both. Even if the voter mistakenly ranks Daniel J. Sullivan, Jr., first, the ballot will transfer to Dan S. Sullivan once Daniel J. Sullivan, Jr., is eliminated, which, as a minor candidate, he almost certainly will be long before the incumbent. Either way, the vote ends up where the voter intended.

The Amended Complaint thus pleads no facts to plausibly suggest that voters will be unable to distinguish between these two candidates,[75] let alone that confusion over this highly publicized issue will be so intense as to implicate the integrity of the election.[76]

Rather than any legitimate concerns over election integrity, what the Complaint most plausibly suggests is that the United States is attempting an improper, politically timed end-run around the Alaska Supreme Court's decision to allow both Sullivans to be on the ballot. The United States could have intervened in the state court case and sought certiorari in the U.S. Supreme Court. Instead, it attempts to relitigate an already-decided issue of state law by styling the complaint as an NVRA action, despite the glaring lack of any cognizable legal theory under the NVRA or any other federal law. The Amended Complaint must be dismissed.

---

[75] *See Ashcroft*, 556 U.S. at 678.

[76] *Cf. Anderson v. Celebrezze*, 460 U.S. 780, 797 (1983) ("Our cases reflect a greater faith in the ability of individual voters to inform themselves about campaign issues.").

## II. THE UNITED STATES FAILS TO STATE A CLAIM UNDER THE SUPREMACY CLAUSE.

Nothing plus nothing equals nothing. The Amended Complaint's second cause of action is just the same NVRA claim, repackaged as a "preemption" claim under the "Supremacy Clause,"[77] but just as meritless.

The Supremacy Clause provides that the federal Constitution and federal law "shall be the supreme Law of the Land."[78] It is "a rule of priority" in instances where federal and state law conflict.[79] But it "is not the 'source of any federal rights,' and certainly does not create a cause of action."[80] "It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so."[81]

The Supremacy Clause thus conveys special power to the legislative branch of the federal government in particular: "As long as it is acting within the powers granted it under the Constitution, Congress may impose its will on the States."[82] But it is for Congress to exercise this power to preempt state laws, and can only do so by legislating: There can be no "supreme Law of the Land" without some law to start with.

---

[77] Am. Compl. ¶¶ 51–55.

[78] U.S. Const. art. IV, § 2.

[79] *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019).

[80] *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015).

[81] *Id.* at 325.

[82] *E.g.*, *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).

Typically when Congress preempts state law, it does so by enacting some statute that expressly supervenes existing state regulation. Congress's power to displace state regulation of federal elections in particular is broad, and no presumption against preemption applies in that context.[83] But even then, it is the statute that Congress enacted that defines the scope of any potential preemption of state law.[84] Showing that Congress preempted state law by implication only, in the absence of express text, can be difficult under normal circumstances. "Obstacle preemption," the flavor of preemption invoked in the Amended Complaint, is generally a high bar. "The Supreme Court has found obstacle preemption in only a small number of cases" of two specific types: [(1)] those where "the federal legislation at issue involved a 'uniquely federal area[] of regulation'" and state law "directly interfered with the operation of the federal program," and [(2)] those where "a federal enactment clearly struck a particular balance of interests that would be disturbed or impeded by state regulation."[85]

But no matter the particular context or the flavor of preemption, the starting point must always be some piece of constitutional or legislative text that does the pre-empting.[86]

---

[83] *ITCA*, 570 U.S. at 14.

[84] *Id.* at 9 ("The power of Congress over the 'Times, Places and Manner' of congressional elections 'is paramount, and may be exercised at any time, and to any extent which it deems expedient; and *so far as it is exercised, and no farther*, the regulations effected supersede those of the State which are inconsistent therewith.'" (emphasis added) (quoting *Ex parte Siebold,* 100 U.S. 371, 392 (1880)).

[85] *ConocoPhillips Alaska, Inc. v. Alaksa Oil & Gas Conservation Comm'n*, 177 F.4th 964, 972 (9th Cir. 2026) (quoting *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1212 (9th Cir. 2020)).

[86] *Id.* at 972.

"'There is no federal preemption *in vacuo*,' without a constitutional text, federal statute, or treaty made under the authority of the United States."[87] "Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives,'" because "such an endeavor 'would undercut the principle that it is Congress rather than the courts that pre-empts state law.'"[88] Federal preemption can never be established merely by "[i]nvoking some brooding federal interest" in the absence of a specific "'constitutional text or [] federal statute' that does the displacing or conflicts with state law.[89]

Here, the United States points to nothing. The federal statute that the United States claims is so manifestly obstructed as to result in the preemption of Alaska's entire electoral process on the eve of the election is . . . the same five-word snippet from the NVRA's purposes section, again.[90] To say that it does little more than "[i]nvoking some brooding federal interest" would be charitable.[91] Indeed, the only real difference between the Amended Complaint's NVRA claim and its preemption claim is that, for the preemption claim, there is an entire additional body of law (that is, federal preemption doctrine) that further counsels in favor of immediate dismissal.

---

[87] *Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (citation omitted).

[88] *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011).

[89] *Virginia Uranium*, 587 U.S. at 767.

[90] Am. Compl. ¶ 54 ("As noted, federal law (the NVRA) imposes a variety of duties on States for the purpose of 'protect[ing] the integrity of the electoral process.' 52 U.S.C. § 20501(b)(3); *see id.* §§ 20503–20509.")

[91] *Virginia Uranium*, 587 U.S. at 767.

## III. THE UNITED STATES SEEKS UNLAWFUL RELIEF THAT THIS COURT CANNOT GRANT.

Even if the United States had set forth something close to a valid legal theory (and it very much did not), the outlandish relief that it seeks—blocking the certification of Alaska's upcoming U.S. Senate election and conducting an unheard-of inquisition into the intentions of individual voters[92]—is unlawful many times over and cannot be granted. The Court can dismiss on these bases as well.

To start, indefinitely blocking the certification of Alaska's imminent U.S. Senate election would disenfranchise Alaska voters in violation of sacrosanct constitutional rights. The right to vote guarantees not just the right to cast a ballot in the selection of our public officials, but to have it counted.[93] Under Alaska law, certification is the final step in the process by which the people choose who will represent them—the process by which their votes are made effective.[94] Indefinitely blocking certification on an ill-conceived theory that casts doubt on the validity of the people's choices would be a grave affront to the voting rights of all Alaskans.

Furthermore, the United States' requested relief would block the popular election of a U.S. Senator and violate the Seventeenth Amendment. "The Seventeenth Amendment . . . directs that Senators be chosen by the people" and guarantees the "final choice of an

---

[92] Am. Compl. ¶¶ 56–57.

[93] *See, e.g.*, *United States v. Classic*, 313 U.S. 299, 315 (1941); *see also, e.g.*, *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 (1969).

[94] Alaska Stat. § 15.15.450.

officer" by qualified voters.[95] "The language, 'chosen . . . by the people,'" confers "a constitutionally protected 'right' to participate in the selection of representatives, as well as a protection against interference with the privileges of suffrage—*including the expectation that one's vote will be counted*."[96] Here, denial of certification would nullify Alaskan voters' right to vote for their chosen senatorial candidate.[97]

The relief sought would also violate the right to a secret ballot.[98] The United States appears to contemplate some indefinite, unprecedented "investigation to determine whether votes cast for Daniel J. Sullivan were meant to be cast for Senator Sullivan."[99] What would this proposed relief entail? Is the Court being asked to stand up a tribunal to find and question those who voted for Daniel J. Sullivan, Jr., as to their true intentions? Such relief cannot be granted.

---

[95] *Newberry v. United States*, 256 U.S. 232, 250 (1921); *see* U.S. Const. amend. XVII (providing that U.S. Senators must be "elected by the people" of their state).

[96] *See Republican Party of State of Conn. v. Tashjian*, 770 F.2d 265, 273 (2d Cir. 1985) (quoting *Classic*, 313 U.S. at 1037–38) (emphasis added), *aff'd sub nom. Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986).

[97] The U.S. Constitution also specifies the exclusive qualifications for candidates seeking election to the U.S. Senate. To the extent that the United States seeks to disqualify Daniel J. Sullivan, Jr., from the ballot based on his name, that imposition of an additional qualification is also unconstitutional. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 827 (1995) ("[N]either Congress nor the States should possess the power to supplement the exclusive qualifications set forth in the text of the Constitution.").

[98] *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995) (describing the secret ballot as "the hard-won right to vote one's conscience without fear of retaliation"); Alaska Const. art. V, § 3 ("Secrecy of voting shall be preserved.").

[99] *E.g.*, Am. Compl. ¶ 57.

Finally, the *Purcell* principle is a complete and independent bar to the Amended Complaint here because it precludes the relief sought in its entirety. With five days to go before the U.S. Senate election at issue and with voting already underway, the United States now asks this Court to intervene, preemptively block certification of the election in violation of State law, and then begin a new inquiry into the *Sullivan v. State, Division of Elections* controversy that the Alaska Supreme Court has already resolved. That is the entirety of the relief sought.[100]

But the Supreme Court has "repeatedly" and as recently as last week "emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."[101] And as the Court held last month in *People Not Politicians v. Onder*, which similarly involved a lower federal court order attempting to regulate the candidates who would appear on the ballot and reverse the determination reached by a state court, the "*Purcell* principle applies with even greater force" when the "election is not merely upcoming; it has already started."[102] With days before the election and early voting underway, that is true here, too.

---

[100] *Id.* ¶¶ 56–57.

[101] *E.g.*, *Scanlan v. Coal. for Open Democracy*, No. 26A512, 2026 WL 3167846, at *1 (Oct. 22, 2026) (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U. S. 423, 424 (2020) (per curiam) (staying lower court relief in advance of 2026 mid-term election); *accord People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sept. 25, 2026) (rejecting federal court intervention in election-related matter already resolved by state Supreme Court in advance of 2026 mid-term election).

[102] *Onder*, 2026 WL 2883222, at *2 ("Ballots . . . have been printed and mailed. Absentee voting has already begun, as has military and overseas voting.").

The relief the United States seeks, which if granted would utterly upend Alaska's election rules for the election currently in progress and second-guess the state's Supreme Court on a question of state law, is plainly barred by the *Purcell* principle. Because this Court cannot grant any of the relief that the United States seeks in this action, *Purcell* is another among many independent grounds for immediate dismissal.

## IV. THE COURT SHOULD CONSIDER SANCTIONS AGAINST THE ATTORNEYS WHO SIGNED THE COMPLAINT.

Attorneys who practice in the federal courts must not bring litigation "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and they must advance arguments only when "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[103] These rules apply to all attorneys; traditionally, lawyers representing the United States are held to a higher standard.[104]

Let us not mince words: This lawsuit was filed at the behest of President Trump. In response to a question from the press about the filing of this litigation, President Trump stated unequivocally: "I'm the one that said do it."[105] But the say-so—and the political purposes—of an executive official, no matter how powerful, are not the law.[106] The desire

[103] Fed. R. Civ. P. 11(b).

[104] *Cf. Berger v. United States*, 295 U.S. 78, 88 (1935).

[105] Aaron Rupar (@Atrupar), Bluesky (Oct. 23, 2026), https://bsky.app/profile/atrupar.com/post/3mykqz5e6s32s.

[106] *See* U.S. Const. art. III.

of powerful officials to try to achieve some result through the legal process does not turn a frivolous legal argument into a colorable one.

The Amended Complaint here, like the original that preceded it, is frivolous. It is unsupported by any case, legal principle, or arguably tenable reading of the NVRA, which is the one federal statute giving rise to the two claims now asserted. The newly alleged facts from recent reporting change nothing about the complete lack of any colorable legal theory for the claims asserted or the total illegality of the requested relief.

And in addition, this action appears to have been brought for an improper purpose, namely to aid in the reelection of Senator Sullivan.[107] When explaining the impetus of this lawsuit to the press, the President accused Daniel J. Sullivan, Jr., of being funded "by Actblue."[108] The Amended Complaint itself identifies the threatened harm as the possibility that "Daniel J. Sullivan's presence on the ballot will result in a victory for Peltola."[109] And it is no answer to say that the DSCC Intervenors may have engaged in political chicanery. Whatever the U.S. Department of Justice's legitimate interest in such matters, it cannot justify abusing the legal process by filing frivolous civil actions in federal court or seeking to invoke the judicial power to hold the votes of Alaskans hostage.

---

[107] *See also* Am. Compl. ¶ 50 (asking the Court to block "any election result" and proceed to investigate voters' intentions through some unspecified and indefinite process "if . . . Senator Sullivan does not win the election").

[108] *See supra* n.80.

[109] Am. Compl. ¶ 37; *see also id.* ¶ 3 (suggesting that Daniel J. Sullvan, Jr., should be removed from the ballot because "[t]he sole purpose of his candidacy is to benefit the Peltola campaign").

Attempting to aid in the election of a political candidate would be an illegal and impermissible purpose for a lawsuit brought by officials and employees of the United States Department of Justice.[110] And so would the utterly baseless disenfranchisement of hundreds of thousands of Alaskans.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

DATED: October 29, 2026

Respectfully submitted,

/s/ Eric Glatt

Eric Glatt (AK Bar # 1511098)
Cindy Woods (AK Bar # 2510078)
ACLU of Alaska Foundation
P.O. Box 90744
Anchorage, AK 99509
(907) 258-0044
cwoods@acluak.org
eglatt@acluak.org

Ari Savitzky* (AK Bar # NA21918)
Ming Cheung*
Theresa J. Lee* (AK Bar # NA21922)
Garrett Muscatel*
Sophia Lin Lakin* (AK Bar # NA21593)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org

**Admitted pro hac vice*

*Attorneys for Intervenors Risé Roy, Jan Jakub Grzeda, League of Women Voters of Alaska, and Common Cause*

[110] *See, e.g.*, 5 U.S.C. § 7323(a)(1); *see also* 18 U.S.C. § 595.

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing document, exclusive of caption and signatures, contains less than 10,000 words typed in Times New Roman, 13-point font, consistent with Local Rule 7.4(a)(1).

*<u>/s/ Eric Glatt</u>*
Eric Glatt
ACLU of Alaska Foundation