Kathryn Sadasivan
NAACP Legal Defense & Educational Fund, Inc.
40 Rector St. FL, 5
New York, NY 10006
ksadasivan@naacpldf.org
Phone: (332) 600-9546

Attorney for proposed *Amici Curiae* NAACP and NAACP AOWSAC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br>v.<br><br>STATE OF ALASKA, *et al.*,<br><br>*Defendants*. | Case No. 3:26-cv-00376-SLF<br>[Proposed] Amici Curiae Brief in Support of Neither Party by National Association for the Advancement of Colored People and NAACP Alaska Oregon Washington State Area Conference |

## INTEREST OF AMICI CURIAE

The National Association for the Advancement of Colored People ("NAACP") is a non-partisan, non-profit organization. It is the oldest and largest civil rights organization in the United States. The NAACP Alaska Oregon Washington State Area Conference ("NAACP AOWSAC") is the state area conference for the NAACP and includes, as one of its units, the NAACP Anchorage Branch. Founded in 1909 by pioneers of racial justice, the NAACP's core mission has long been to ensure political, educational, social, and economic equality.

In furtherance of its mission, the NAACP has worked to protect the fundamental rights of its members and all Black people and other people of color, offering a unique

slate of programs that provide education, community-based advocacy, and general assistance to voters seeking to make their voices heard. For example, the NAACP develops and executes programs that promote civic participation by helping its members and other citizens register to vote and aiding voters in casting their ballots. It also supports its thousands of state, regional, and local units, *e.g.*, NAACP AOWSAC and the NAACP Anchorage Branch, working to advance the organization's goals at every level. The NAACP AOWSAC has approximately 350 members in Alaska.

The NAACP's efforts to advance its mission and protect voters' fundamental rights are undermined by government actions that heighten barriers to voting. When voters in the NAACP's membership and constituency face government actions that make it harder to vote or discourage participation in the political process, the NAACP's efforts to advance its mission suffer.

## INTRODUCTION

This brief solely addresses the question of the proper interpretation and application of the National Voter Registration Act of 1993 ("NVRA" or the "Act"). Congress enacted the NVRA to increase voter registration and turnout in elections for federal office. Plaintiff suggests that the NVRA's preamble, which sets out that one of the Act's purposes is to "protect the integrity of the electoral process," requires Alaska to prevent the certification of "any electoral results tainted by the inclusion on the ballot" of a particular candidate who has already been deemed qualified to appear on the ballot by the highest court in the state. Compl. at 2. But this is not a

proper basis for a claim under the NVRA, which is focused solely on voter registration and voter roll maintenance.

As a matter of law, the Act's reference to election integrity refers to the twin goals of increasing voter registration and turnout and maintenance of accurate and up-to-date voter rolls. The instant lawsuit, a challenge to the certification of a Senate race in the event a specific incumbent candidate loses is thus not contemplated by either the text or purpose of the NVRA. And the remedy sought – the second guessing of voters' decisions at the ballot box only in the event the incumbent candidate loses, is similarly not available under the NVRA. Congress enacted the NVRA specifically to remove the harmful election procedures and devices aimed at Black people and other voters of color that had long kept them from registering and voting in large numbers. It was not meant to, nor did it, provide an avenue to disenfranchise or discount the votes of eligible voters. Some members of NAACP AOWSAC and the NAACP Anchorage Branch already have cast their ballots and risk having their lawfully cast ballots not counted.

## I. The Complaint Does Not State a Claim Upon Which Relief Can Be Granted Because the NVRA is Concerned Solely with Voter Registration and the Maintenance of Accurate Voter Rolls.

The NVRA is a statute that is concerned solely with increasing voter registration while ensuring that state voter rolls remain accurate and current. Accordingly, the NVRA provides no avenue for relief to determine whether a particular candidate can appear on a ballot, including based on any supposed confusion about candidate names. Because no issue concerning voter registration or

the maintenance of voter rolls is present in this case, there is no basis under the NVRA for relief. *See generally* Compl.; *see also Sullivan v. Division of Elections*, No. S-19935 (Alaska June 29, 2026).

The NVRA was enacted to "increase the number of eligible citizens who register to vote" and "enhance[] the participation of eligible citizens as voters in elections for Federal office." 52 U.S.C. § 20501(b). The Act's preamble setting out that it also is intended to "protect the integrity of the electoral process" does not create an avenue for challenges to whose names can appear on the ballot. The preamble simply provides information about Congressional purpose. 52 U.S.C. § 20501(b). The NVRA seeks to achieve its general purpose through sections of the Act that set forth specific procedures and causes of action regarding the expansion of voter registration and the maintenance of accurate voter registration records. *See, e.g.*, 52 U.S.C. § 20507.

Congress in the NVRA sought to balance the goal of increasing voter registration and turnout while ensuring the "integrity of the election process" specifically through periodic list maintenance and other mechanisms designed to ensure that only qualified electors were registering and voting in elections for federal office. H. Rep. 101-243, 101st Cong., 1st Sess. 1989, Heinonline (noting Congress had the authority and responsibility to "make the registration process for Federal elections as accessible as possible while maintaining the integrity of the electoral process."); H.R. Rep. No. 103-9, 1st Sess. (1993), 1993 WL 27395, at *14 ("The Committee believes that accurate and current voter registration lists are essential to the integrity of the election process and for the protection of the individual…Recognizing the essential

need to maintain the integrity of the voter registration lists, the bill requires that States conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death or by a change of residence").

In passing the NVRA, Congress was made aware of many arguments about universal registration and voting premised on the notion that including certain members of the electorate who were deemed less fit to exercise the franchise intelligently – particularly Black voters and the working poor – in the selection of elected officials would be detrimental to the body politic. *See, e.g.*, H.R. Rep. 103-9 ("Restrictive registration laws and administrative procedures were introduced in the United States in the late nineteenth and early twentieth centuries to keep certain groups of citizens from voting; in the North, the wave of immigrants pouring into the industrial cities; in the South, blacks and the rural poor"); S. Rep. 103-6 (acknowledging that any purge system must "be scrutinized to prevent poor and illiterate voters from being caught in a purge system which will require them to needlessly re-register" and noting the "long history" of discrimination against these groups including through mechanisms such as the literacy test). These rationales for restricting voting were firmly rejected by Congress in passing the NVRA to *increase* voter registration and turnout amongst the most marginalized groups in federal elections.

Moreover, the Supreme Court has made clear that "[t]he right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any

restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). That right is "more ... than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right ... includes the right to have the vote counted at full value..." and "suffers substantial dilution where a favored group has full voting strength and the groups not in favor have their votes discounted." *South v. Peters*, 299 U.S. 276, 279 (1950) (Douglas, J., dissenting).

The Constitution also leaves "States with responsibility for" supervising these "mechanics of congressional elections." *Foster v. Love*, 522 U.S. 67, 69 (1997); *Washington v. Trump*, 814 F. Supp. 3d 1173, 1214 n.57 (W.D. Wash. 2026) ("Despite many constitutional provisions addressing elections, voting, or both, none authorize the President or the Executive Branch to exercise authority over the administration of federal elections."); *League of United Latin Am. Citizens v. Exec. Off. of the Pres.* (*LULAC III*), 818 F. Supp. 3d 34, 80–81 (D.D.C. 2026) (collecting authority and describing the availability of a cause of action to enjoin executive action that is ultra vires under the Constitution).

In short, nothing in the text or purpose of the NVRA, nor any relevant precedent, creates a cause of action to remove qualified candidates from the ballot in a federal election, much less the power to disrupt a state's certification of an election depending on which candidate wins. Compl. at 13. The title, text, and purpose of the Act make clear that it is solely concerned with voter registration, and its precatory reference to

"integrity" has no bearing on candidate qualifications or ballot design, both issues firmly within the sole competency of the states. Art. I., § 4, Cl. 1.[1]

## CONCLUSION

For these reasons, *amici curiae* NAACP and NAACP AOWSAC respectfully maintain that as a matter of law, no cause of action exists under the NVRA to challenge the certification of election results.

Dated: October 31, 2026

Respectfully submitted,

/s/ *Kathryn C. Sadasivan*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
Kathryn Sadavasian*
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
ksadavasian@naacpldf.org

**Pro hac vice* motion pending

[1] Although a state must review candidate qualifications and design ballots in a manner consistent with the Equal Protection Clause and other constitutional requirements, Plaintiff does not allege here that Alaska has violated the Constitution.

## CERTIFICATE OF SERVICE

I, Kathryn C. Sadasivan, do certify that on this day I filed the foregoing with the ECF System which sent notification to all counsel of record.

This 31st day of October, 2026.

*/s/ Kathryn C. Sadasivan*
Kathryn C. Sadasivan