David R. Fox*
Joshua Abbuhl*
Qizhou Ge*
Max C. Accardi*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 948-1135
*dfox@elias.law*
*jabbuhl@elias.law*
*age@elias.law*
*maccardi@elias.law*

*Appearing *Pro Hac Vice*

Thomas P. Amodio
Kevin M. Boots
Lily Ginsburg
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
*tom@reevesamodio.com*
*kevin@reevesamodio.com*
*lginsburg@reevesamodio.com*

Attorneys for Intervenors Alaskans for Mary and DSCC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF ALASKA; CAROL BEECHER, in her official capacity as Director of the Division of Elections of the State of Alaska; the ELECTION BOARDS of the STATE OF ALASKA; and the BALLOT COUNTING REVIEW BOARDS of the STATE OF ALASKA,

Defendants.

Case No. 3:26-cv-00376-SLG

**ALASKANS FOR MARY AND DSCC'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 4

I. The NVRA provides no legal basis for DOJ's claim. ........ 4

II. DOJ has no claim under the Supremacy Clause or obstacle preemption. ........ 7

III. DOJ does not allege facts plausibly showing voter confusion. ........ 9

IV. DOJ conspicuously fails to defend the relief it requests in the Amended Complaint. ........ 11

V. *Purcell* separately bars DOJ's requested relief. ........ 13

CONCLUSION ........ 15

## INTRODUCTION

The United States Department of Justice has no statutory or constitutional authority to insert itself into Alaska's election process and demand the Court enjoin certification of the U.S. Senate election if the President's preferred candidate loses. Under the Constitution, regulation of federal elections is a matter for the States and for Congress, and "policy arguments" about election integrity "are properly directed to legislatures, not courts." *Watson v. RNC*, 609 U.S. 672, 695 (2026). In a preemption challenge to state election law, the question "is not whether" the relief sought "is a good or bad idea; the question is whether the idea has made its way into the United States Code." *Id.*

To bring this case, DOJ therefore needs to identify some federal statutory duty that Alaska has violated. It has now had three chances to do so: in its original complaint, in its Amended Complaint, and in its Opposition to the motions to dismiss. It has come up empty all three times. The only federal statute DOJ relies on is a snippet from the statement of purpose of the National Voter Registration Act ("NVRA"), a statute that regulates voter registration and has nothing to say about how a candidate qualifies for the ballot or how they appear on that ballot. Courts, including the Ninth Circuit, have universally held that statements of purpose impose no legal duties. *E.g.*, *Nebraska v. Su*, 121 F.4th 1, 7–8 (9th Cir. 2024). DOJ's reliance on the NVRA is irreconcilable with this controlling precedent, which DOJ nowhere cites or tries to distinguish. And DOJ's Opposition confirms that its obstacle preemption claim likewise depends entirely on its untenable construction of the NVRA.

DOJ also lacks a coherent factual theory. DOJ's contention that Daniel J. Sullivan's inclusion on the ballot harms election integrity depends entirely on the assumption that voters will confuse him with Senator Sullivan. But the ballot design clearly distinguishes between the two candidates by listing Senator Sullivan as "Sullivan, Dan S. (Registered Republican) Incumbent," and Mr. Sullivan only as "Sullivan, Daniel J. Jr.," without any party affiliation. DOJ does not allege any facts suggesting that Alaskans are not up to the task of choosing between them. The fact that a very small percentage of Alaskans voted for Mr. Sullivan in the primary shows only that some Alaskans supported his candidacy. *See* Mot. to Intervene of David R. Weber at 2, ECF No. 58 ("I like teachers. I think (despite my own candidacy) that lifelong Alaskans should represent Alaska's interests in Washington D.C. I know of no instance where [Daniel J. Sullivan] has advanced a proposition that assumes I am an idiot.").

Rather than identify any factual allegations plausibly showing actual voter confusion in the face of an exceptionally clear ballot design, DOJ talks at length about recent press reports alleging a relationship between Mr. Sullivan, Alaskans for Mary, and DSCC. DOJ crows that Alaskans for Mary and DSCC "do not deny" this reporting, but as the Court well knows, it must take DOJ's allegations as true in deciding the motions to dismiss. The allegations, however, are "legally irrelevant to the voter confusion question raised by the federal government." Br. of Amicus Curiae Richard L. Hasen at 9 n.20, ECF No. 56-1. And while it hardly matters here, they were also irrelevant to the Alaska state court proceedings that upheld Mr. Sullivan's entitlement to be listed on the ballot, which

turned entirely on the legal question of whether Alaska law allowed the Division of Elections to exclude Mr. Sullivan from the ballot for allegedly lacking "'good-faith', or pure motive, or bona fide intent." *Sullivan v. Alaska Div. of Elections*, No. 3AN-26-07485CI, slip op. at 19 (Alaska Super. Ct. June 26, 2026)[1]; *see also* Br. of Appellee Daniel J. Sullivan Jr. at 1, *Alaska Div. of Elections v. Sullivan*, No. S-19935 (Alaska June 28, 2026) (arguing exclusively that Alaska law does not regulate candidate motivations and "makes no attempt to stop purported 'sham' candidacies").[2]

DOJ's exceedingly brief discussion of the unprecedented relief it seeks also fails to defend its claims. Indeed, DOJ does not even attempt to defend its request for an injunction against certification pending an investigation into voters' motivations—the only relief it seeks in its Amended Complaint. DOJ insists that the Court can "fashion whatever relief it 'deems just and proper,'" but DOJ does not identify what that relief is. Opp. at 19. And as Alaskans for Mary and DSCC have explained, no lawful relief is possible, because any investigation of the type that DOJ demands would be irreconcilable with voters' constitutional right to a secret ballot. DOJ offers no response.

Finally, and independent of all that, is timing. The Ninth Circuit reaffirmed just yesterday that federal courts "must not 'alter the election rules on the eve of an election,'" even at DOJ's demand. *United States v. California*, No. 26-7231, slip op. at 19 (9th Cir.

---

[1] Available at https://public.courts.alaska.gov/web/media/MRCF/3AN-26-07485CI/order2.pdf.

[2] Available at https://appellate-records.courts.alaska.gov/CMSPublic/UserControl/OpenDocument?q=2ubl5dCVeEBM5CjEZ1Q9SA==%27.

Oct. 30, 2026) (per curiam) (quoting *RNC v. DNC*, 589 U.S. 423, 424 (2020)). And the fact that DOJ wants to count the ballots and then enjoin certification only if Senator Sullivan narrowly loses makes things worse, not better, as "[c]ount first, and rule upon legality afterwards, is not a recipe for producing election results that have the public acceptance democratic stability requires." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 80 (2026) (quoting *Bush v. Gore*, 531 U.S. 1046, 1047 (2000) (Scalia, J., concurring)).

The Court should grant the motions to dismiss and end this frivolous case for good.[3]

## ARGUMENT

### I. The NVRA provides no legal basis for DOJ's claim.

Alaskans for Mary and DSCC explained in their motion to dismiss that DOJ's reliance on a fragment from the NVRA's statement of purpose as the exclusive statutory basis for its claims is irreconcilable with controlling precedent holding that statements of purpose impose no legal duties of their own. Mot. at 9–12 (citing, e.g., *Su*, 121 F.4th at 4–5). The Ninth Circuit could not have been clearer in holding that the "purpose" section of a statute "is not a source of . . . authority," so any "authority, if it exists," must be found "in other operative sections." *Su*, 121 F.4th at 11 (discussing 40 U.S.C. § 101). And as Alaskans for Mary and DSCC explained, the NVRA's operative provisions regulate only

[3] In the Amended Complaint, DOJ prompted national headlines by accusing Alaskans for Mary and DSCC's counsel of misleading the Court. Am. Compl. ¶¶ 38–41. But as the motion to dismiss explained, counsel did nothing of the sort—the statement, in a now-moot proposed answer to the original complaint, that Alaskans for Mary and DSCC did not have knowledge or information sufficient to admit or deny an allegation about Daniel J. Sullivan's mental state was entirely proper. Mot. at 3. DOJ's Opposition offers no response and no defense of its unfounded accusation.

voter registration and say nothing about candidate qualifications, ballot design, or voter confusion. *See* Mot. at 8–9; 52 U.S.C. §§ 20503–20507, 20509.

DOJ has no answer to this argument. It does not cite or attempt to distinguish *Su*, *Kentucky v. Biden*, 57 F.4th 545, 551 (6th Cir. 2023), *Sturgeon v. Frost*, 587 U.S. 28, 57 (2019), or any of the other cases holding that statements of purpose impose no legal duties of their own. DOJ has therefore waived—both here *and on appeal*—any argument that the NVRA's statement of purpose imposes any legal duty on Defendants. *See, e.g.*, *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."); *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1036–37 (9th Cir. 2006) ("Issues not presented to a district court generally cannot be heard on appeal.").

DOJ also has no answer on the major questions doctrine, which demands that "Congress . . . speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'" *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764 (2021) (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)). It is inconceivable that Congress would have used the "purpose" section of a voter-registration statute to transform DOJ into a roving supervisor of federal elections, with no apparent limits on its powers to countermand state election procedures, so long as DOJ's actions were related in some way to "election integrity." *See* Mot. at 13–14. And DOJ identifies no clear statutory statement supporting its claims and makes no argument against

application of the major questions doctrine here. Nor does DOJ explain why, if the NVRA really gave DOJ this power, it has never been used before now, including in the heavily litigated 2000 presidential election in Florida, where there was substantial evidence that voter confusion had swung the election for Bush. *See* Mot. at 14.

Instead of addressing any of these dispositive points, DOJ engages in an irrelevant review of cases in which courts have recognized that *States* may have an "interest" in restricting some individuals from appearing on the ballot, and that this interest is sufficient to *allow* states to impose "reasonable restrictions on ballot access," *Munro v. Socialist Workers Party*, 479 U.S. 189, 194–95 (1986), so long as those restrictions are not too burdensome. Opp. at 13–15. But those cases are focused on *State* interests, and they empower *States* to impose reasonable regulations on ballot access if they would like to do so. *See id.*; *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 353–54 (1997); *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983); *Bullock v. Carter*, 405 U.S. 134, 145–46 (1972); *Lindsay v. Bowen*, 750 F.3d 1061, 1063–65 (9th Cir. 2014). Not one of those cases says anything to suggest that States are under a *federal duty* to restrict ballot access. DOJ's conflation of those two very different things is fundamentally inconsistent with "[o]ur system of dual sovereignty, which gives the state and federal governments the authority to operate within their separate spheres" and "is one of the Constitution's structural protections of liberty." *Gonzalez v. Arizona*, 677 F.3d 383, 392 (9th Cir. 2012) (en banc) (quoting *Printz v. United States*, 521 U.S. 898, 921 (1997)). None of the cited cases forced a State to restrict ballot access when it had not chosen to do so, much less in

a case brought by DOJ under the NVRA, so none provides any support to DOJ's claims here.

## II. DOJ has no claim under the Supremacy Clause or obstacle preemption.

DOJ's Supremacy Clause claim—which it describes in its Opposition as an "obstacle preemption" claim, Opp. at 17—adds nothing to its NVRA claim. DOJ grounds this claim entirely in its assertion that "[*f*]*or the same reasons*" that the NVRA allegedly implicates Mr. Sullivan's presence on the ballot, "the NVRA preempts the State Defendants' conduct arising from Daniel J. Sullivan's frivolous candidacy." *Id.* (emphasis added). But because the NVRA imposes no relevant legal duties, as explained in Part I, it cannot preempt State law. After all, Congress's authority under the Elections Clause extends only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 9 (2013) (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1879)). DOJ entirely ignores this problem.

DOJ's obstacle preemption claim also suffers from a number of additional defects. Most obviously, neither preemption nor the Supremacy Clause is a freestanding claim or cause of action. "[T]he Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (internal quotation marks and citation omitted). It is not "a mechanism by which a party may get a state to comply with federal law." *Doyle v. Nevada*, No. 3:23-CV-00018, 2023 WL 8378945, at *4 (D. Nev. June 9, 2023). DOJ ignores this issue, too.

DOJ similarly ignores the legal standard for obstacle preemption. The doctrine applies only when there is a "repugnance or conflict" between federal and state law that "is so direct and positive that the two . . . cannot be reconciled or consistently stand together." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 102 (2d Cir. 2013) (internal quotation marks omitted). Under DOJ's theory, what is "preempted" is Alaska's decision to allow Mr. Sullivan to appear on the ballot—a decision made at the direction of the Alaska Supreme Court and effectuated by the State Defendants, who implemented a number of ballot-design edits to minimize the risk of voter confusion. *See* Am. Compl. ¶¶ 26, 28, 34–35. Even if DOJ believes there are flaws in Alaska's approach to Mr. Sullivan's candidacy, it has not even attempted to show that this approach was *irreconcilably inconsistent* with the NVRA, as obstacle preemption demands.

And, at any rate, such a showing would be impossible because the NVRA imposes no duties that could possibly conflict with Defendants' actions. DOJ observes that the NVRA imposes some duties on States that relate to election integrity, but the duties DOJ cites all relate to *voter registration*. Opp. at 18–19. They thus provide no support for DOJ's claimed authority based on a "purpose" clause to inject itself into aspects of Alaska's election procedures that are entirely divorced from voter registration. The NVRA's operative provisions—and not its vague policy statement—are how Congress chose to operationalize the NVRA's statutory purposes, and DOJ does not even attempt to argue that Alaska violated those provisions. *See Kentucky*, 57 F.4th at 552 (recognizing it is a statute's

"operative provisions" that demonstrate how "Congress chose the means by which to pursue the ends declared in [a statutory purpose section]").

Just yesterday, the Ninth Circuit confirmed that *States* are "responsibl[e] for the mechanics of congressional elections," and while Congress may supplement state regulations, the exercise of its preemption power "only goes 'so far as it is exercised, and no farther.'" *California*, No. 26-7231, slip op. at 9–10 (quoting *Inter Tribal Council of Ariz.*, 570 U.S. at 9). The Ninth Circuit rejected a similar argument advanced by DOJ in its bid to segregate ballots cast by California voters, holding that the federal statute cited by DOJ did not authorize DOJ's intrusion into a state's administration of an ongoing election and that California comprehensively administers its elections and ensures the integrity of its elections. *Id.* The same principles of federalism apply here, and this Court—like the Ninth Circuit and the Supreme Court—is "bound to presume that Congress" in enacting the NVRA "endeavored to guard as far as possible against any unnecessary interference with State" election administration. *Id.* at 10. This Court should similarly reject DOJ's attempt to intrude on Alaska's prerogative over who is on its ballot and how they appear.

## III. DOJ does not allege facts plausibly showing voter confusion.

DOJ's purported claims under the NVRA and Supremacy Clause depend entirely on the factual assertion that a substantial number of voters will accidentally vote for Daniel J. Sullivan when they *really* intended to support Senator Sullivan. *See* Opp. at 15 (claiming Alaska has a duty under the NVRA to prevent "voter confusion"); *id.* at 18–19 (advancing a similar argument under the Supremacy Clause). But the Amended Complaint alleges no

facts that *plausibly* establish such a risk. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Alaskans for Mary and DSCC explained in their motion to dismiss, any risk of voter confusion was fully addressed by the Division's ballot-design choices, which clearly differentiate Mr. Sullivan from Senator Sullivan, by listing their different middle initials, designating Mr. Sullivan as "Daniel" and Senator Sullivan as "Dan," and noting "(Registered Republican) Incumbent" after Senator Sullivan's name, while excluding any party information for Mr. Sullivan. *See* Mot. at 19–20.

DOJ's contrary argument simply illustrates how far-fetched its theory really is. DOJ claims that "some supporters of Senator Sullivan likely will inadvertently vote for Daniel J. Sullivan." Opp. at 8. But supporters of Senator Sullivan can easily identify the *only Republican* Dan Sullivan listed on the ballot and also the *only incumbent* identified on the ballot. Senator Sullivan himself recently agreed that "Alaskans can tell the difference between" the two candidates.[4] And while DOJ continues to speculate that other voters "might not rank Senator Sullivan at all (while thinking they already have), resulting in votes for Daniel J. Sullivan to be transferred to Peltola," Opp. at 8, DOJ does not explain why that is plausible given the ballot design—and ignores that a voter's vote would be transferred to Peltola only if the voter chose to rank her. Far from making DOJ's theory more plausible, Alaska's ranked choice voting system guarantees that even confused voters

---

[4] Mariah Timms, Louise Radnofsky & Lindsay Wise, *Trump Says He Directed Justice Department to Sue Alaska Over Senate Race*, Wall St. J. (Oct. 23, 2026), https://www.wsj.com/politics/elections/justice-department-sues-to-block-alaska-senate-results-if-gop-candidate-loses-c2597f6c.

can ensure their vote will ultimately be counted for Senator Sullivan, by ranking both Sullivans. *Contra* Opp. at 8.

Given the ballot's clear differentiation between the two candidates, the "obvious alternative explanation" for any voters who rank Daniel J. Sullivan and not Senator Sullivan is that they intended to vote for the teacher and not the Senator. *Iqbal*, 556 U.S. at 682. The only Daniel J. Sullivan voter the Court has heard from in this case came forward to assure the Court that he had done just that—that he knows "precisely" who Senator Sullivan is and intentionally chose not to vote for him. *See* ECF No. 58. And DOJ offers no reason to believe other Alaska voters did not make the same choice. After all, the best evidence of voters' motivations is the ballots they cast. The same is true for every Alaska voter. *Fischer v. Stout*, 741 P.2d 217, 221 (Alaska 1987) (finding that markings on a ballot provided "clear evidence of the voters' intent"); *see also Bush v. Gore*, 531 U.S. 98, 106 (2000) (per curiam) (in determining voter intent, "the question is not whether to believe a witness but how to interpret the marks or holes or scratches on an inanimate object . . . . The factfinder confronts a thing, not a person.").

## IV. DOJ conspicuously fails to defend the relief it requests in the Amended Complaint.

DOJ also utterly fails to defend the relief it seeks in the Amended Complaint—an injunction against certification if Senator Sullivan narrowly loses, to allow for an unprecedented investigation into whether voters who cast ballots for Daniel J. Sullivan really meant to do so. As Alaskans for Mary and DSCC explained, there is no legal authority for such an investigation, which would violate Alaskans' right to cast a secret

ballot and the Equal Protection and Due Process Clauses. Mot. at 22–26. Such an investigation would also be impossible to implement, because ballots are commingled before they are counted, *see* ECF No. 72 at 2–3 (Alaska's explanation for why this is so), because any hypothetical voters who did accidentally vote for Daniel J. Sullivan would, by definition, not know they made a mistake, and because Senator Sullivan's supporters would face an overwhelming incentive to falsely claim confusion to alter the results of a close contest. Mot. at 24.

DOJ says nothing about any of that and—despite the heading for this section of its brief—makes no effort to defend the lawfulness of the relief the Amended Complaint seeks. Instead, DOJ argues only that "[t]he Court can fashion whatever relief it 'deems just and proper,'" so that the impossibility and impropriety of the relief DOJ requests is "irrelevant at the motion to dismiss stage." Opp. at 19–20. DOJ cites nothing to support this remarkable assertion, however, and the law is to the contrary. *See, e.g.*, *Gerosa v. Savasta & Co.*, 329 F.3d 317, 323 (2d Cir. 2003) (district court should have dismissed complaint where "there is no remedy available . . . to redress the grievance alleged"). This problem also undermines standing, because if the Court cannot order relief that would remedy DOJ's purported injury, DOJ has failed to adequately plead redressability. *See, e.g.*, *Singh v. U.S. Dep't of Homeland Sec.*, No. C22-3035-LTS-MAR, 2023 WL 2229001, at *2 (N.D. Iowa Feb. 24, 2023) ("[W]here a defendant has no lawful power or authority to prove the remedy sought by a plaintiff, a plaintiff cannot establish redressability."); *Ellis v. Holder*, No. 4:11CV812 FRB, 2011 WL 4635525, at *1 (E.D. Mo. Oct. 4, 2011)

(dismissing complaint as nonjusticiable where it was "impossible for the Court to grant plaintiffs any effectual relief").

DOJ also ignores Alaskans for Mary and DSCC's argument that DOJ's delay in bringing this case forecloses *any* equitable remedy it might ask the Court to impose. What DOJ seeks to contest is Mr. Sullivan's placement on the ballot, which was extensively litigated—and resolved—months ago. DOJ did nothing when the Alaska Supreme Court decided the issue or when the ballot design was finalized. But now, DOJ seeks to disrupt an ongoing election and prevent the certification of the election if Peltola wins. And DOJ's conduct in litigation has only prolonged the process: DOJ waited for a week to file a preliminary injunction motion that is simply a rehash of the Complaint, in a transparent attempt to extend the lifespan of this case. DOJ's "long delay in seeking equitable relief" precludes DOJ from "gaining [whatever] disruptive remedy" it may seek. *City of Sherrill v. Oneida Indian Nation of N.Y.*, 544 U.S. 197, 217, 221 (2005).

## V. *Purcell* separately bars DOJ's requested relief.

Finally, DOJ offers nothing to counter the fact that the *Purcell* principle prohibits the relief it seeks. The election has been underway for weeks, with nearly 80,000 absentee and in-person ballots already cast.[5] Polls close in three days. Courts must not order changes to election procedures "in the midst of an ongoing election" because doing so "would usher

[5] *Absentee, Early, and Questioned Ballot Statistics*, Alaska Div. of Elections (Oct. 30, 2026), https://www.elections.alaska.gov/research/statistics/#aeqstats.

in electoral chaos." *People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sep. 25, 2026) (per curiam).

DOJ contests none of this. Its only response is that "if (and only if) the election's outcome is ultimately impacted by voter confusion"—defined by DOJ as a narrow loss by Senator Sullivan—it seeks only to "maintain the status quo pending an investigation." Opp. at 20. But there is nothing more disruptive to the status quo than stopping the certification of the U.S. Senate election and an unspecified investigation into the motives of voters. *Lopez v. Merced Cnty.*, 473 F. Supp. 2d 1072, 1082 (E.D. Cal. 2007) (disruption of election certification "interferes with voters' expectations and the orderly conduct of public elections"). And as the Ninth Circuit held just yesterday, "it is not only voter confusion that matters in the *Purcell* analysis but election administration and broader electoral disorder stemming from late federal court-ordered changes to election rules." *California*, No. 26-7231, slip op. at 19. DOJ's latest request to segregate ballots brings this case squarely under *California*'s holding that a last-minute order to segregate specific ballots would have "potentially catastrophic effects on the entire [voting] system." *Id.* at 20. And DOJ's plan to then investigate and litigate the lawfulness of Daniel J. Sullivan's presence on the ballot after the votes have been cast and counted flies in the face of the Supreme Court's caution that "[c]ount first, and rule upon legality afterwards, is not a recipe for producing election results that have the public acceptance democratic stability requires." *Bost*, 607 U.S. at 80 (quoting *Bush*, 531 U.S. at 1047 (Scalia, J., concurring)).

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

Dated: October 31, 2026.

REEVES AMODIO LLC

By: /s/ *Thomas P. Amodio*
Thomas P. Amodio, ABA #8511142
*tom@reevesamodio.com*

By: /s/ *Lily Ginsburg*
Lily Ginsburg, ABA #2411117
*lginsburg@reevesamodio.com*

By: /s/ *Kevin M. Boots*
Kevin M. Boots, ABA #0912090
*kevin@reevesamodio.com*

500 L Street, Suite 300
Anchorage, Alaska 99501
Telephone: (907) 222-7100

David R. Fox*
Joshua Abbuhl*
Qizhou Ge*
Max C. Accardi*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 948-1135
*dfox@elias.law*
*jabbuhl@elias.law*
*age@elias.law*
*maccardi@elias.law*

*Appearing *Pro Hac Vice*

Attorneys for Intervenors
Alaskans for Mary and DSCC

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2026, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court for the District of Alaska by using the CM/ECF system. Participants in this Case No. 3:26-cv-00376-SLG who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Kevin M. Boots*
Kevin M. Boots