**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF ALASKA, *et al.*

Defendants.

Case No. 3:26-cv-00376-SLG

# ORDER DISMISSING ACTION

Before the Court are three pending motions to dismiss: Defendants' Motion to Dismiss the First Amended Complaint at Docket 55;[1] Intervenor-Defendants Alaskans for Mary and Democratic Senatorial Campaign Committee's ("DSCC") (collectively, the "Campaign") Motion to Dismiss the Amended Complaint at Docket 57; and Intervenor-Defendants Risé Roy, Jan Jakub Grzeda, League of Women Voters of Alaska, and Common Cause's (collectively, the "League of Women Voters") Motion to Dismiss the United States' Amended Complaint at Docket 60.

Plaintiff United States filed an omnibus response in opposition to the three motions at Docket 67. Replies in support of the motions to dismiss were filed at Docket 76, Docket 77, and Docket 75, by the State, the Campaign, and the League

[1] Defendants are the State of Alaska; Carol Beecher, in her official capacity as Director of the Division of Elections of the State of Alaska; the Election Boards of the State of Alaska; and the State Ballot Counting Review Board of the State of Alaska (collectively, "the State" or "Defendants"). Docket 43 at ¶¶ 11-14.

of Women Voters, respectively. Oral argument on the motions was not requested and was not necessary for the Court's determination.

## BACKGROUND

The following facts, as alleged in the Amended Complaint, are accepted as true for the purpose of deciding the motions to dismiss:

On May 16, 2026, Dan S. Sullivan filed with the Alaska Division of Elections as a candidate for the November 2026 United States Senate election.[2] Dan S. Sullivan is a current United States Senator representing Alaska and is the incumbent in the November 2026 election.[3] On May 29, 2026, Daniel J. Sullivan filed with the Alaska Division of Elections as a candidate for the November 2026 United States Senate election.[4]

On June 15, 2026, Defendant Carol Beecher, Director of the Division of Elections, issued a letter to Daniel J. Sullivan in which Defendant Beecher "conclude[d] that [Daniel J. Sullivan's] declaration of candidacy was not properly filed with the Division because it was not filed in order to declare an actual good-faith candidacy for the office of United States Senator, but was instead filed with a purpose to confuse or mislead and to thereby compromise the ballot's fairness or

---

[2] Docket 43 at ¶ 19.

[3] Docket 43 at ¶ 1.

[4] Docket 43 at ¶ 20.

neutrality."[5] In the letter, Defendant Beecher stated that she was "unable to maintain [Daniel J. Sullivan's] declaration of candidacy" and was "de-certifying [his] candidacy for United States Senator."[6] Defendant Beecher found the following facts supported her conclusion:

1. Daniel J. Sullivan "requested to access the ballot under the name 'Dan Sullivan' even though it appear[ed] from Division records that [he had] never registered to vote or sought ballot access under [that] name."[7]
2. Daniel J. Sullivan "requested to be designated on the ballot as affiliated with the Republican Party" even though, "[u]ntil two days before [he] filed [his] declaration of candidacy, [he] had never—according to the Division's records—been affiliated with the Republican Party in Alaska."[8]
3. Daniel J. Sullivan's "public campaign website . . . uses a format, color scheme and overall theme similar to the public website for [Dan S.] Sullivan's campaign . . . ."[9]
4. "A political consultant [that Daniel J. Sullivan] admitted is working with [his] campaign is a known longtime supporter of Democratic candidates including

---

[5] Docket 43 at ¶ 24; Docket 43-1 at 1.

[6] Docket 43-1 at 2.

[7] Docket 43-1 at 1; *see* Docket 43 at ¶ 24(a).

[8] Docket 43-1 at 2; *see* Docket 43 at ¶ 24(b).

[9] Docket 43-1 at 2; *see* Docket 43 at ¶ 24(d).

the primary Democratic challenger to [Dan S.] Sullivan."[10]

Daniel J. Sullivan promptly sought judicial review of Defendant Beecher's decertification decision in Alaska Superior Court.[11] On June 26, 2026, the Alaska Superior Court found that Defendant Beecher's decertification of Daniel J. Sullivan's candidacy for United States Senate was not based on applicable Alaska law nor was Defendant Beecher's determination that Daniel J. Sullivan's candidacy would confuse or misguide voters supported by a preponderance of the evidence.[12] On June 29, 2026, the Alaska Supreme Court summarily affirmed the Alaska Superior Court's decision and remanded the matter to the Division of Elections "to determine . . . how appellee Sullivan shall be listed as a candidate within the confines of existing Alaska ballot design law."[13]

Shortly thereafter, the Division of Elections released the sample ballot for the 2026 primary election. As candidates for United States Senate, the sample ballot listed Daniel J. Sullivan as "Sullivan, Daniel J. Jr." with no party affiliation and listed Dan S. Sullivan as "Sullivan, Dan S. (Registered Republican) Incumbent."[14] The Court is unaware of any challenge to how either candidate was

---

[10] Docket 43-1 at 2; *see* Docket 43 at ¶ 24(c).

[11] Docket 43 at ¶ 26; *Sullivan v. State, Div. of Elections*, Case No. 3AN-26-07485CI (Alaska Sup. Ct. June 22, 2026).

[12] Order on Administrative Appeal at 31, *Sullivan v. State, Div. of Elections*, Case No. 3AN-26-07485CI (Alaska Sup. Ct. June 26, 2026).

[13] Order at 1, *State v. Sullivan*, Case No. S-19935 (Alaska June 29, 2026), Docket 34.

[14] *Sample Ballot 2026 Primary*, Div. of Elections, State of Alaska, https://perma.cc/3UBW-7FEB

listed on the primary ballot. The primary election occurred on August 18, 2026, and, on August 31, 2026, the Division of Elections certified the results of the primary and finalized the general election ballot design with the top four candidates advancing to the general election.[15] The four candidates for United States Senate who advanced to the general election are Gerald Heikes, Mary Peltola, Daniel J. Sulivan, Jr., and Dan S. Sullivan.[16] Those candidates received 1.05%, 49.54%, 2.47%, and 41.40% of the vote in the primary election, respectively.[17] The ballot listings for Dan S. Sullivan and Daniel J. Sullivan on the general election ballot are identical to those on the primary election ballot.[18]

The general election is scheduled for November 3, 2026.[19] The general election will be conducted by ranked-choice voting.[20] Under Alaska's ranked-choice voting procedures, election officials "initially tabulate each validly cast ballot

---

(last visited Nov. 1, 2026).

[15] *2026 Primary Election Summary Report*, Div. of Elections, State of Alaska, https://www.elections.alaska.gov/enr26/results/ElectionSummaryReportRPT.pdf (last visited Oct. 31, 2026). The Amended Complaint erroneously alleges that "Alaska held its primary election on August 28." Docket 43 at ¶ 33.

[16] Docket 43 at ¶ 34; *Sample Ballot: Federal Only*, Div. of Elections, State of Alaska, https://perma.cc/F6LLTKVC (last visited Oct. 31, 2026).

[17] Docket 43 at ¶ 33; *2026 Primary Election Summary Report*, Div. of Elections, State of Alaska, https://www.elections.alaska.gov/enr26/results/ElectionSummaryReportRPT.pdf (last visited Oct. 31, 2026).

[18] *Sample Ballot: Federal Only*, Div. of Elections, State of Alaska, https://perma.cc/F6LLTKVC (last visited Oct. 31, 2026).

[19] *General Election Information*, Div. of Elections, State of Alaska, https://www.elections.alaska.gov/election-information/#GENR (last visited Oct. 31, 2026).

[20] Docket 43 at ¶ 30 (citing Alaska Stat. § 15.15.350(c)).

as one vote for the highest-ranked continuing candidate on that ballot or as an inactive ballot. If a candidate is highest-ranked on more than one-half of the active ballots, that candidate is elected and the tabulation is complete."[21] If no candidate is the highest-ranked on more than one-half of the active ballots, then the "candidate with the fewest votes is defeated, [and] votes cast for the defeated candidate shall cease counting for the defeated candidate and shall be added to the totals of each ballot's next-highest-ranked continuing candidate or considered an inactive ballot."[22] Once "two or fewer continuing candidates remain, the candidate with the greatest number of votes is elected and the tabulation is complete."[23]

The United States initiated this action on October 22, 2026.[24] The United States filed an Amended Complaint on October 29, 2026.[25] In its Amended Complaint, the United States alleges that, "[a]s a result of Daniel J. Sullivan's inclusion on the November ballot, the ballot will appear confusing to voters looking to vote for [Dan S.] Sullivan."[26] The United States alleges that "some supporters of [Dan S.] Sullivan likely will inadvertently vote for Daniel J. Sullivan" and "[o]ther

---

[21] Docket 43 at ¶ 31 (quoting Alaska Stat. § 15.15.350(d)).

[22] Alaska Stat. § 15.15.350(d)(2); *see also* Docket 43 at ¶ 31.

[23] Alaska Stat. § 15.15.350(d)(1).

[24] Docket 1.

[25] Docket 43.

[26] Docket 43 at ¶ 34.

supporters of [Dan S.] Sullivan likely will be confused as to how to rank the three Republican candidates as to defeat Peltola."[27] The United States alleges that due to this purported voter confusion regarding the ballot, "there is a realistic chance that, even if a majority of Alaskans wish to vote for [Dan S.] Sullivan, Daniel J. Sullivan's presence on the ballot will result in a victory for Peltola."[28]

The Amended Complaint sets forth two claims against the State: Count One cites to the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501(b)(3), 20510(a); and Count Two cites to the Supremacy Clause of the United States Constitution.[29]

As relief, the United States seeks a court order (1) "declar[ing] that certification of any result that may be impacted by voter confusion . . . would violate Defendants' duties under the NVRA to 'protect the integrity of the electoral process' and be preempted under the Supremacy Clause"[30]; and (2) "[p]reliminarily and permanently enjoin Defendants from certifying any result that may be impacted by voter confusion . . . pending an investigation to determine whether votes cast for Daniel J. Sullivan were meant to be cast for [Dan S.] Sullivan."[31] The Amended

[27] Docket 43 at ¶ 36.

[28] Docket 43 at ¶ 37.

[29] Docket 43 at ¶¶ 43-55.

[30] Docket 43 at ¶ 56 (quoting 52 U.S.C. § 20501(b)(3)).

[31] Docket 43 at ¶ 57.

Complaint alleges that "[a]n election result may be impacted by voter confusion if: (1) [Dan S.] Sullivan does not win the election; and (2) had all votes cast for Daniel J. Sullivan been cast instead for [Dan S.] Sullivan and Alaska's rank-choice process played out accordingly, [Dan S.] Sullivan would have won the election."[32]

The State now moves to dismiss the Amended Complaint for lack of standing and for failure to state a claim.[33] The Campaign and the League of Women Voters also move to dismiss.[34]

## LEGAL STANDARD

Under Article III, federal courts are limited to deciding "cases" and "controversies."[35] A federal court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."[36] A plaintiff's lack of standing necessitates dismissal under Federal Rule of Civil Procedure 12(b)(1).[37]

---

[32] Docket 43 at ¶ 50.

[33] Docket 55 at 8-21.

[34] Docket 57 at 10-24; Docket 60 at 13-22.

[35] U.S. Const. art. III, § 2.

[36] *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).

[37] *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

## DISCUSSION

### I. Standing

In its Motion to Dismiss, the State maintains that "the amended complaint fails to establish any of the three requirements for Article III standing."[38] But the State suggests that the Court should instead take "the most straightforward path," circumvent the standing issue, and instead determine that the Amended Complaint fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[39] However, "the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim" and "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits."[40] Therefore, the Court must first determine the threshold issue of whether the United States has standing to bring its claims.

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."[41] "To establish redressability, a plaintiff must show that it is 'likely,

---

[38] Docket 55 at 21.

[39] Docket 55 at 21.

[40] *Maya*, 658 F.3d at 1068 (alteration in original) (quoting *Equity Lifestyle Props., Inc. v. San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)); *see also Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1194-96 (9th Cir. 2016) (holding that when a district court determines a plaintiff lacks Article III standing, it lacks "federal subject-matter jurisdiction" and has "no power to adjudicate the matter").

[41] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560-61).

as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"[42] But "even where a plaintiff requests relief that would redress her claimed injury, there is no redressability if a federal court lacks the power to issue such relief."[43]

The State maintains that "the United States has not established redressability" because "the Court cannot do anything to remove Daniel J. from the ballot at this point" and "[d]elaying certification would not redress any injury because the proposed 'investigation' into how many voters mistakenly voted for Daniel J. is impossible."[44] The State reasons that

> No pattern of ballot markings will reveal any voter's reason for voting for Daniel J., regardless of how the voter ranks the candidates on the ranked-choice ballot. And the ballot markings will be the only evidence of voters' intent. Ballots cannot be associated with voters to allow the state or federal government to follow up with Daniel J. voters about their true intentions. Like every state in the union, Alaska protects the secrecy of the ballot by law, and such an investigation would require violating that secrecy.[45]

The Campaign similarly argues that the United States fails to identify any relief that this Court has the authority to grant.[46] The Campaign contends that "there is no

---

[42] *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting *Lujan*, 504 U.S. at 561).

[43] *M.S.*, 902 F.3d at 1083 (citing *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) ("Redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury.")).

[44] Docket 55 at 20-21.

[45] Docket 55 at 20 (citing Alaska Const. art. V, § 3 ("Secrecy of voting shall be preserved.")).

[46] Docket 57 at 25 & n.13.

way to determine which voters cast votes for [Daniel J.] Sullivan" because "[b]allots are secret, and they are only counted after they are separated from the voter's identifying information and commingled with other ballots."[47] And the League of Women Voters similarly maintains that "[t]he relief sought would also violate the right to a secret ballot" and "[s]uch relief cannot be granted."[48]

In response to these challenges to redressability, the United States offers only one sentence: "Defendants can take measures, including but not limited to the segregation of ballots, to ensure the integrity of Alaska's elections results, and this Court can order them to do so."[49] It offers no rebuttal to the concerns regarding preservation of the secrecy of voting and provides no explanation of how its request for ballot segregation and a court-ordered investigation by law enforcement officers into certain voters' intent could be implemented while preserving the secrecy of the ballot.[50]

---

[47] Docket 57 at 26 (citing Alaska Stat. §§ 15.15.180; 15.15.230 ("When the voter has qualified to vote, the election official shall give the voter an official ballot. The voter shall retire to a booth or private place to mark the ballot."); 15.15.260 ("The ballot shall be deposited in the ballot box by the voter in the presence of the election official unless the voter requests the election official to deposit the ballot on the voter's behalf."); 15.20.061(c); 15.20.064(c); 15.20.203(e)-(f)).

[48] Docket 60 at 24 (first citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995) (describing the secret ballot as "the hard-won right to vote one's conscience without fear of retaliation"); and then citing Alaska Const. art. V, § 3 ("Secrecy of voting shall be preserved.")).

[49] Docket 67 at 11-12.

[50] *See* Docket 75 at 4 n.8 ("The United States offers literally no response to the argument[] . . . that the requested relief would unlawfully deprive Alaskan voters of the right to vote, the right to popularly elect a U.S. Senator under the Seventeenth Amendment, and the right to a secret ballot.").

The absence of any explanation from the United States as to how its requested relief could redress its alleged injury while simultaneously maintaining the secrecy of the ballot is telling. Simply, the Court cannot grant the United States the relief it seeks because the United States has failed to establish the redressability prerequisite for Article III standing.

To demonstrate redressability, a plaintiff must show "a substantial likelihood that the requested relief will remedy the alleged injury in fact."[51] In *Yazzie v. Hobbs*, several members of the Navajo Nation challenged Arizona's deadline for mail ballots—which required that the ballots be received by election day—under the Voting Rights Act, the Equal Protection Clause, and the Arizona Constitution.[52] The plaintiffs alleged that they "face[d] myriad challenges to voting by mail" and moved for a "mandatory preliminary injunction that would require Arizona to count mail ballots from on-reservation Navajo Nation tribal members that are postmarked—rather than received—by election day."[53]

The Ninth Circuit held that the requested postmark deadline "cannot be implemented because the mail ballots received and logged by the county recorder do not indicate—and Yazzie provides no way to otherwise discern—whether those

---

[51] *Yazzie v. Hobbs*, 977 F.3d 964, 967 (9th Cir. 2020) (per curiam) (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

[52] *Id.* at 965.

[53] *Id.* at 966.

ballots were cast by on-reservation Navajo Nation members."[54] The Court explained that "the infeasibility of a Postmark Deadline for only certain tribal members gets at 'the very essence of the redressability requirement' because '[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.'"[55] The Ninth Circuit held that "imposing one deadline for general voters and another for members of Navajo Nation's on-reservation voters, who cannot be readily identified, imposes not only a 'significant administrative burden' on Arizona's ability to carry out a general election . . . , but also a redressability hurdle that cannot be cleared with a favorable court ruling."[56]

As in *Yazzie*, the relief requested here by the United States is "infeasible." The United States asks the Court to "[p]reliminarily and permanently enjoin Defendants from certifying any result that may be impacted by voter confusion . . . pending an investigation to determine whether votes cast for Daniel J. Sullivan were meant to be cast for [Dan S.] Sullivan."[57] But, as explained by the State and Intervenor-Defendants, many voters have already cast their ballots in the November 2026 general election. Those cast ballots have been commingled and

---

[54] *Id.* at 967.

[55] *Id.* (alteration in original) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).

[56] *Id.* at 968 (citing *Ry. Labor Execs. Ass'n v. Dole*, 760 F.2d 1021, 1023 (9th Cir. 1985) ("Redressability . . . requires the court to examine whether the court has the power to right or to prevent the claimed injury." (internal quotation marks and citation omitted))).

[57] Docket 43 at ¶ 57.

cannot now be segregated or the identity of the person who cast each ballot ascertained.

More fundamentally, the United States provides no workable plan as to how it proposes to segregate ballots cast for Daniel J. Sullivan on Election Day and then conduct a court-ordered unspecified "investigation" of those ballots in a manner that would preserve voter secrecy.[58] Indeed, at an October 30, 2026, press conference, the United States Attorney for the District of Alaska suggested that federal and state law enforcement officers "are working to make sure that your vote counts in a way that you meant and intended it to count" and represented that this case is "focused on preserving the ballots," "so Alaska can determine" the winner of the election.[59] In light of this statement and the lack of any explanation by the United States in its filings in this case as to how ballot secrecy would be

---

[58] *See* Docket 76 at 1 ("[T]he relief demanded is inappropriate and not even possible given Alaskan voters' vital right to ballot secrecy."), 12 ("The Court cannot order the Division to instruct poll workers to intercept and examine voters' ballots before voters feed them into the voting machines to 'segregate' those that rank Daniel J."); *see also United States v. California*, Case No. 26-7070, 2026 WL 3212945, at *14-15 (9th Cir. Oct. 26, 2026) (Bennett, J., concurring) ("Plaintiff seeks equitable relief, asking us to order Defendants to set aside vote-by-mail ballots from over 20,000 individuals whom Plaintiff believes are likely noncitizens. But Plaintiff offers no workable plan as to how this could be accomplished, let alone how it could be accomplished without burdening Defendants more than necessary. . . . On balance, given the record and because Plaintiff has offered no workable plan of any kind as to how the remedy it seeks could be accomplished in practice without potential catastrophic consequences to California's ongoing election, the equities between the parties and the public's interest do not weigh in favor of granting the requested relief.").

[59] U.S. Dep't of Just. (@TheJusticeDept), X (Oct. 30, 2026), https://x.com/thejusticedept/status/2116266370522304847?a=1dmlbRrStCAz1_SVbqM&s=46 [https://perma.cc/4VJK-KD9V] (last visited Nov. 1, 2026) ("Federal and state law enforcement, including both the Alaska State Troopers on my right and the FBI on my left, are working to make sure that your vote counts in a way that you meant and intended it to count.").

preserved during this investigation, potential voters may well have concerns regarding the secrecy of their ballot were law enforcement officers to pursue a court-ordered investigation of their intent in the voting booth. Therefore, the Court finds that the United States has failed to satisfy its burden to show that its alleged injury is redressable by a court order.[60]

The United States seeks to avoid dismissal of its claims by arguing that "the only immediate relief the United States has sought is the preservation and segregation of relevant ballots."[61] That request for relief is nowhere in the Amended Complaint; rather, it appears in the United States' separate filing seeking a preliminary injunction.[62] In any event, a court order requiring the preservation of the ballots cast in the general election would not redress any injury; the ballots will be preserved for 22 months after the election pursuant to Alaska law.[63] As to

---

[60] The United States' request for declaratory relief alone does not satisfy the redressability requirement. *See California v. Texas*, 593 U.S. 659, 672 (2021) ("The Declaratory Judgment Act, 28 U.S.C. § 2201, alone does not provide a court with jurisdiction . .. . [T]o satisfy Article III standing, we must look elsewhere to find a remedy that will redress the individual plaintiffs' injuries." (internal citations omitted)).

[61] Docket 67 at 19.

[62] *See* Docket 66 at 17-18 ("But the requested relief here would not change the rules of the election. It would merely require preservation and segregation of potentially tainted ballots, and only if the result may have been impacted by the scheme to confuse voters, pending an investigation. . . . The segregation of ballots ranking Daniel J. Sullivan constitutes a negligible further burden on Defendants.").

The preliminary injunction filing by the United States is titled Memorandum of Points and Authorities in Support of United States' Motion for Expedited Discovery and Preliminary Injunction. Docket 66 at 1. No similarly-titled motion appears on the Court's docket and the United States did not file a proposed order with its Memorandum, which is required by the District of Alaska's Local Civil Rule 7.1(b)(2).

[63] Docket 76 at 11 (citing Alaska Admin. Code tit. 6 § 25.230 ("All ballots and stubs may be

segregating ballots, the remarks made by the United States Attorney during the October 30, 2026, press conference and the United States' assertion in its preliminary injunction filing that "segregat[ing] all ballots ranking Daniel J. Sullivan . . . will be impossible after Election Day" suggest that the United States anticipates "some sort of special intervention on or before Election Day."[64] But requiring the segregation of ballots cast by voters for Daniel J. Sullivan so that these voters can be further investigated by law enforcement is not a remedy that this Court can or should order as it clearly violate Alaskans' right to a secret ballot.

Further, the *Purcell* principle strongly cautions the Court against granting the relief the United States seeks. The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."[65] "Such late-breaking, court-ordered rule changes can 'result in voter confusion and consequent incentive to remain away from the polls,' and thus undermine the '[c]onfidence in the integrity of our electoral processes . . . essential to the functioning of our participatory democracy.'"[66]

The United States maintains that it is "not seeking to alter the time, place, or

---

destroyed 30 days after the certification of the state ballot counting review unless an application for recount has been filed and not completed, except that ballots and stubs for an election in which a candidate for President, Vice President, United States Senator or United States Representative seeks office must be preserved for 22 months after the election.")).

[64] Docket 76 at 12 (emphasis omitted) (quoting Docket 70 at 2).

[65] *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 80 (2026) (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020)).

[66] *Id.* (alterations in original) (quoting *Purcell*, 549 U.S. at 4-5).

manner of Alaska's election."[67] And yet it seeks a court order preventing the State from certifying the election if certain circumstances occur; a court order requiring the State to segregate and preserve certain ballots; and a court order permitting the United States to conduct an investigation into the intent of those voters who cast ballots for Daniel J. Sullivan. These requests certainly involve the time, place, and manner of Alaska's election, which are the responsibilities of the State, not the executive branch of the federal government.[68] Clearly, if this Court were to order that certain ballots will be segregated and subject to a future and as yet unspecified investigation by law enforcement, it would likely result in voter "confusion and consequent incentive to remain away from the polls."[69] Such late-breaking changes to the election rules are strongly disfavored.[70]

---

[67] Docket 67 at 20.

[68] Docket 76 at 7 ("These 'comprehensive words' in the Elections Clause 'embrace [a State's] authority to provide a complete code for congressional elections, not only as to times and places,' but also 'in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns.'" (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932))).

[69] *Purcell*, 549 U.S. at 4-5.

[70] *California*, 2026 WL 3212945, at *16 (Sanchez, J., concurring) ("The United States seeks to have a federal court dictate to California the manner in which it must administer its own electoral process by segregating mail-in ballots and undertaking a citizenship-verification process the State has never done before. The proposed injunction would transform California's election rules for an election that is already underway and would cause widespread confusion among voters and election officials, divert election administration resources, and 'usher in electoral chaos.' Therefore, even if we had jurisdiction to hear this appeal, the *Purcell* principle bars us from granting the injunction the United States seeks." (first quoting *People Not Politicians v. Onder*, Case No. 26A388, 2026 WL 2883222, at *2 (U.S. Sept. 25, 2026); and then citing *Purcell*, 549 U.S. at 4-5)).

In sum, the Court finds that the United States has failed to establish the redressability prerequisite for Article III standing. Therefore, this Court lacks jurisdiction and the United States' Amended Complaint must be dismissed.

## II. Leave to Amend

When a court dismisses a complaint pursuant to Rule 12, it must then decide whether to grant leave to amend. Under Rule 15(a), a "court should freely give leave when justice so requires."[71] However, a court may deny leave to amend for reasons of "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[72]

The Court finds that granting the United States leave to file another amended complaint in this case to try to establish redressability is not warranted. First, the United States did not request leave to amend in the event that the Court dismissed its Amended Complaint.[73] And the United States has already filed an Amended Complaint that did not meaningfully alter the relief it requested in its initial Complaint. Further, the Court finds that granting leave to amend would prejudice the State. Due to the United States' timing in filing this lawsuit and its

---

[71] Fed. R. Civ. P. 15(a)(2).

[72] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[73] *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006) (declining to order the district court to allow amendment to a pleading when the party did not request leave to amend below).

filing of the Amended Complaint, the State has filed two substantive motions to dismiss within four days on the eve of a general election, which is only two days away. The State seeks dismissal of the Amended Complaint "so that Alaska can proceed to administer its elections consistent with state and federal law."[74] And the Court finds that further amendment would be futile because this Court lacks the authority to order that certain ballots cast by Alaskans be segregated so that federal law enforcement officials can conduct an unspecified investigation of the voters who cast them. As such, the United States' Amended Complaint is dismissed without leave to amend.

## CONCLUSION

In light of the foregoing, the State's Motion to Dismiss at Docket 55; the Campaign's Motion to Dismiss at Docket 57; and the League of Women Voters' Motion to Dismiss at Docket 60 are each **GRANTED**. The United States' Amended Complaint at Docket 44 is **DISMISSED** without prejudice.[75]

Further, Thomas A. Lamb's Motion for Leave to File Brief of Amicus Curiae at Docket 4 is **GRANTED**. Mr. Lamb's Amicus Brief at Docket 4-1 is **ACCEPTED** as filed. Richard Hasen's Motion for Leave to File Brief of Amicus Curiae at Docket 48 is also **GRANTED**. Mr. Hasen's Amicus Brief at Docket 48-1 is **ACCEPTED** as

---

[74] Docket 55 at 25.

[75] *Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) ("[D]ismissals for lack of Article III jurisdiction must be entered without prejudice because a court that lacks jurisdiction 'is powerless to reach the merits.'" (quoting *Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1106-07 (9th Cir. 2006)).

filed. National Association for the Advancement of Colored People ("NAACP") and NAACP Alaska Oregon Washington State Area Conference's Motion for Leave to File Amicus Curiae Brief at Docket 62 is **GRANTED**. The NAACP's Amicus Brief at Docket 62-1 is **ACCEPTED** as filed.

Lastly, David Reid Weber's Motion to Intervene at Docket 58 and Emergency Motion to Expedite at Docket 78, and the United States' Memorandum of Points and Authorities in Support of United States' Motion for Expedited Discovery and Preliminary Injunction at Docket 66 and Motion to Expedite Consideration at Docket 70 are all **DENIED** as moot.

The Clerk of Court is directed to enter a Final Judgment accordingly and to close this case.

DATED this 1st day of November, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE