K.L. Smith
3649 Evergreen Pkwy. #504
Evergreen, CO 80401-0504
(720) 404-5383
manncoulter.fox@gmail.com
Pro se Movant/Proposed Amicus Curiae

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**STATE OF ALASKA; CAROL BEECHER, in her official capacity as Director of the Division of Elections of the State of Alaska; the ELECTION BOARDS OF THE STATE OF ALASKA; and the STATE BALLOT COUNTING REVIEW BOARD OF THE STATE OF ALASKA,**<br><br>**Defendants.** | Case No. 3:26-cv-00376-SLG<br><br>**[PROPOSED] BRIEF OF AMICUS CURIAE K.L. SMITH** |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... i

ARGUMENT .......... 1

CONCLUSION .......... 6


## TABLE OF AUTHORITIES

Cases — Page(s)


*Anderson v. Griswold*, No. 23CV32577 (Colo. Dist. Ct. Nov. 17, 2023) .......... 1

*City of Boerne v. Flores*, 521 U.S. 507 (1997) .......... 4

*Civil Rights Cases*, 109 U.S. 3 (1883) .......... 4

*Cohens v. Virginia*, 19 U.S. 264 (1821) .......... 6

*Connecticut National Bank v. Germain*, 503 U.S. 249 (1992) .......... 4

*Daniel J. Sullivan, Jr. v. Division of Elections*, No. 3AN-26-07485CI (Alaska Super. Ct. June 26, 2026), aff'd, No. S-19935 (Alaska June 29, 2026) .......... 6

*Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) .......... 5

*Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947) .......... 6

*Louisiana ex rel. Sandlin v. Watkins*, 21 La. Ann. 631 (1869) .......... 5

*Lucia v. SEC*, 585 U.S. 237 (2018) .......... 3

*Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379 (1884) .......... 3

*Marbury v. Madison*, 5 U.S. 137 (1803) .......... 4, 5

*New Mexico ex rel. White v. Griffin*, No. D-101-CV-2022-00473 (N.M. Dist. Ct. 2022) .......... 3–4

*Nguyen v. United States*, 539 U.S. 69 (2003) .......... 3, 5–6

*Norton v. Shelby County*, 118 U.S. 425 (1886) .......... 2

*Plessy v. Ferguson*, 163 U.S. 537 (1896) .......... 7

*Powell v. McCormack*, 395 U.S. 486 (1969) .......... 5

*President & Fellows of Harvard College v. U.S. Department of Health & Human Services*, No. 1:25-cv-11048 (D. Mass. 2025) .......... 7

*Ryder v. United States*, 515 U.S. 177 (1995) .......... 3

*Smith v. Trump*, No. 25-cv-03602 (D.D.C. Apr. 16, 2026), appeal docketed, No. 26-5164 (D.C. Cir. May 11, 2026) .......... 4

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) .......... 4

*Trump v. Anderson*, 601 U.S. 100 (2024) .......... 5

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) .......... 3

*Worthy v. Barrett*, 63 N.C. 199 (1869) .......... 5

Constitutional and Statutory Provisions

U.S. Const. art. II, § 1, cl. 5 .......... 1

U.S. Const. art. II, § 2, cl. 2 .......... 2, 5

U.S. Const. art. III, §§ 1–2 .......... 3

U.S. Const. amend. XIV, § 3 .......... 1, 4–5

Act of July 27, 1868, ch. 393, 15 Stat. 427 (Nelson Tift) .......... 4

Enforcement Act of 1870, ch. 114, § 14, 16 Stat. 143 .......... 5

Treason Act, 11 Hen. VII, c. 1 (1495) .......... 3

Act of Mar. 4, 1909, ch. 321, 35 Stat. 1153–54 .......... 5

Act of June 25, 1948, ch. 645, 62 Stat. 992–93 .......... 5

28 U.S.C. § 504a .......... 2

28 U.S.C. § 546(d) .......... 2

28 C.F.R. § 0.19(a)(2) .......... 2

Other Authorities


Page(s)

Adams, John, *Novanglus No. 5* (Feb. 20, 1775) .......... 2

Biographical Directory of the United States Congress, 41st Cong. 179 & n.11 .......... 5

Chin, Gabriel J., *Why Senator John McCain Cannot Be President: Eleven Months and a Hundred Yards Short of Citizenship*, 107 Mich. L. Rev. First Impressions 1 (2008) .......... 5

Donne, John, *Meditation* XVII (1624) .......... 7

Faulders, Katherine, et al., Trump Told DOJ to Sue to Block Alaska Senate Results if Republican Narrowly Loses, *ABC News* (Oct. 23, 2026) .......... 2

Franklin, Benjamin, *Remarks at the Federal Convention* (July 26, 1787) .......... 1

Jefferson, Thomas, *Kentucky Resolution* (1798) .......... 2

Lincoln, Abraham, Speech at Cincinnati, Ohio (Sept. 17, 1859) .......... 1

Locke, John, *Second Treatise of Government* ch. XVIII (1689) .......... 2

Madison, James, *Writings of James Madison* vol. 5 (G. Hunt ed., 1901) .......... 6

McHenry, James, The Papers of Dr. James McHenry on the Federal Convention of 1787, 11 Am. Hist. Rev. 595 (1906) .......... 6

Rakove, Jack N., It's Not Just a Constitutional Crisis in the Trump Era. It's Constitutional Failure, *Washington Monthly* (June 27, 2025) .......... 7

Sachs, Stephen E., *Why John McCain Was a Citizen at Birth*, 107 Mich. L. Rev. First Impressions 54 (2008) .......... 5

Schwartz, Mattathias & Emma Schartz, Trump's 'Superstar' Appellate Judges Have Voted 133 to 12 in His Favor, *N.Y. Times* (Jan. 11, 2026) .......... 4

Segall, Eric & James Sample, The Biggest Damn Fool Mistake: Trump and the Roberts Court, *Dorf on Law* (Oct. 5, 2026) .......... 4

Shore, Marci, et al., We Study Fascism at Yale. We're Leaving the U.S., *N.Y. Times Opinion Video* (May 14, 2025) .......... 7

## ARGUMENT




*In free Governments the rulers are the servants, and the people their superiors and sovereigns.*

~Benjamin Franklin, July 26, 1787 [1]

Some companies won't hire convicted felons. Others insist on college degrees. The Framers penned a list of mandatory qualifications for the office of President, trapping them in amber in their employment manual. The candidate must be a natural-born citizen over the age of thirty-five, who has lived here for at least fourteen years. U.S. Const. art. II, § 1, cl. 5. And for good or ill, in response to the last insurrection, We the People declared that oathbreaking insurrectionists need not apply. U.S. Const. amend. XIV, § 3.

The judge of a competent court found after a trial on the merits in which Donald Trump fully participated by clear and convincing evidence that Trump had engaged in insurrection, *Anderson v. Griswold*, No. 23CV32577, ¶¶241, 298 (Dist. Ct., City & Cnty. of Denver, Nov. 17, 2023), and he stipulated that he had sworn out a qualifying oath. Id. at ¶ 56. As Congress has not removed his disability, as a matter of law and logic, he is constitutionally ineligible to serve as President. U.S. Const. amend. XIV, § 3.

Can he assume the office anyway?

---

[1] Abraham Lincoln, Speech at Cincinnati, Ohio (Sept. 17, 1859), in 3 The Collected Works of Abraham Lincoln 463–64 (Roy P. Basler ed., 1953); 2 The Records of the Federal Convention of 1787 120 (Max Farrand ed., 1911) (Madison's Notes, July 26, 1787) (remarks of Benjamin Franklin) (minor stylistic changes for clarity).

Logically, the answer would be no. It would be like trying to buy a beer at a bar. The State—the bartender, who has to check IDs—must check the patron's ID and be satisfied that he actually is 21 before he hands over a bottle of Coors. The bartender isn't required to wait for another patron to object. By their very nature, constitutional qualifications are conditions precedent to the lawful holding of public office.

Why does this matter? The Supreme Court has established that any act a usurper purports to take in that capacity is void *ab initio*. *Norton v. Shelby County*, 118 U.S. 425, 443 (1886).[2]

Only a President has the "Power" to appoint "all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law." U.S. Const. art. II, § 2, cl. 2. The office of Associate Attorney General is just such an office, to be appointed by the President with the advice and consent of the Senate. 28 U.S.C. § 504a. But more importantly, Donald Trump has admitted giving the order to initiate this lawsuit. Katherine Faulders, et al., Trump told DOJ to sue to block Alaska Senate results if Republican narrowly loses, *ABC News*, Oct. 23, 2026. And presumptively, the relevant chain of authority is Trump → Attorney General Blanche → Associate Attorney General Woodward. 28 C.F.R. § 0.19(a)(2) (the AAG shall "[p]erform such other duties as may be especially assigned ... by the Attorney General.").[3]

---

[2] In pertinent part, the Court observed that

> ...when the constitution or form of government remains unaltered and supreme, there can be no de facto department, or de facto office. The acts of the incumbents of such departments or office cannot be enforced conformably to the constitution, and can be regarded as valid only when the government is overturned.

This conclusion is consistent with our concept of popular sovereignty, foreign to our British forebears. The Framers' views were consonant with that of Locke, who maintained that a usurper could never attain legitimate power. John Locke, *Second Treatise of Government* ch. XVIII (1689). E.g., John Adams, *Novanglus* No. 5, Feb. 20, 1775; Thomas Jefferson, *Kentucky Resolution* (1798) (acts in excess of jurisdiction are void *ab initio*). As long as we remain governed by the Constitution, either an occupant of an office has a legal right to discharge the duties of an office, or s/he does not. There is no third option.

[3] It is duly noted that the judicially appointed U.S. Attorney for the District of Alaska, Michael Heyman, is not named in the above lawsuit. There is no question as to his right to hold office, 28 U.S.C. § 546(d), and no reason to believe that he participated in it.

Even if it could be argued that Mr. Woodward is a de facto officer,[4] he took orders from men who cannot legally issue them.

Article III vests the judicial power of the United States in the federal courts, U.S. Const. art. III, § 1, and limits its exercise to cases and controversies within their jurisdiction, id. § 2. The United States, an artificial juridical entity, can invoke that power only through agents lawfully authorized to represent it. "Absent a proper representative of the Government as a petitioner ... jurisdiction is lacking." *United States v. Providence Journal Co.*, 485 U.S. 693, 708 (1988). "This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884). If Trump could not lawfully issue the order to file, and the Attorney General had no authority to direct its filing, jurisdiction is lacking, unless the action was independently authorized by an officer lawfully empowered to represent the United States. That a line prosecutor followed an illicit order does not launder it.

As fate would have it, Mr. Woodward is in a unique position to answer this question. He has signed off in his ostensible supervisory capacity on an argument claiming that while an oathbreaking adjudged insurrectionist cannot be a Congressman, a judge, or a member of the Otero (N.M.) County Board of Commissioners, *N.M. ex rel. White v. Griffin*, No. D-101-CV-2022-00473 (N.M.

---

[4] The de facto officer doctrine arose in medieval England during the Wars of the Roses (1455-1487), where factions vied over the kingship. As it wasn't entirely clear who the actual King was, Parliament enacted The Treason Act, 11 Hen. VII [1495], c. 1 ("noe person going wth the Kinge to the Warres shalbe attaynt of treason"), creating the de facto officer doctrine. Translated from the Middle English, it forbade legal punishment of subjects who followed the orders of the de facto king, irrespective of whether he was legitimate or a usurper. **Importantly, it is NOT a common-law doctrine.**

Its purpose was to protect third parties who relied on those who could wield the powers of office. It did not protect or empower the officeholder. It does not bestow a lawful title to office or defeat a constitutional challenge to the authority of an officer whose actions are seasonably contested. E.g., *Nguyen v. United States*, 539 U.S. 69, 77–81 (2003) (an Article IV territorial judge could not perform the duties of an Article III judge); see also *Ryder v. United States*, 515 U.S. 177, 182–83 (1995); Lucia v. SEC, 585 U.S. 237, 251–52 (2018).

Dist. Ct. Santa Fe Cnty. 2022), he can somehow serve as President. And as would surprise exactly no one, a Trump Judge[5] agreed. *Smith v. Trump*, No. 25-cv-03602 (CJN) (D.D.C. Apr. 16, 2026), appeal docketed, No. 26-5164 (D.C. Cir. May 11, 2026).

The controlling law is not amenable to reasonable dispute. First and foremost, the Fourteenth Amendment is self-executing.[6] Second, the unambiguous text of the foundational law that We the People enacted controls. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (per Thomas, J., collecting cases). Thereunder, any individual who has previously "taken an oath ... to support the Constitution of the United States" and found to have "engaged in insurrection or rebellion against the same" shall not "hold any office, civil or military, under the United States," unless Congress, in their infinite wisdom, "by a vote of two-thirds of each House, remove[s] such disability." U.S. Const. amend. XIV, § 3. Some way, somewhere, and somehow, there must be a way to enforce it.[7]

---

[5] See e.g., Eric Segall and James Sample, The Biggest Damn Fool Mistake: Trump and the Roberts Court, *Dorf on Law*, Oct. 5, 2026; Mattathias Schwartz and Emma Schartz, Trump's 'Superstar' Appellate Judges Have Voted 133 to 12 in His Favor, *N.Y. Times* (Jan. 11, 2026). Chief Justice Roberts' comical mewling to the contrary, there is absolutely such a thing as a "Trump Judge."

[6] This fact is resolved by resort to the bulletproof reasoning of Chief Justice Marshall, in the first case we all studied in law school:

> The constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it.
>
> If the former part of the alternative be true, then a legislative act contrary to the constitution is not law: if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable.

*Marbury v. Madison*, 5 U.S. 137, 177 (1803).

There is no support in precedent or logic for the proposition that a constitutional provision must be activated by formal legislation to become effective. *E.g., United States v. Stanley (Civil Rights Cases)*, 109 U.S. 3, 20 (1883) ("the Thirteenth amendment, as well as the Fourteenth, is undoubtedly self-executing without any ancillary legislation"), *City of Boerne v. Flores*, 521 U.S. 507, 524 (1997) (Fourteenth); *South Carolina v. Katzenbach*, 383 U.S. 301, 325 (1966) (Fifteenth).

[7] Congress demonstrated by its actions that Section 3 was operative upon ratification in the saga of Col. Nelson Tift. When Georgia was readmitted to representation, Tift was elected to the Fortieth Congress. Although Section 3 had become effective upon ratification of the Fourteenth Amendment, Congress enacted a private bill removing Tift's disability so that he could serve the remainder of that Congress. An Act to relieve Nelson Tift, of Georgia, of Disabilities, Jul. 27, 1868, ch. 393, 15 Stat. 427. As the *Anderson* majority acknowledged, "Congress enacted a private bill to remove the Section 3 disability of Nelson Tift of Georgia.... Tift took his seat in Congress immediately thereafter."

His position gores Mr. Woodward on the horns of a dilemma: If private citizens are denied standing to challenge a purported President's constitutional qualifications, and the executive officers whose authority is questioned cannot be expected to challenge their own authority, judicial examination of that authority within a properly pending case may be the only available mechanism of constitutional enforcement.

But it gets worse. Rather by definition, only a President can appoint inferior officers, U.S. Const. art. II, § 2, cl. 2, and while the de facto officer doctrine protects third parties, it cannot heal a constitutional breach. Just as nothing could convert an Article IV territorial judge into an Article

---

*Trump v. Anderson*, 601 U.S. 100, 144 S. Ct. 662, 669 & n.2 (2024). Yet when Georgia later sent six former Confederates—including Tift—to the Forty-First Congress, the House refused to seat them because their disabilities had not been removed. Biographical Directory of the United States Congress, 41st Cong., at 179 & n.11.

The logic is inescapable. If Section 3 required implementing legislation before taking effect, Congress had no reason to enact a private bill removing Tift's disability. Conversely, absent such legislation, the House had no constitutional basis for refusing to seat the Georgia delegation. *See Powell v. McCormack*, 395 U.S. 486 (1969).

The framers of Section 3 of the Fourteenth Amendment further demonstrated that the ancient writ of quo warranto was their chosen mechanism for enforcement. Enforcement Act of 1870, ch. 114, § 14, 16 Stat. 143 (1870). Therein, Congress imposed a duty on local United States Attorneys to proceed in federal court against ineligible officeholders and courts, to prioritize these actions. Id. No additional legislation was needed to enforce the Amendment.

When they ran out of Confederates to remove, Congress repealed the portion of the Act imposing a duty on prosecutors to prioritize Section 3 enforcement, Act of Mar. 4, 1909, ch. 321, 35 Stat. 1153–54; Act of June 25, 1948, ch. 645, 62 Stat. 992–93, but the common law remedy of quo warranto remained. And this remedy remains available, consistent with the Framers' design. At the risk of stating the obvious, the government cannot be permitted to nullify a constitutional limitation simply by withholding the means of enforcing it. *Marbury*, 5 U.S. at 177.

But more importantly, this is not an innovation the Thirty-Eighth Congress devised. If, for example, Sen. John McCain (R-AZ) had been elected, there was some question as to whether he was a natural-born citizen. Cf. Gabriel J. Chin, *Why Senator John McCain Cannot Be President: Eleven Months and a Hundred Yards Short of Citizenship*, 107 Mich. L. Rev. First Impressions 1 (2008); Stephen E. Sachs, *Why John McCain Was a Citizen at Birth*, 107 Mich. L. Rev. First Impressions 54 (2008). Notably, the Framers did not specify a process by which the Qualification Clauses would be enforced, raising the inference that quo warranto was their chosen remedy, as well.

The majority opinion in *Trump v. Anderson* suffers from an array of fatal constitutional flaws. First and foremost, the only question of law properly before the Court was whether "the Colorado Supreme Court err[ed] in ordering President Trump excluded from the 2024 presidential primary ballot." *Trump v. Anderson*, No. 23–719, 601 U.S. 100 (2024), Pet. Br. at (i). The question of whether Trump could legally serve as President was never before the Court and, as Chief Justice Roberts explains, "[i]f it is not necessary to decide more to dispose of a case, then it is necessary not to decide more." *Dobbs v. Jackson Women's Health Organization*, 597 U. S. 215, 348 (2022) (Roberts, C. J., concurring in judgment). Second, historical practice establishes that there was no need to enact new laws to enforce that Amendment, as courts have adjudicated Section Three challenges through the writ of quo warranto where available, see e.g., *Louisiana ex rel. Sandlin v. Watkins*, 21 La. Ann. 631 (La. 1869), or mandamus, if not. E.g., *Worthy v. Barrett*, 63 N.C. 199, 205 (1869). Finally, if a constitutional amendment requires enactment of enabling legislation to give it effect, it could also be repealed by Congress through simple legislation. *Trump v. Anderson*, 601 U.S. at 125–26 (Sotomayor, JJ., concurring in judgment). To even state the case is to refute it.

III judge, no amount of alchemy can transmute Mr. Woodward into an authorized representative of the United States. See *Nguyen,* supra; see also, *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384 (1947) (apparent authority cannot enlarge the lawful powers of a government agent). U.S. Attorney Heyman could refile if he so chose, but there is no obvious reason why the Alaska courts' considered judgment, see *Daniel J. Sullivan, Jr. v. Division of Elections*, No. 3AN-26-07485CI (Alaska Super. Ct. Jun. 26, 2026), *aff'd*, No. S-19935 (Alaska Jun. 29, 2026) (summary order; opinion to follow), should be disturbed. Unless the Alaska Legislature authorized the partisan-controlled Division of Elections to disqualify a candidate because it doubted his motives, there appears to be no case.

The propriety of proceeding is a threshold question this Court is not at liberty to ignore. Chief Justice Marshall elaborates:

> It is most true that this Court will not take jurisdiction if it should not but it is equally true, that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.

*Cohens v. Virginia*, 19 U.S. 264, 404 (1821).

## CONCLUSION

Governance is not a spectator sport.

Doctor Franklin left us with "a Republic … if you can keep it." James McHenry, *The Papers of Dr. James McHenry on the Federal Convention of 1787*, 11 Am. Hist. Rev. 595, 618 (1906). The Framers understood that the Constitution is a "parchment barrier," 5 *Writings of James Madison* 269, 272 (G. Hunt ed. 1901), flimsier than a porn star's nightgown. It couldn't defend itself. The Framers intended that our courts be the watchman on the wall—the last defense of the

Constitution—and the citizen, as its ultimate guarantor in times of need. Franklin's admonition was not addressed to spectators.

Our predicament is grave. Stanford legal historian Jack Rakove summarizes it bluntly: "The Constitution has failed, and we no longer know which institution will rescue it." Jack N. Rakove, It's Not Just a Constitutional Crisis in the Trump Era. It's Constitutional Failure, *Washington Monthly*, Jun. 27, 2025. I will leave it to historians to provide the melodrama, but Donald Trump has crossed the Rubicon, riding a wave of capitulation to power. Harvard has bent the knee,[8] and Yale's most celebrated experts on fascism fled the country.[9]

This Court is being asked to consider dismissing the case for want of a proper party. Politically, this is not a small ask. But the 'big ask' is the reason we granted Article III judges life tenure during good behavior. Courage—"*andreia*"—was what made a great judge. See, e.g., *Plessy v. Ferguson,* 163 U.S. 537, 552 (1896) (Harlan, J., dissenting). Ultimately, derailing Trump's effort to rig the election in his favor is a task squarely and uniquely within the competence of Article III courts. Whether for good or ill, the constitutional 'bell' "tolls for thee." John Donne, *Meditation XVII* (1624).

Respectfully submitted this 26th day of October, 2026,

**K.L. Smith**
**3649 Evergreen Pkwy. #504**
**Evergreen, CO. 80437-0504**
**Manncoulter.fox@gmail.com**
**(720) 404-5383**

[8] Importantly, the Plaintiff did not even bother to obtain a temporary restraining order. *President and Fellows of Harvard College v. US Department of Health and Human Services*, Case No. 1:25-cv-11048 (ADB/JKK) (D.Mass. 2025). It is, on its face, a profile in cowardice.

[9] Marci Shore, et al. (contributors), We Study Fascism at Yale. We're Leaving the U.S.," *N.Y. Times Opinion Video*, May 14, 2025.